# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARLIN GODFREY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05-cv-2044 (ESH/DAR) |
| | ) | |
| ALLEN IVERSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DECLARATION OF ALAN M. FREEMAN

1.  I, Alan M. Freeman, am an attorney and partner with the law firm of Blank Rome

LLP, and I am co-counsel for defendant Jason Kane in this matter.  I make this Declaration in

support of Mr. Kane's Memorandum as to why Sanctions Should Not be Imposed.  The

statements contained herein are made on personal knowledge.  I was unable to attend the

September 15 hearing on Mr. Kane's Motion to Compel due to a long-standing scheduling

conflict outside the Washington Metropolitan area.

2.  When plaintiffs failed to respond to Mr. Kane's Interrogatories and Requests for

Production, I attempted to contact their counsel – Gregory Lattimer and Stephanie Moran.  Mr.

Lattimer returned my call on August 24, 2006, and that was our first discussion on the subject of

written discovery.  I have confirmed this date by reference to my calendar and

contemporaneously created time records.  I have no record or recollection of any conversation

with Mr. Lattimer on August 22, 2006.

3.  At the outset of my telephone conversation with Mr. Lattimer, I explained that

plaintiffs' responses to discovery already were three days past due, and I asked when we could

expect to receive responses. Mr. Lattimer assured me that the responses were almost complete, and that they would be served by the end of that week. In fact, they were not served until three weeks later, and then only after Mr. Kane had been forced to file a motion to compel their production.

4.    During my August 24 conversation with Mr. Lattimer, he also stated that plaintiffs had concerns regarding the sufficiency of Mr. Kane's discovery responses. However, at the time, their concerns were vague and conclusory at best. I stated that Mr. Kane would supplement his responses if plaintiffs would send me a letter or email that explained their concerns, articulating among other things why the information they sought was reasonably calculated to lead to the discovery of admissible evidence. I also told Mr. Lattimer that, in order to expedite discovery and narrow the issues in dispute, Mr. Kane would stipulate that he was working for defendant Allen Iverson at the time of the incident that underlies this lawsuit. Finally, I explained to Mr. Lattimer that I was not aware of any documents that had been withheld from production based on Mr. Kane's discovery objections. To the contrary, I told Mr. Lattimer that most of the documents plaintiffs sought did not exist, but I explicitly reiterated Mr. Kane's intention to conduct a further investigation, and supplement his production, if plaintiffs would articulate their specific concerns in writing. At the end of our conversation, I had the impression that such a writing would be forthcoming.

5.    When Mr. Lattimer and his co-counsel did not raise the issue of Mr. Kane's discovery responses during telephone conversations we had during the subsequent three weeks, I inferred that they had decided to pursue further discovery through a deposition of Mr. Kane, and that they no longer wished to obtain additional written discovery. I did not hear from Mr. Lattimer again on the question of written discovery until he filed his Motion to Compel late in the day on

2

September 14, 2006.

6.  In stating that Mr. Kane would not produce documents in response to certain of plaintiffs' requests, counsel for Mr. Kane intended for there to be a dialogue to narrow the requests which, in my professional judgment, were remarkably over-reaching.  We did not mean to imply that Mr. Kane would never produce responsive documents.  (Indeed, Mr. Kane did produce a number of responsive documents along with his objections.)  Rather, our statement was intended to be read in the context of the specific and well-founded objections that had been set forth in the preceding sentences.  I made that point clear in my August 24 telephone conversation with Mr. Lattimer, when I stated that Mr. Kane *would* expand the scope of his production if plaintiffs would articulate their specific concerns, and the basis for their belief that the requested materials were discoverable.

7.  I did not hear from plaintiffs' counsel again on this issue until they filed their Motion to Compel late in the day on September 14, 2006.


I declare under penalty of perjury that the foregoing is true and correct.

                                        _____/s/ ALAN M. FREEMAN_____
                                        Alan M. Freeman


Executed on September 21, 2006 in Washington, D.C.

123781.00601/35748715v.2