UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | : | |
|---|---|---|
| **MARLIN GODFREY, et al.,** | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO.: 1:05-cv-2044 (ESH) |
| | : | (DAR) |
| v. | : | |
| | : | |
| **ALLEN IVERSON** | : | |
| | : | |
| Defendant. | : | |
| | : | |

### PLAINTIFFS' REPLY TO DEFENDANT KANE'S OPPOSITION
### TO THEIR MOTION TO EXTEND THE TIME TO COMPLETE DISCOVERY

Comes now the plaintiffs, by and through counsel, and hereby submit their reply to the opposition of Jason Kane to their motion to extend the time to complete depositions. Mr. Kane, who has flat out lied in this proceeding, withheld documents in this proceeding and unequivocally violated an order of this Court, has the audacity to represent to this Court that plaintiffs' "failure to complete depositions within the Scheduling Order is a dilemma entirely of their own creation." Opp. at 1.[1]

Mr. Kane proceeds to note in his opposition that the Court on September 15, 2006 extended discovery until October 13, 2006. Conveniently, Mr. Kane omits the fact that plaintiffs' motion to compel was also granted at that time because of his ridiculous discovery responses and that an order issued for him to properly respond to plaintiffs' discovery requests, which by the way he failed to do and will be fully addressed in a forthcoming pleading.

---

[1] Inexplicably, Mr. Kane and his counsel advance the position to this Court that notwithstanding the fact that specific dates for depositions to be taken in October had been set aside in September, plaintiff still had an obligation to provide them with a notice of deposition five days in advance of the previously scheduled date. This modus of operation apparently did not apply to them since they scheduled a deposition of Terrence Williams for October 5, 2006 on one day's notice. Exhibit 1.

Mr. Kane next posits that the Court allowed each side to take up to four (4) additional non-party depositions and that plaintiffs agreed to take their non-party depositions on October 10 and 11. The plaintiffs never agreed to any such thing. The plaintiffs identified October 10 and 11 as definite deposition days that they would use, however, plaintiffs never agreed to limit themselves to October 10 and 11 for depositions. Furthermore, there is absolutely nothing in Mr. Kane's exhibit 1 which supports his position before the Court.

Next, Mr. Kane states the following:

> While Mr. Kane promptly noticed and took two non-party depositions, there is no evidence that plaintiffs' counsel issued any third party deposition subpoenas or notices of examination, or that they made any effort to serve such documents on any party or witnesses.

Opp. at 1-2. Mr. Kane's position is akin to a singer's first performance at Amatuer Night at the Apollo Theatre. Not ready for prime time. First of all, Mr. Kane's counsel knows full well that undersigned counsel was out of the country from October 4 through October 9, and that as a result thereof, plaintiffs' allotted depositions, were not scheduled during this time. In addition to this, Mr. Kane's counsel claimed to be unavailable until October in any event.

Secondly, Mr. Kane's counsel were specifically advised during Mr. Kane's deposition on October 3, 2006, that plaintiffs' process server had discovered that a number of the addresses provided by Mr. Kane were inaccurate and that Mr. Persons, in particular, did not live at the address provided, that his father lived there and he had passed, and that his father's companion, who presently lived in that home, indicated that Michael Persons had not lived at that address for years. Exhibits 2, 3 and 4 pointedly show that Mr. Kane has not a clue what he's talking about. These are the subpoenas, the affidavits of service and the invoices for service on the deponents that plaintiffs sought.

Continuing on his slippery slope, Mr. Kane next states:

> plaintiffs apparently failed to serve <u>any</u> deposition subpoena or notice of examination on Mr. Persons . . . Thus, there is no evidence that plaintiffs made even a minimally sufficient effort to depose Mr. Persons within the time period established by the Scheduling Order.

Plaintiffs attempted to serve Mr. Persons on October 2, 2006. Mr. Persons could not be found at the address provided. On October 3, 2006, Mr. Person was contacted by telephone by plaintiffs' process server. Mr. Person advised that he would get back in touch with the process server after speaking with Mr. Kane's counsel on October 3, 2006.

Additionally, Mr. Persons specifically spoke with Stephanie Moran and Gregory Watson and specifically advised them that he needed to discuss things with Mr. Kane's lawyer before he would appear for deposition. The plaintiffs did not know where Mr. Person lived, given the address provided by Mr. Kane. Mr. Kane did and unequivocally admitted during his deposition that he provided an address for Mr. Persons that he knew was inaccurate, his counsel's recollection notwithstanding.

Mr. Kane, ever the obstructionist with an angle, asserts next:

> If plaintiffs had properly served Mr. Persons with a deposition subpoena, neither Mr. Kane nor his counsel would have had the ability to veto plaintiffs' proposed deposition . . . Though Mr. Persons may have wished to speak with Mr. Kane or his counsel before being deposed, that desire could not have stand in the way of a properly served deposition subpoena.

Opp. at 3-4. Once again, it is not clear what Mr. Kane is talking about. Subpoenas are routinely ignored. Witnesses who know they are being sought, routinely attempt to avoid service, and defendants who do not want alleged witnesses deposed routinely provide false addresses for these witnesses. Query? Is it a coincidence that Mr. Persons finally stopped avoiding service

after plaintiffs filed the instant motion? Exhibit 3. There simply is no question that Mr. Kane is orchestrating this entire farce.

With respect to Sean Spencer, Mr. Kane's pleading is mind-boggling. On October 10, 2006, Gregory Lattimer directly spoke with William Martin and advised that Mr. Spencer had been served for his deposition to be taken on October 11; however, he is a truck driver and had to go to Atlanta, Ga., for work and would not return until Thursday, October 12. Mr. Martin was further advised that Mr. Spencer was willing to do his deposition on either the 12 or 13. Mr. Martin advised that he and Mr. Freeman were unavailable, no mention was made of the other counsel of record, Ms. Gershberg. Because Mr. Freeman and Mr. Martin were unavailable, Mr. Spencer's deposition did not go forward. The suggestion that plaintiffs did not diligently pursue the deposition of Mr. Spencer is patently absurd. Plaintiffs could have gone forward with the depositions of Mr. Spencer on October 12, or 13 and forced Ms. Gershberg to exercise her role as counsel of record. As a courtesy, which Judge Huevelle urged all counsel to extend to one another in this rather contentious matter, plaintiffs' counsel took the high road. And as Murphy's law would have it, no good deed goes unpunished.

Wherefore for the reasons stated herein and in the record of this proceeding, the Court is again urged to grant plaintiffs' motion.

Respectfully submitted,

Gregory L. Lattimer, [371926]
1100 H Street, N.W.
Suite 920
Washington, D.C. 20005
(202) 638-0095

Stephanie D. Moran, [471555]
E. Gregory Watson
Watson & Moran, LLC
8401 Corporate Drive
Suite 110
Landover, MD 20785
(301) 429-0505