**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARLIN GODFREY, *et al.*, | * |
| | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *  Civil Action No. 05-2044 (ESH) |
| | * |
| ALLEN IVERSON, *et al.*, | * |
| | * |
| Defendants. | * |
| | * |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' JOINT OMNIBUS MOTION IN
LIMINE TO EXCLUDE INADMISSIBLE TESTIMONY AND EVIDENCE**

Defendants Allen Iverson, Gregory Iverson and Jason Kane respectfully submit this
memorandum in support of their Joint Omnibus motion in limine to exclude Plaintiffs Marlin
Godfrey and David Kittrell from introducing, or otherwise raising in the presence of the jury, the
improper, prejudicial and otherwise inadmissible testimony or evidence described herein.

## I.    Introduction

This case involves a bar fight and allegations of a simple assault and battery. At the heart
of this matter are four primary issues: who started the fight, who participated in the fight, what
was the cause of the fight and what damages – if any – resulted from the fight. Rather than
litigating this matter based on the actual merits and issues involved, Plaintiffs have attempted to
create a case – claiming conspiracies, negligent hiring, and emotional distress – based on
inadmissible testimony and evidence such as alleged prior bad acts, lay testimony, hearsay news
reports, irrelevant television shows, double hearsay statements and unspecified threats against
Plaintiffs by unknown individuals. Plaintiffs want the case to focus on anything and everything

Defendants have done in their lives other than any alleged participation in the fight underlying this matter. This approach to litigation is misguided and should be curtailed.

One of the best examples of Plaintiffs' misguided attempt to create a case based on inadmissible testimony and evidence is their case for damages. Plaintiffs seek over five-million dollars in damages against Defendants – primarily for emotional distress and loss of business income – without any expert testimony establishing the existence of verifiable emotional distress or a diminution of the value of any business by either Plaintiff as a result of the fight alleged in this matter. Instead, Plaintiffs' computation of damages rests solely on lay and hearsay testimony about these complex medical and economic issues. The admission of this type of testimony, as well as other numerous instances of inadmissible testimony and evidence making up Plaintiffs' case, is improper. Defendants are anxious to have their day in court to defend themselves against Plaintiffs' allegations about what happened during the alleged fight in question, but they should not be required to defend themselves against decades-old, extraneous matters – most of which arise from Defendant Allen Iverson's celebrity status. As a result, Defendants move in limine to exclude the inadmissible testimony and evidence discussed in detail below.

## II.    Background

Despite Plaintiffs' arguments to the contrary, the facts of this case are straightforward and narrow in scope. Early in the morning of July 20, 2005, Plaintiffs were involved in a fight at the Eye Bar, a local nightclub establishment in the District of Columbia. (Amended Complaint ¶¶ 9, 15). Defendants were present at the club on the morning of the fight and were seated close to Plaintiffs in the club's "VIP" section. (Exhibit A, May 10, 2006 Deposition of Allen Iverson ("Tr. Depo. Allen Iverson") at 185:5-7, 191:6-13; Exhibit B, May 4, 2006 Deposition of Marlin

2

Godfrey ("Tr. Depo. Godfrey (May 4, 2006)") at 11:3-15:20; Exhibit C, May 4, 2006 Deposition

of David Anthony Kittrell ("Tr. Depo. Kittrell (May 4, 2006)") at 12:22-13:4). The VIP section

was very crowded. (Tr. Depo. Kittrell (May 4, 2006) at 12:22-13:4; Exhibit D, September 28,

2006 Deposition of David Anthony Kittrell ("Tr. Depo. Kittrell (September 28, 2006)") at 46:8-

19). Plaintiffs admitted they were drinking since early the prior evening. (Tr. Depo. Godfrey

(May 4, 2006) at 14:11-15:10, 25:21-26:6; Tr. Depo. Kittrell (May 4, 2006) at 7:15-19). The

club was dimly lit and music played loudly throughout. (Tr. Depo. Godfrey (May 4, 2006) at

20:22-21:11; Tr. Depo. Kittrell (May 4, 2006) at 28:2-7). Seeing people in the club was difficult

because of the lighting. (Tr. Depo. Godfrey (May 4, 2006) at 20:22-21:11)   Hearing people

speak in the club was difficult because of the volume of the music. (Tr. Depo. Kittrell (May 4,

2006) at 28:2-7).

Sometime after Defendants arrived at the club and entered the VIP section, a fight

occurred that involved Plaintiffs and other people in the "VIP" section of the club. (Tr. Depo.

Allen Iverson (May 10, 2006) at 191:6-13). Plaintiff Kittrell alleges that neither Defendant Kane

or Defendant Iverson hit him. (Tr. Depo. Kittrell (May 4, 2006) at 25:2-5). Similarly, Plaintiff

Godfrey never even saw Defendant Allen Iverson during the incident at the Eye Bar. (Tr. Depo.

Godfrey (May 4, 2006) at 33:7-10; 34:6-8). In fact, most of what Plaintiffs appear to know about

this matter comes from their attorneys rather than their own actual knowledge. (Tr. Depo.

Godfrey (May 4, 2006) at 31:21-32:2). Plaintiff Godfrey sustained some injuries including a

concussion, a ruptured ear drum, a burst blood vessel in his eye, a torn rotator cuff, cuts and

bruises – none of which were permanent – because of the fight. (Tr. Depo. Godfrey (May 4,

2006) at 39:2-40:3). Plaintiff Kittrell claims to have sustained some bruises and soreness

because of the fight (Tr. Depo. Kittrell (May 4, 2006) at 31:7-12), although he has never been

3

treated by any medical personnel for any of the injuries he allegedly sustained because of the fight in question. (Id. at 34:21-35:2). Defendants contend they did not injure Plaintiffs. (Tr. Depo. Allen Iverson at 191:6-17, 193:12-21; Exhibit E, October 3, 2006 Jason Kane ("Tr. Depo. Kane") at 154:19-155:16). Defendants left the Eye Bar prior to Plaintiffs receiving any alleged injuries. (Tr. Depo. Allen Iverson at 191:6-17; Tr. Depo. Kane at 145:16-146:6).

### III.    Argument

**A.    The Court Must Exclude Testimony or Evidence Relating to Plaintiffs' Negligent Hiring and Negligent Infliction of Emotional Distress Claims because under the law of the District of Columbia, Plaintiffs Cannot Establish that Defendants Breached Any Duty of Care due to the Lack of Expert Testimony.**

Plaintiffs' claims for negligent hiring and negligent infliction of emotional distress fail as a matter of law because they require Plaintiffs to establish a deviation from a standard of care by expert testimony, which Plaintiffs here cannot do. Under the District of Columbia's law, "a plaintiff in a negligence action bears the burden of proof on three issues: the applicable standard of care; a deviation from that standard; and a causal connection between such deviation and the injury." Edwards v. Okie Dokie, Inc., 473 F.Supp.2d 31, 45 (D.D.C. 2007). This Court has held that "[w]here 'the subject in question is so distinctly related to some science, profession or occupation as to be beyond the knowledge of the average layperson, a negligence plaintiff must present expert testimony to establish the standard of care.'" Id. (citation omitted). The standard of care for security at a nightclub is an example of an occupation that is outside the knowledge and everyday experience of lay people as this Court and other courts have determined.[1]

---

[1] See, e.g., Predzin v. DC Arena Limited P'ship, No. 02-9582, at *6 (D.C.Sup.Ct. Oct. 7, 2003) (noting that "technical knowledge of the security business and . . . a familiarity with the exercise of professional judgment by trained security officials" are outside the "everyday experiences and understanding of average lay people," so that expert testimony was needed to evaluate what security personnel should have done); see also Hill v. Metropolitan, 779 A.2d 906, 910 (D.C. 2001) (expert testimony necessary for standard of care in crowd control and management).

4

In Edwards, a case analogous to this one, nightclub patrons sued the owner and operator of the nightclub, among others, for negligent hiring and intentional and negligent infliction of emotional distress and assault and battery. This Court dismissed the claims stating that the lack of expert testimony establishing the requisite duties and level of medical injuries precluded the plaintiffs from recovering. The Court concluded that "D.C. district and local courts have held that expert testimony is required to establish the standard of care for a claim of negligent hiring, training, and supervision of security personnel." Id. (citing Fletcher v. Dist. of Columbia, No. 01-0297, 2005 WL 670676, *6 (D.D.C. 2005)). The Court also stated that "a plaintiff's failure to name an expert constitutes grounds for dismissal." Id. (citation omitted).

Here, as in the Edwards' case, Plaintiffs have not designated any expert to establish the standard of care for the Iverson security personnel, or their alleged breach of the standard of care, that Plaintiffs claim is the cause of their injuries. Rather than rely on expert testimony, Plaintiffs rely on their own lay opinions and the lay opinions of other witnesses who have neither been designated as experts nor have sufficient expertise within private security services to meet the necessary threshold. As a result of Plaintiffs' inability to establish the requisite duties as a matter of law, the Court should exclude all testimony and evidence relating to their negligent hiring and supervision and negligent infliction of emotional distress claims.[2]

---

[2] In their Complaint, Plaintiffs assert a claim of negligent hiring alleging that Defendant Allen Iverson failed to take steps to ensure the qualifications and disposition of his security personnel. Although Plaintiffs' allegations of wrongdoing are limited to Iverson on this claim and despite the lack of any evidence whatsoever that Defendant Kane hired anyone, Plaintiffs still assert the negligent hiring claim against Defendant Kane — purportedly under the theory that Defendant Kane negligently hired and supervised himself. This position lacks any basis in fact and law.

5

**B.    The Court Must Exclude All Testimony or Evidence Related to Plaintiffs' Alleged Emotional Distress Damages in Connection with All of their Claims because of Plaintiffs' failure to designate Medical Experts to Substantiate the Existence of the Complex Medical Injuries in this Case.**

Testimony and evidence related to Plaintiffs' alleged emotional distress should also be excluded because no medical expert has been designated to testify to the existence of such distress. While in some instances the absence of expert testimony or other evidence that a psychiatrist or other physician examined plaintiff does not preclude a finding of emotional distress, that is not the case when (like here) a plaintiff in a personal injury action claims damages of a psychiatric or psychosomatic nature of mental incapacity. See, e.g., Jones v. Miller, 290 A.2d 587, 590 (D.C. 1972). These types of cases involve complicated medical question for which expert medical testimony is required. Id.[3] The D.C. Circuit opined on this very point stating that:

> Whereas testimony from lay witnesses may be sufficient to establish that an individual is "distressed" in some fashion, it may not be sufficient to establish that an individual suffers from a particular medical condition . . . which only professional medical care providers may be qualified to diagnose. Moreover, lay witness testimony may not be sufficient to demonstrate that particular conduct caused these complex medical conditions.

*Jefferson v. MilVets Systems Technology, Inc.*, 1999 WL 66027, *1 (D.C.Cir. Jan 26, 1999) (citations and quotations omitted). More important, this court has held specifically that in cases involving bar fights allegedly arising from security failures, expert testimony is needed to prove a claim for intentional and negligent infliction of emotional distress. Edwards, 473 F.Supp.2d at

---

[3] See also Wilhelm v. state Traffic Safety Comm'n., 185 A.2d 715, 719 (Md. 1962) (stating that where the cause of an injury involves a complicated medical question involving fact finding which properly falls within the province of medical experts (especially when the symptoms of the injury are purely subjective in nature, or where disability does not develop until after the negligent act), proof of the cause must be made by such expert witnesses) (citing 65 C.J.S. Negligence § 244, p. 1096)).

46-47 (stating "[l]ike the claims for assault, battery, and negligence, an intentional infliction of emotional distress claim requires expert testimony").

In light of the lack of expert testimony in this matter, Plaintiffs should be precluded from introducing testimony or evidence related to their claims for intentional and negligent infliction of emotional distress claims. There can be no doubt that Plaintiffs have failed to designate an expert on emotional distress. In fact, no health care provider has provided a statement or report that Plaintiffs indeed are suffering emotional distress. Even the scant medical records that Plaintiffs have produced fail to mention, let alone conclude, that they suffer or suffered any emotional distress. The closest thing Plaintiffs proffer as expert testimony is Plaintiff Kittrell's testimony that he spoke with his mother about the events. (Tr. Depo. Kane at 52:9-61:9). Although Mr. Kittrell testified that his mother has received a Master's Degree Social Work and Counseling (Tr. Depo. Kittrell at 54:4-10 (September 28, 2006)), she has not been identified as an expert witness, no reports have been provided, and she would not qualify as an expert on emotional distress in any event.

The need for expert testimony here is important because this case does not present your garden variety emotional distress claims. Plaintiff Kittrell claims to suffer from diverticulosis (polyps in the lining of his colon) as a result of the stress from the incident at the Eye Bar. (Tr. Depo. Kittrell (May 4, 2006) at 35:5-36:22). Perhaps more serious, Plaintiff Godfrey claims his distress arose from his injuries that allegedly include a ruptured ear drum, a burst blood vessel in his right eye, a torn rotator cuff to his right shoulder, which caused him to be prescribed Ambient and Paxil by a psychologist or psychiatrist. (Tr. Depo. Godfrey (May 4, 2006) at 51:1-54:19). In light of the absence of qualified medical testimony to verify the existence of these complex medical diagnosis and conclusions, testimony or evidence of emotional distress or accompanying

7

symptoms, including medical records, should be excluded. Otherwise, the jury would be able to hear technical medical conclusions and diagnosis from the lay Plaintiffs; a disadvantage to Defendants and prohibited under the rules of Evidence. See Fed. R. Evid. 701 and 702 (lay opinions are limited to ordinary inferences and characterizations). Defendants should not be punished for Plaintiffs' failure to designate experts.

Even if Plaintiffs were able to establish the existence of emotional distress from their conclusory lay testimony and scant medical records, they would still need expert testimony to establish a causal link between their distress and the incident at the Eye Bar. This is especially necessary since Plaintiff Kittrell concedes he was stressed even before the incident at the Eye Bar occurred. (Tr. Depo. Kittrell (May 4, 2006) at 38:12-16.) Plaintiffs present no expert testimony regarding how their everyday life stressors can be distinguished from the stress they allegedly sustained from the fight as the causative factor of their alleged emotional distress. Rather than expert testimony about how the fight caused serious medical conditions in one Plaintiff and the prescription of medication for the other, Plaintiffs only offer their own lay testimony about the extent and cause of their alleged but complex emotional injuries. (Tr. Depo. Kane at 52:9-61:9; Tr. Depo. Godfrey (May 4, 2006) at 51:1-54:19.) Far worse, in doing so, Plaintiffs try to imply that their emotional distress is based on nonexistent medical diagnoses. (See Amended Complaint at ¶¶ 23-4, 29, 33 and 47). These instances of testimony are nothing more than improper lay testimony under Federal Rules 701 and 702 in addition to being impermissible hearsay. As a result of being unable to establish a causative link without expert testimony, Plaintiffs' testimony and evidence relating to their emotional distress damages must be excluded consistent with the abundance of D.C. law on this issue.

8

**C.    The Court Must Exclude All Testimony and Evidence of Other Alleged Incidents Involving Defendants because these Incidents are Irrelevant to the Claims in this Matter and are More Prejudicial than Probative.**

Plaintiffs have spent considerable time during discovery discussing stories, gossip, urban legend and innuendo that Defendants were involved in other fights at other nightclub establishments and parties before their alleged involvement in the incident underlying this case. Plaintiffs' counsel asked witnesses repeatedly during depositions about the following:

(1)    an alleged shooting at a party hosted by a former Washington Redskin, Lavar Arrington, at which Defendant Kane worked as security; (Exhibit F, April 25, 2006 Deposition of Curtis Fitzgerald ("Tr. Depo. Fitzgerald") at 70:15-71:4, Exhibit G, May 19, 2006 Deposition of Nikeith Goins ("Tr. Depo. Goins") at 173:18-174:09);

(2)    an alleged fight involving Defendant Allen Iverson at the Republic Gardens nightclub (Tr. Depo. Allen Iverson at 34:8-38:12, 75:8-76:21);

(3)    an alleged shooting at the Zanzibar nightclub when Defendant Kane worked security (Tr. Depo. Goins at 77:18-94:17);

(4)    other alleged incidents of misconduct involving Defendant Iverson at Zanzibar on the Waterfront nightclub including, *inter alia*, any claims included in the now-pending civil actions entitled Broady v. Zanzibar on the Waterfront, LLC, *et al.* (U.S. District Court for the District of Columbia – Docket No. 1:06-cv-00792;

(5)    an alleged incident involving Defendant Kane and rap artist Lloyd Banks and/or members of the rap group called G-Unit (Tr. Depo. Kane at 114:10-116:17 (October 3, 2006));

(6)     incidents and/or a police investigation involving some group identified as the
Four Horsemen (Tr. Depo. Kane at 88:21-91:15, 147:8-9; 152:3-8, 168:2-12; Tr.
Depo. Goins at 50:16-54:7);

(7)     other undetermined incidents in Philadelphia, Pennsylvania (Tr. Depo. Allen
Iverson at 44:9-47:13), Hampton, Virginia, and Virginia Beach, Virginia (Tr.
Depo. Allen Iverson at 10:12-30:10, 38:14-44:8), and at a Crabbers Restaurant in
Virginia, including, *inter alia*, any claims included in the following, now-pending
civil actions: (a) Isman v. Iverson, *et al.* (Circuit Court of the City of Hampton,
Virginia – Case No CL06-2025); (b) Brown v. Iverson, *et al.* (Circuit Court of the
City of Hampton, Virginia – Case No. CL06-2026); (c) Cooper v. Iverson, *et al.*
(Circuit Court of the City of Hampton, Virginia – Case No. CL06-2027); and (d)
Simmons v. Iverson, *et al.* (Circuit Court of the City of Hampton, Virginia – Case
No. CL06-2028).  (Tr. Depo. Allen Iverson at 58:18-67:20; Tr. Depo. Kane at
212:15-213:11); and

(8)     whether a group of individuals that Mr. Iverson was a part of during his youth,
who referred to themseleves as the "Dynasty Raiders" and/or "Cruthik," was
actually referred to as a "gang."  (Tr. Depo. Allen Iverson at 15:6-29:11).

While these alleged incidents may be great for celebrity gossip tabloids and are rooted in
double hearsay and are otherwise unsubstantiated, the incidents simply have nothing to do with
the claims, defenses or facts involving the fight at the Eye Bar.  Perhaps the best example of
Plaintiffs' attempt to make this case about anything other than the fight at the Eye Bar is
Plaintiffs' reliance on an episode of the television show "Punk'd," during which Defendant Allen
Iverson, Defendant Kane and others appeared as victims of a practical joke designed to frustrate

10

the men. Plaintiffs point to this show as some sort of indictment on Defendants' character notwithstanding that it has absolutely nothing to do with this matter. As a consequence, any attempt by Plaintiffs to introduce evidence or testimony at trial regarding the other incidents would be improper for at least two reasons: (1) these incidents are clearly irrelevant to the disputed claims, and (2) even if these incidents somehow could be considered relevant, they would be inadmissible because their probative value is substantially outweighed by their propensity to prejudice all Defendants.

> **1.    Evidence or Testimony of Other Incidents is Irrelevant.**

Testimony or evidence regarding other incidents involving one or more Defendant is not relevant to any claims or conceivable defenses in the present action. Under the law of the District of Columbia, evidence or testimony may be considered relevant when: (a) it logically relates to the fact it is trying to establish; (b) the fact being established is material, so that "the party must establish that fact as a condition to prevailing on the merits of his case;" and (c) the evidence is sufficiently probative of the fact it is trying to establish, so that the evidence makes the "existence or non-existence of a fact more or less probable than would be the case without that evidence." Reavis v. United States, 395 A.2d 75, 78 (D.C. 1978). The court possesses significant discretion in determining whether or not evidence is relevant. Knight v. Georgetown University, 725 A.2d 472, 477 (D.C. 1999). The other alleged incidents do not meet the relevancy standard.

> **a.    Evidence or Testimony of Other Incidents do not Relate to this Case.**

The other incidents bear no logical connection to Defendants' actions in the matter presently before the Court. Whether a shooting allegedly occurred during a time when Defendant Kane worked security at a party or club has nothing to do with a fight at the Eye Bar.

11

Similarly, whether Defendant Iverson was allegedly involved in fights at other nightclubs involving different people and different circumstances would not make his involvement in a fight at the Eye Bar any more or less likely. Even if the unsubstantiated allegations of the other incidents were taken as true, they only operate to infringe upon Defendants' character rather than develop the facts and circumstances of the instant case. See Mercer v. United States, 724 A.2d 1176, 1185 (D.C. 1999) ("The admission of evidence whose sole purpose is to connect a defendant to a group of people of questionable character and not relevant to some other factual issue is improper"). Thus, evidence or testimony of other incidents should be excluded.

### b.     Evidence or Testimony of Other Incidents is not Material.

Assuming, *arguendo,* that Defendants were involved in the other incidents and that there is a relationship between the other incidents and the instant matter, both of which are not true, the other incidents are still irrelevant here because such a relationship would not be a material one. Instead, the relationship between the other incidents and the current incident would exist only because one or two Defendants were alleged to have been involved in both. Such a tangential relationship does not reach the point of materiality giving rise to relevancy. Certainly, these incidents could not be said to create a general practice or habit of Defendants' regular response to a repeated regular situation of going to a nightclub. Hummer v. Levin, 673 A.2d 631 (D.C. Mar 21, 1996) (stating that "the threshold requirement for admission of general practice evidence is a pattern of conduct or habit sufficient to support inference of systematic conduct and to establish regular response to a repeated regular situation) (citing Smith v. U.S., 583 A.2d 975, 981 (D.C. 1990) (stating that "the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given

12

manner, but rather, conduct that is 'semi-automatic' in nature")).[4] Defendants have been to

nightclubs hundreds of times without any incidents whatsoever. As a result, the prior incidents

could not be a material condition to prevailing on the merits of his case and therefore should be

excluded.

### c.    Evidence or Testimony of Other Incidents is Not Probative.

In addition to the lack of any logical connection or materiality with the other alleged

incidents, testimony or evidence regarding them is not probative of any facts at issue in this case.

Plaintiffs assert claims of assault and battery, intentional and negligent infliction of emotional

distress, negligent hiring and conspiracy. Each of these claims has nothing to do with the other

alleged incidents. The severity of the incidents differs. The people involved differ. The location

of the incidents differs. The time of the incidents differ. There is simply nothing in common

between the other alleged incidents and the incident at the Eye Bar. The other incidents,

therefore, are not relevant to Plaintiffs' claims, and certainly not essential to Defendants' ability

to present the merits of their case. Testimony or evidence of the other incidents is simply not

probative of any of the claims or defenses asserted in this action. The other incidents do not

make it any more or less likely that Defendants assaulted, conspired against or otherwise injured,

Plaintiffs and, consequently, the other incidents are not probative of any issue properly before the

Court so they should be excluded.

---

[4] The District has stressed that "habit or pattern of conduct is never to be lightly established, and evidence of example, for purposes of establishing such a habit, is to be carefully scrutinized before admission." Smith, 583 A.2d at 981 (citations omitted).

2.    **Evidence or Testimony of Other Incidents is Prejudicial.**

Even if the Court were to find testimony or evidence of the other alleged incidents to be

relevant, such evidence would still not be admissible because its probative value would be

substantially outweighed by its prejudicial effect on Defendants under Federal Rule 403. See

Mercer, 724 A.2d at 1185; Lyons v. Barrazotto, 667 A.2d 314, 327 (D.C. 1995). Here, the

probative value of the evidence, if any, is *de minimis*. The alleged misdeeds of Defendants in

other settings involving other people bear no logical connection to Plaintiffs' claims. Yet

admitting this evidence would likely cause the jury to speculate about Defendants' character and

propensity and open the door to the invalid inference that because one or two Defendants may

have been involved in another incident, they all must have been involved in the incident in this

case. Defendants would be forced to conduct a mini-trial on each and every incident if the Court

allows it, which would greatly expand the time of the trial in this case. Admitting this evidence

would likely confuse and distract jurors from the facts that are at issue and risk a jury verdict

based on immaterial considerations.[5]

D.    **The Court Must Exclude Testimony and Evidence of Defendants' Arrest Records
      and Police Investigations because they are Irrelevant, Offered to Show Propensity
      and More Prejudicial than Probative.**
      Consistent with their reliance and citation to other alleged prior misconduct by

Defendants, Plaintiffs spent considerable discovery efforts focusing on Defendants' criminal

records, and the records should be excluded. The testimony and evidence regarding Defendants'

criminal records are irrelevant and more prejudicial than probative. None of the charges or

---

[5] Even if the court were to find that evidence or testimony of the other incidents were relevant to
some aspect of the case, and not unduly prejudicial to Defendants, the evidence would
nevertheless be inadmissible to the extent that Plaintiffs could use alternative methods or
evidence to support the same contention. Mercer, 724 A.2d at 1185.

convictions Defendants have faced before go to their veracity. None of the charges or convictions could constitute habit evidence involving bar fights. None of Defendants' charges or convictions involves elements of Plaintiffs' claims. Plaintiffs' reliance on the police records are simply devised to suggest propensity and smear Defendants' character, which are impermissible under Fed. R. Evid. R. 404 and 405. "It is well-settled law that the criminal record of a defendant may not be introduced into evidence at trial unless the defendant . . . otherwise places his character in issue." Letsinger v. U. S., 402 A.2d 411, 414 (D.C. 1979). Defendants' character is not at issue here; consequently, all testimony and evidence related to Defendants' prior police record must be excluded. Moreover, both Defendant Iverson's and Defendant Kane's prior convictions are more than 10 years old and thus must be excluded pursuant to Federal Rule of Evidence 609.

Moreover, even testimony and evidence regarding the police investigation of the incident at the Eye Bar should be excluded. That investigation continues and, thus, is irrelevant because of its tenuous findings which could change. More important, the police investigation of the Eye Bar incident is more prejudicial than probative. The jury will likely cast a suspicious eye or derive erroneous inferences of liability from any portion of the investigation focusing on Defendants. As a result, Defendants would be forced to greatly expand this trial to focus on the inadequacies of the investigation, which might confuse the jury. In return, the police investigation only has information marginally related to Plaintiffs claims and Plaintiffs can establish the same information through other sources. Thus, the police investigation of the incident at the Eye Bar, and any testimony and evidence relating thereto, should also be excluded.

15

**E.  The Court Must Exclude All Testimony and Evidence Regarding Mr. Iverson's Tattoos, Income and Financial Status.**

Plaintiffs have also spent considerable time during discovery discussing Mr. Iverson's tatoos and income. Plaintiffs' counsel repeatedly asked Mr. Iverson during his deposition about the meaning and significance of his numerous tatoos (Tr. Depo. Allen Iverson at 116:13-128:4 (May 10, 2006)), as well as his income and financial status (Id. at 168:21-176:13).

Any attempt by Plaintiffs to introduce evidence or testimony at trial regarding Mr. Iverson's tattoos would be improper for at least three reasons: (1) his body art is clearly irrelevant to the disputed claims; (2) his tattoos qualify as inadmissible hearsay; <u>and</u> (3) even if his tattoos somehow could be considered relevant, they would be inadmissible because their probative value is substantially outweighed by their propensity to prejudice Mr. Iverson.

For the same reasons, any attempt by Plaintiffs to introduce evidence or testimony at trial regarding Mr. Iverson's income or financial status would also be improper. In fact, these conclusions were echoed by Judge Huvelle in her February 10, 2006 Order, which prohibited Plaintiffs from inquiring – by way of interrogatories – with regard to any and all agreements and contracts between Mr. Iverson and the Philadelphia 76'ers, suggesting that Mr. Iverson's income is indeed irrelevant to this civil action and that such testimony and evidence should be inadmissible because its probative value is substantially outweighed by their propensity to prejudice Mr. Iverson.

**F.  The Court Must Exclude Testimony and Evidence Relating to Any Real or Perceived Attempts by Defendants to Settle this Matter.**

Plaintiff Kittrell testified during his deposition that Defendant Kane, and others purportedly on Defendants behalf, discussed settling or "squashing" this matter. (Tr. Depo. Kittrell (May 4, 2006) at 40:21-42:22). While Plaintiff's testimony about this issue appeared confused and vague, it is nevertheless impermissible. Federal Rules of Evidence 408 render

16

testimony or evidence relating to "offers of compromise" inadmissible when offered to prove liability for or validity of a claim that is disputed. Fed. R. Evid. 408. That is the case here. The suggestion that Defendant Kane (or any other person acting on his or other Defendants' behalf as Rule 408 covers) wanted to settle or "squash" this matter would suggest to the jury that Defendants tacitly concede their involvement in the incident at the Eye Bar and their corresponding liability. Admitting this type of information not only would contravene the purpose of Rule 408, but also would operate to quell the desire of others to participate in the settlement process — an important part of the judicial process. Therefore, any testimony or evidence of settlement offers should be excluded.

A separate basis exists to excluding the alleged offer of compromise in this matter, which is namely that Defendants deny they were ever involved in such an offer. Defendants' denial, coupled with Plaintiffs' inability to identify a single person who was purportedly involved with or made the offer, makes the offer a highly contested issue in addition to being an inflammatory issue as discussed above. Defendants would again be forced to conduct a mini-trial on whether they even made the offer if it is admitted, which should not be the case. Testimony and evidence about any offer to compromise should be excluded as irrelevant, inflammatory and contravene to Rule 408.

## G.    The Court Must Exclude Testimony and Evidence Relating to Hearsay Media Accounts of the Incident.

Plaintiffs also rely on news accounts and coverage of the Eye Bar incident as fact rather than the inadmissible hearsay that they actually represent. Specifically, News Channel 4 and other local news media outlets provided video and written coverage of the incident that were based on reporter's interpretations and compilations of various individuals who allegedly witnessed the incident (some named, some not). Courts typically find that except for limited

17

impeachment purposes, this type of media coverage is inadmissible evidence because it is hearsay statements that are irrelevant and prejudicial.[6]  Allowing these types of materials in this case would not only prejudice Defendants greatly, but also would allow the jury to view the very items courts sequester them from seeing and warn them against watching.  Morris v. United States, 564 A.2d 746 (D.C. 1989) (stating that "All of the leading cases in this area have involved juror exposure to media coverage of the actual trial in which they were sitting, and all involved their receipt of information that would have been inadmissible").  This Court should exclude the hearsay news accounts consistent with Fed. R. Evid. 801(c) and 805 and also find them irrelevant and prejudicial consistent with Fed. R. Evid. 401 and 403.

**H.    The Court Must Exclude Testimony and Evidence Relating to Unspecified Threats Against Plaintiffs.**

In another attempt to cast a suspicious eye on Defendants for conduct that neither involved the fight at the Eye Bar nor is otherwise attributable to them, Plaintiffs have attempted to rely on vague, unsubstantiated threats they allegedly received.  Plaintiff Kittrell testified that he received "[a] threat for [him] not to be out in the clubs, because, you know, if we do find you out in the club, you know, something is going to happen."  (Tr. Depo. Kittrell (May 4, 2006) at 43: 17-19.)  Plaintiff Kittrell goes on to testify that a mutual friend relayed the threat to him from

---

[6] See, e.g., Frain v. District of Columbia, 572 A.2d 447 (D.C. Mar 30, 1990) (stating that "[t]hroughout this case, counsel for appellants has inundated this court and the trial court with news articles, letters, oral recitations as to representations which she made to various agencies or officials, and other plainly inadmissible materials"); Miller ex rel. Miller v. Ford Motor Co., 2004 WL 4054843(M.D.Fla. Jul 22, 2004) (upholding motion in limine to preclude evidence concerning newspaper articles, television reports and other media publications); Vienne v. American Honda Motor Co., Inc., 2001 WL 83260 (E.D.La. Jan 26, 2001) (granting motion in limine to exclude media coverage holding that such coverage is (1) inadmissible hearsay, (2) irrelevant to the instant lawsuit, and (3) unduly prejudicial to the defendants); In re Columbia Sec. Litig., 155 F.R.D. 466, 474 (S.D.N.Y.1984) ("Often, when offered to prove that certain statements were made, newspaper and magazine articles are held inadmissible as hearsay.").

a conversation that that friend had with "some guys." (Tr. Depo. Kittrell (May 4, 2006) at 43:21-22.) Kittrell continued that the threat consisted of these unknown guys cautioning Plaintiff to "watch his back" in relation to some unknown incident or issue. (Tr. Depo. Kittrell (May 4, 2006) at 44:15-18.) Plaintiff then concedes he did not know who made the threats or even bothered to ask who made the threats. (Tr. Depo. Kittrell (May 4, 2006) at 44-45:20-22.) Despite knowing nothing specific about these alleged threats, he claims that he was also threatened three or four other times for which Plaintiff testified that he "doesn't recall the specific place, time, and all that." (Tr. Depo. Kittrell (May 4, 2006) at 44-45:20-22.) The obvious implication of the existence of these threats is that the Defendants or others acting on their behalf — perhaps with or without authority — made the threats against Plaintiffs. Testimony or evidence relating to these unsubstantiated, vague threats should be excluded as irrelevant,[7] improper character evidence of prior misconduct,[8] and extremely prejudicial in nature with no probative value.[9] Plaintiffs must prove their case on the merits rather than

---

[7] Reavis v. United States, 395 A.2d 75, 78 (D.C. 1978) (holding that relevancy is based on facts that relate to claims or defenses, that are material, and that make the existence or non existence of a fact more or less probable); see also Fed. R. Civ. P. 401. The alleged threats are irrelevant to claims and defenses here.

[8] United States v. Ring, 513 F.2d 1001 (6th Cir. 1975) (holding that evidence that defendant had made prior threats to third person was inadmissible under "intent" exception to general rule excluding evidence of prior misconduct); see also Fed. R. Evid. 404 (precluding character evidence on prior acts generally and allowing it in limited circumstances for relevant, non-propensity issues). The alleged threats, even if true, constitute prior misconduct irrelevant to the class.

[9] See Mercer, 724 A.2d at 1185; Lyons v. Barrazotto, 667 A.2d 314, 327 (D.C. 1995) (de minimis probative value of the evidence should be excluded if evidence is prejudicial); see also Fed. R. Evid. 401 and 403. The threats would greatly prejudice Defendants.

19

implicit or contrived conjecture about threats Defendants allegedly made through unknown

individuals who may or may not have acted on their own in relation to this case or another.

**I.     The Court Must Exclude Testimony and Evidence Relating to the Diminished Value or Revenue from Plaintiffs' Respective Businesses.**

Plaintiffs seek to recover damages for loss of revenue from their respective businesses

which allegedly occurred because of their participation in the fight at the Eye Bar.[10]  Plaintiff

Godfrey is a martial arts instructor who owns and operates his own martial arts academy.  (Tr.

Depo. Marlin Godfrey (May 4, 2006) at 5:2-22).  He claims that he lost profits and his business

was injured somehow when he missed time at the academy due to his injuries.  (Tr. Depo.

Godfrey (May 4, 2006) at 59:7-66:12).  Plaintiff Kittrell, in addition to participating in other

business ventures, is a real estate agent who owns and operates his own business.  (Tr. Depo.

Kittrell (May 4, 2006) at 5:4-7; 51:2-16).  He also alleges a diminished value of his business

because of the fight notwithstanding his complete absence of any injury whatsoever.  Even

assuming, *arguendo,* that Plaintiffs can establish liability, they should not be able to recover for

their respective alleged loss of business revenue because they failed to designate an expert

witness to testify about these matters.

Rule 702 determines when expert testimony is needed stating that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[10] Plaintiffs failed to allege lost profits and/or diminished business value in their Amended Complaint but claim to seek such damages in their interrogatories.  Plaintiffs should be prohibited from pursuing these damages because of their failure to plead them in addition to the reasons set forth herein.

20

Fed. R. Evid. 702. Under the law of the District of Columbia, testimony on the specialized area of business economics — such as lost profit, revenue or diminished value of a business — must be established by expert testimony. Kanuth v. Prescott, Ball & Turben, Inc., 949 F.2d 1175, 1182 (D.C. Cir. 1991) (finding that lost profits and valuation is established "with reasonable certainty through the use of such evidence as expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and any other relevant facts")  Without an expert witness to testify about the valuation or lost profits of a business, the court and jury are left to hear pure inadmissible speculation. See Robinson v. Robinson, 1996 WL 512201(D.C.Super. Jul 23, 1996) (stating that "on the record in this case, which is devoid of any expert testimony regarding the current value of the business, the court would have to engage in pure speculation if it sought to determine the current value of the business").

Here, Plaintiffs have not provided any expert testimony that would assist the tier of fact to determine the value of the loss of revenue any business owned by Plaintiffs actually incurred. Their claim of damage is not as simple and straightforward as calculating how much Plaintiffs have lost due to their absence from work based on an hourly rate. Rather, Plaintiffs seek damages for a diminished value of their respective businesses which requires an analysis of financial data, past performance, discount rates, market surveys for similar business and the like. Putting aside the fact that Plaintiffs have not produced this type of information in discovery, they are unqualified to testify about how the diminished value of their respective businesses translates into monetary damages. In light of the lack of expert testimony on this complex economical issue, the Court must exclude all testimony and evidence related to loss of income or revenue by Plaintiffs from their respective businesses as a result of the fight underlying this matter.

## IV.    Conclusion

WHEREFORE, Defendants respectfully request that the Court enter an Order precluding the testimony and evidence referenced herein.

Submitted this 30th day of May, 2007.

Respectfully submitted,

**SHERMAN, SILVERSTEIN, KOHL ROSE & PODOLSKY, P.A.**

Date: _____ May 30, 2007 _____

By: _____ /s/ Alan C. Milstein, Esquire _____
Alan C. Milstein, Esquire
Fairway Corporate Center
4300 Haddonfield Road – Suite 311
Pennsauken, NJ 08109
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
*Counsel for Defendant Allen Iverson*

**SUTHERLAND ASBILL & BRENNAN LLP**

Date: _____ May 30, 2007 _____

By: _____ /s/ William R. Martin, Esquire _____
William R. Martin (Bar No. 465531)
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 383-0100
Facsimile: (202) 637-3593
*Counsel for Defendant Jason Kane*

22