IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

MARLIN GODFREY et. al,                    *

     Plaintiffs,                          *

vs.                                       *          Civil Action No. 05-2044
                               *          (ESH)(DAR)

ALLEN IVERSON, et al.,                    *

     Defendants.                          *

## JOINT PRETRIAL STATEMENT

### A.  Parties and Counsel

#### Plaintiffs:

Marlin Godfrey
Anthony Kittrell

#### Plaintiff's Counsel:

Gregory L. Lattimer, Esq.          Stephanie D. Moran, Esq.
1100 H Street, NW                  E. Gregory Watson, Esq.
Suite 920                          Watson & Moran, LLC
Washington, DC 20005               8401 Corporate Drive
(202) 638-0095                     Suite 110
                                   Landover, MD 20785
                                   (301) 429-0505


#### Defendants:

Allen Iverson
Jason Kane

#### Defendants' Counsel:

Alan C. Milstein, Esq.                          William R. Martin, Esq.
Matthew A. Tucker, Esq.                         Thomas R. Bundy, Esq.
Sherman, Silverstein, Kohl, Rose & Podolsky, PA  Sunderland, Asbill & Brennan LLP
4300 Haddonfield, Suite 311                     1275 Pennsylvania, NW
Pennsauken, NJ 08109                            Washington, DC 20004

(856) 662-0700                                    (202) 383-0100
Attorneys for Defendant Allen Iverson            Attorneys for Defendant Jason Kane

## B.    STATEMENT OF THE NATURE OF THE CASE

### 1.    Plaintiff's Proposed Statement of the Nature of the Case.

On July 20, 2005, at approximately 1:30 a.m. the plaintiffs were patrons of a nightclub called the "Eyebar" who were seated in the VIP section. While in the VIP section, defendant Allen Iverson entered the Eyebar with several other individuals. He and his entourage were directed to the VIP section as well. When Defendant Allen Iverson and his entourage arrived at the VIP section, patrons already seated there were told to move. During the move, a physical altercation took place that cleared the Eyebar. The plaintiffs allege that the altercation began when defendant Kane attacked a member of the Club's security staff. The plaintiffs further allege that they were attacked by members of defendant Iverson's security detail and as opposed to exercising his duty of care and authority to stop the unwarranted attack by his security detail and independent contractors, defendant Allen Iverson joined in the fracas and did not in any way attempt to cease the hostilities. As a result of the actions of defendant Allen Iverson, his security detail and his agents, the plaintiffs suffered serious bodily injuries, mental anguish and mental distress. Defendants Iverson and Kane deny any involvement in the altercation at the Eyebar and, thus, also deny any liability under the theories Plaintiffs set forth in their Complaint.

### 2.    Defendants' Proposed Neutral Statement of the Nature of the Case.

On the early morning hours of July 20, 2005, Plaintiffs Godfrey and Kittrell, as well as Defendants Iverson and Kane, were present at EyeBar, a nightclub located at 1716 I Street in Washington, DC. At some point during the early morning, a physical altercation took place in the

EyeBar. Plaintiffs allege that Defendants were involved in the fight and, as a result, have sued Defendants, alleging in their Complaint that Defendants are liable under the theories of : (a) Assault and Battery (Count I); (b) Intentional Infliction of Emotional Distress (Count II); (c) Negligent Infliction of Emotional Distress (Count III); (d) Negligent Hiring, Training & Supervision (Count IV); *and* (e) Civil Conspiracy (Count V), and that as a result, Plaintiffs have sustained severe pain, emotional distress, mental anguish, and physical injuries. Defendants Iverson and Kane deny involvement in the altercation at the EyeBar and, thus, also deny any liability under the theories Plaintiffs set forth in their Complaint.

**C.     Claims and Defense**

    **1.     Plaintiffs' Claims**:

        a. Assault and Battery by both plaintiffs as to both defendants.

        b.  Intentional Infliction of Emotional Distress by both plaintiffs as to both defendants.

        c. Negligent Infliction of Emotional Distress by both plaintiffs as to both defendants.

        d.  Negligent Hiring & Supervision by both plaintiffs as to defendant Iverson.

        e. Civil Conspiracy by both plaintiffs as to both defendants.

Both plaintiffs also seek punitive damages against both defendants on the claims of assault and battery and civil conspiracy plus costs, and  interest.

    **2.     Defendants' Defenses and Counterclaims:**

        1.     Assault & Battery (Count I):

            a. Defendants did not attack Plaintiffs, or anyone, at the EyeBar, or any other location, on the evening in question;

b.  Defendants did not cause Plaintiffs to suffer bodily injuries, mental anguish, humiliation, or embarrassment;

c.  Defendants did not assault Plaintiffs;

d.  Defendants did not batter Plaintiffs;

e.  Defendants did not instruct anyone to assault or batter Plaintiffs;

f.  Plaintiffs proximately caused, in whole or in part, their own alleged injuries by their own conduct or fault;

g.  Plaintiffs' damages, if any, were proximately caused or contributed to, in whole or in part, by the intentional conduct or negligence of persons or entities other than Mr. Iverson and Mr. Kane for which Mr. Iverson and Mr. Kane are not responsible;

h.  Plaintiffs did not suffer any injuries or damages;

i.  Plaintiffs failed to mitigate their damages, if any; and

j.  Any harm to Plaintiffs caused by Defendants resulted from protective measures including self-defense and defense of others.

2.    Intentional Infliction of Emotional Distress (Count II):

a.  Defendants did not intentionally inflict emotional distress on the Plaintiffs;

b.  Defendants did not engage in any willful, wanton, reckless, or indifferent conduct towards Plaintiffs on the evening in question;

c.  Defendants did not inflict emotional distress or fear by way of their own intentional conduct on the evening in question;

d. Defendants did not instruct anyone to intentionally inflict emotional distress on the plaintiffs on the evening in question;

e. Plaintiffs did not suffer any injuries or damages as a direct or proximate result of Defendants' conduct on the evening in question;

f. Plaintiffs proximately caused, in whole or in part, their own alleged injuries by their own conduct or fault on the evening in question;

g. Plaintiffs' damages, if any, were proximately caused or contributed to, in whole or in part, by the intentional conduct or negligence of persons or entities other than Mr. Iverson or Mr. Kane for which Mr. Iverson and Mr. Kane are not responsible;

h. Plaintiffs failed to mitigate their damages, if any; and

i. Defendants conduct was neither extreme, outrageous, nor beyond the scope of decency.

3.  Negligent Infliction of Emotional Distress (Count III):

a. Defendants did not negligently inflict emotional distress on the Plaintiffs;

b. Defendants did not owe any duty or standard of care to Plaintiffs;

c. Defendants did not instruct anyone to negligently inflict emotional distress on the Plaintiffs;

d. Plaintiffs proximately caused, in whole or in part, their own alleged injuries by their own conduct or fault;

e. Plaintiffs' damages, if any, were proximately caused or contributed to, in whole or in part, by the intentional conduct or negligence of persons or

entities other than Mr. Iverson and Mr. Kane for which Mr. Iverson and Mr. Kane are not responsible;

f. Plaintiffs did not suffer any injuries or damages;

g. Plaintiffs failed to mitigate their damages, if any; and

h. Defendants conduct was neither extreme, outrageous nor beyond the scope of decency.

4.      Negligent Hiring, Training and Supervision (Count IV):

a. Defendant Iverson did not negligently hire security personnel, including defendant Jason Kane, or negligently instruct anyone to hire Defendant Kane;

b. Defendant Iverson did not negligently train security personnel, including Defendant Kane, or negligently instruct anyone to train or not to train Defendant Kane;

c. Defendant Kane was adequately trained;

d. Defendant Kane was adequately supervised;

e. Defendant Iverson does not directly hire individuals to act as his security;

f. Defendant Iverson utilizes the expertise and services of a security consultant, Jaques Wambush, and Gary Moore, who handles much of defendant Allen Iverson's personal business matters, in retaining security personnel;

g. Defendant Kane lacked the capacity to have negligently hired, trained, or supervised himself, as he was Defendant Iverson's only security personnel on the evening in question;

h.  Plaintiffs proximately caused, in whole or in part, their own alleged injuries by their own conduct or fault;

i.  Plaintiffs' damages, if any, were proximately caused or contributed to, in whole or in part, by the intentional conduct or negligence of persons or entities other than Defendants Iverson and/or Kane for which Defendants Iverson and Kane are not responsible;

j.  Plaintiffs did not suffer any injuries or damages; and

k.  Plaintiffs failed to mitigate their damages, if any.

5.     Civil Conspiracy (Count V):

a.  Defendants Iverson and Kane did not conspire with one another, or any other individuals, with regard to the Plaintiffs;

b.  Defendants Iverson and Kane did not enter into an agreement with one another, or any other individuals, to commit assault and battery against the Plaintiffs;

c.  Defendants did not assault Plaintiffs;

d.  Defendants did not batter Plaintiffs;

e.  There were no individuals in any agency relationship with Defendants Iverson and/or Kane present at the EyeBar on the evening in question;

f.  Defendants had no knowledge – whatsoever – of the Plaintiffs on the evening in question;

g.  Defendants had no knowledge of the Plaintiffs up until the claims associated with this lawsuit were asserted;

-7-

h.  Plaintiffs proximately caused, in whole or in part, their own alleged injuries by their own conduct or fault;

i.  Plaintiffs' damages, if any, were proximately caused or contributed to, in whole or in part, by the intentional conduct or negligence of persons or entities other than Defendants Iverson and/or Kane for which Defendants Iverson and Kane are not responsible;

j.  Plaintiffs did not suffer any injuries or damages; *and*

k.  Plaintiffs failed to mitigate their damages, if any.

D.      **Undisputed Issues/Stipulations**

On the early morning hours of July 20, 2005, plaintiffs Godfrey and Kittrell, as well as defendants Iverson and Kane, were present at the Eyebar.

E.      **Disputed Issues**

**Plaintiffs' Issues:**

Liability and the amount of compensatory and punitive damages that are warranted under the circumstances of this case.

**Defendant's Issues:**

All issues of fact, liability, causation and damages are in dispute.

F.      **Requested Stipulations**

None.

G.      **Relief Sought**

**Plaintiffs:**

Plaintiffs seek an award of compensatory and punitive damages, costs, interest and reasonable attorney's fees from the defendants.

**Defendants**:

Defendants seek all claims to be dismissed with prejudice and the payment of attorney's fees and costs as provided under the rules of civil procedure or as a matter of law.

H.     **Citations**:

**Plaintiffs'**

None that have not heretofore been brought to the attention of the Court.

**Defendants'**

Those set forth in Defendants pending motion in limine and proposed motion to bifurcate liability and damages portion of the trial.

**I.    Pending Motions**:

Defendants have filed a motion in limine to exclude inadmissible testimony and evidence. That motion was filed on May 30, 2007.

Defendants also will move to bifurcate liability and damages phases of this trial and may move for a reverse bifurcation in the alternative.

J.    **Witnesses**:

**Plaintiffs' Witnesses**:

1. Anthony Kitrell

Plaintiff Kitrell is expected to testify regarding the incident and the injuries he suffered.  1 hr.

2. Marlin Godfrey

Plaintiff Godfrey is expected to testify regarding the incident and the injuries he

suffered.  1 hr.

3.  Curtis Fitzgerald

Mr. Fitzgerald is expected to testify regarding his observations and interaction with the defendants at Eyebar.  1 hr.

4.  Andre DeMoya

Mr. DeMoya is expected to testify  regarding his observations and interaction with the defendants at Eyebar.  1 hr..

5.  Jamal Daniels

Mr. Daniels is expected to testify as to his observations at the Eyebar on the date of this incidents.  30 min.

6.  Saul Simington

Mr. Simington is now deceased.  His deposition will be read at trial.  30 mins.  **(Defendants' object to this witness based on unavailability)**

7.  Curtis Jackson, III

Mr. Jackson is expected to testify regarding his interaction with Terrace Williams and defendant Kane as it relates to security.  30 mins.  **(Defendants' object to this witness as not previously revealed during discovery and Defendants join Mr. Jackson's motion to quash trial subpoenas.)**

8.  Daryl Cooper

Mr. Cooper is expected to testify about Mr. Iverson's knowledge of the violent propensities of Mr. Kane and his condoning of and participation in such action.  30 min.  **(Defendants' object to this witness as not previously revealed during discovery**)

9.  Arthur Simmons

Mr. Simmons is expected to testify about Mr. Iverson's knowledge of the violent propensities of Mr. Kane and his condoning of and participation in such action.  30 min.  **(Defendants' object to this witness as not previously revealed during discovery**)

10.  Robin Isman

Ms. Isman is expected to testify about Mr. Iverson's knowledge of the violent propensities of Mr. Kane and his condoning of and participation in such action. 30 min. **(Defendants' object to this witness as not previously revealed during discovery**)

Priest Brown

Mr. Brown is expected to testify about Mr. Iverson's knowledge of the violent propensities of Mr. Kane and his condoning of and participation in such action. 30 min. **(Defendants' object to this witness as not previously revealed during discovery**)

11. Dr. Perry Alexion

Dr. Alexion is expected to testify as to the injuries Mr. Godfrey sustained and his prognosis. 30 mins. **(Defendants' object to this witness as an improper fact and expert witness)**

12. Dr. George Malouf

Dr. Malouf is expected to testify as to the injuries Mr. Godfrey sustained and his prognosis. 30 mins. **(Defendants' object to this witness as an improper fact and expert witness)**

13. Dr. German Nader

Dr. Nader is expected to testify as to the injuries Mr. Godfrey sustained and his prognosis. 30 mins. **(Defendants' object to this witness as an improper fact and expert witness)**

14. Dr. Memunatu Bangura

Dr. Bangura is expected to testify as to the injuries Mr. Godfrey sustained and his prognosis. 30 mins. **(Defendants' object to this witness as an improper fact and expert witness)**

15. Raymond Carnegie

Mr. Carnegie is expected to testify as to the injuries Mr. Godfrey sustained and his prognosis. 30 mins. **(Defendants' object to this witness as an improper fact and expert witness)**

16. All witnesses identified by the defendants that have not been objected to.

**Defendants' Witnesses:**

(i)     Defendant Allen Ezail Iverson
        1432 Monk Road
        Gladwyne, PA 19035

-11-

Mr. Iverson will testify, among other things, that: (a) he was present at the EyeBar on the evening in question; (b) he was accompanied by Defendant Kane, his only agent and/or security personnel present on the evening in question, as well as other individuals already identified who were not his agents or employees and who did not act at his direction or benefit; (c) he and Defendant Kane were not involved with the physical altercation that took place at the EyeBar on the evening in question in any way, shape or form; and (d) he and Defendant Kane left the EyeBar immediately when the altercation began.

(ii)    Defendant Jonathan "Jason" Kane
        9717 Natives Rocks Drive
        Virginia

Mr. Kane will testify, among other things, that: (a) he was present at the EyeBar on the evening in question; (b) he accompanied Defendant Iverson as his only agent and/or security personnel present on the evening in question, as well as other individuals already identified who were not Defendant Iverson's agents or employees and who did not act at his direction or benefit; (c) he and Defendant Iverson were not involved with the physical altercation that took place at the EyeBar on the evening in question in any way, shape or form; *and* (d) he and Defendant Iverson left the EyeBar immediately when the altercation began.

(iii)    Gary Moore
         5105 Sunrise Court
         Suffolk, Virginia 23435
         Tel: (757) 375-0211

Mr. Moore will testify regarding his role as Mr. Iverson's manager and consultant who handles much Mr. Iverson's personal business matters, including, but not limited to, the retention of security personnel for Mr. Iverson's safety

(iv)    Jacques Wambush
        Tel: (215) 508-6760

Mr. Wambush will testify regarding his role as an independent security consultant who has procured security personnel for Mr. Iverson for more than 6 years. **Plaintiffs object to this alleged witness as he has never been previously identified.**

(v)    Nicole Marie Wickliffe (Eyewitness)
       7404 Loughboro Lane
       Springfield, VA 22150

Ms. Wickliffe will testify: (a) that she was present at the EyeBar on the evening in question; (b) that she saw Defendant Kane in the VIP area of the nightclub with Defendant Iverson because she was standing in close proximity to them; (c) that she witnessed the altercation begin; (d) that she

-12-

then witnessed Defendant Kane usher Defendant Iverson out of the EyeBar immediately after the altercation began; *and* (e) that she did not witness Defendants Iverson and/or Kane hit, push, throw any objects, or otherwise become involved in said altercation.

> (vi)     Terra Barrow (Eyewitness)
>          Philadelphia Police Department
>          Badge #1147
>          One Franklin Square
>          Philadelphia, PA 19106

Ms. Barrow will testify: (a) that she was present at the EyeBar on the evening in question to meet Terrance Williams; (b) that she saw Defendant Kane in the VIP area of the nightclub with Defendant Iverson because she was standing in close proximity to them; (c) that she saw a man jump on Defendant Kane from behind while she was talking to Mr. Williams; (d) that Mr. Williams attempted to pull the man off Defendant Kane; (e) that Defendant Kane did not physically attack the Plaintiffs or any other individuals at the EyeBar on the evening in question, and (f) that Defendant Iverson was not involved in the altercation on the evening in question in any way, shape, or form.

> (vii)    Kimberly Belandi (Eyewitness)
>          EyeBar
>          1716 I Street
>          Washington, DC.

Ms. Belandi is expected to testify regarding her role as a waitress at EyeBar on the evening in question and anything she personally witnessed on the evening in question.

> (viii)   Crystal Cloonan **(Eyewitness)**
>          EyeBar
>          1716 I Street
>          Washington, DC.

Ms. Cloonan is expected to testify regarding her role as a waitress at EyeBar on the evening in question and anything she personally witnessed on the evening in question.

> (ix)     Andre DeMoya (Eyewitness)
>          EyeBar
>          1716 I Street
>          Washington, DC.

Mr. DeMoya is expected to testify regarding his role as an owner of the EyeBar, and: (a) that he witnessed the altercation but that he can only confirm that his security personnel and former Plaintiffs Curtiss Fitzgerald and Ansley Grant were involved; (b) that he pulled Plaintiff Godfrey off the ground during the altercation and carried him out of the VIP area;

(c) that he knew Plaintiffs Godfrey and Kittrell prior to the evening in question; (d) that he did not see Defendants Iverson and Kane arrive at the EyeBar on the evening in question, but that saw them in club later that evening; (e) that he knew Defendant Kane prior to the evening in question; *and* (f) that he didn't see Defendant Iverson do anything inappropriate on the evening in question.

(x)    Nikeith Goins (Eyewitness)
       DC Metropolitan Police Department
       415 Fourth Street, Southwest,
       Washington, D.C., 20024
       Cell: (301) 787-7325

Mr. Goins is expected to testify that: (a) he is an acquaintance of Defendant Kane; (b) he met Defendant Kane at the EyeBar on the evening in question; *and* (c) that he saw the altercation but did not see anyone get hit or throw any punches.

(xi)    Rex Johnson (Eyewitness)
        EyeBar
        1716 I Street
        Washington, DC.

Mr. Johnson is expected to testify regarding his role as a security guard at the EyeBar on the evening in question and regarding anything he personally witnessed on the evening in question.

(xii)   Robin Lyon (Eyewitness)
        EyeBar
        1716 I Street
        Washington, DC.

Mr. Lyon is expected to testify regarding his role as a promoter at the EyeBar on the evening in question and regarding anything he personally witnessed on the evening in question.

(xiii)  Jason McCree (Eyewitness)
        address & phone number unknown

Mr. McCree is expected to testify that he was present at the EyeBar on the evening in question and will state that he observed a light-skinned, bald, African-American male get into a confrontation with unknown members of the EyeBar security staff after the individual refused to move his seat. Mr. McCree will also state that Mr. Iverson and his party exited the club when the altercation began and that at no time did Mr. Iverson become involved in any type of altercation.

(xiv)   LaShanda Perry (Eyewitness)
        address & phone number unknown

Ms. Wickliffe is expected to testify: (a) that she was present at the EyeBar on the evening in question with Nicole Wickliffe; (b) that she saw Defendant Kane in the VIP area of the nightclub with Defendant Iverson because she was standing in close proximity to them; (c) that she witnessed the altercation begin; (d) that she witnessed Defendant Kane usher Defendant Iverson out of the EyeBar immediately after the altercation began; *and* that she did not witness Defendants Iverson and/or Kane hit, push, throw any objects, or otherwise become involved in said altercation.

(xv)    Will Spencer (Eyewitness)
        EyeBar
        1716 I Street
        Washington, DC.

Mr. Spencer is expected to testify regarding his role as a security guard at the EyeBar on the evening in question and regarding anything he personally witnessed on the evening in question.

(xvii)  Shawn Spitzer
        address & phone number unknown

Mr. Spitzer is expected to testify regarding his role as a driver for Mr. Iverson on the evening in question and regarding anything he personally witnessed on the evening in question.

(xviii) Demetrius Steele (Eyewitness)
        address & phone number unknown

Mr. Steele is expected to testify that he was present at the EyeBar on the evening in question with Gregory Iverson, and Defendants Iverson and Kane, but that neither he, Gregory Iverson, Defendant Iverson, Defendant Kane, nor any other individuals in their company were involved in the altercation at the EyeBar on the evening in question.

(xix)   Akil Weight (Eyewitness)
        EyeBar
        1716 I Street
        Washington, DC.

Mr. Weight is expected to testify regarding his role as a promoter at EyeBar on the evening in question and regarding anything he personally witnessed on the evening in question.

(xx)    Star Wickliffe (Eyewitness)

-15-

address unknown in Alexandria, VA
Tel: (703) 864-9049

Ms. Wickliffe is expected to testify: (a) that she was present at the EyeBar on the evening in question with Nicole Wickliffe; (b) that she saw Defendant Kane in the VIP area of the nightclub with Defendant Iverson because she was standing in close proximity to them; (c) that she witnessed the altercation begin; (d) that she then witnessed Defendant Kane usher Defendant Iverson out of the EyeBar immediately after the altercation began; *and* that she did not witness Defendants Iverson and/or Kane hit, push, throw any objects, or otherwise become involved in said altercation.

(xxi)  Terrance Williams (Eyewitness)
       8935 Holbart Street
       Springdale, Maryland, 20774
       Cell: (202) 391-8112.

Mr. Williams is expected to testify, among other things: (a) that he was present at the EyeBar on the evening in question with individuals other than Defendants Iverson and Kane; (b) that Plaintiff Godfrey instigated an unprovoked attack upon him during the altercation at the EyeBar on the evening in question; (c) that he took retaliatory measures to defend himself and others from Plaintiff Godfrey's attack; *and* (d) at no time was he acting at the direction of, on behalf of, or with the intent to benefit, either Defendant Iverson or Defendant Kane.

(xxii)  Gregory Iverson (Eyewitness)
        One Franklin Town Apartments - Unit 1106
        Philadelphia, PA

Mr. Iverson will testify that he was present at the EyeBar on the evening in question with his nephew, Allen Iverson, but that neither he, Allen Iverson, Defendant Kane, nor any other individuals in their company were involved in the altercation at the EyeBar on the evening in question.

(xxiii)  Jamal Daniels (Eyewitness)
         3201 25th Court
         Raleigh, North Carolina

Mr. Daniels will testify, among other things, that he was present at the EyeBar on the evening in question, that he witnessed a physical altercation involving Plaintiff Godfrey and that Defendant Iverson's "entourage" accompanied him out of the EyeBar when the altercation was still going on.  He will also testy to anything else he personally witnessed on the evening in question.

-16-

(xxiv)  Mike Persons (Eyewitness)
17201 Wesley Drive
Bowie, Maryland  20716

Mr. Persons is expected to testify: (a) that he is a security professional who had worked out with Defendant Kane prior to the evening in question; (b) that he had worked with Terrance Williams in past; (c) that he was present at the EyeBar on the evening in question providing security for a client named CoCo; (d) that he was near the VIP area when he saw a bald-headed man acting aggressive and then becoming involved in an altercation with pushing and punching; and (e) that as soon as the altercation began, he left the club with his client, as well as Defendants Iverson and Kane.

K.    **List of Exhibits**

**Plaintiffs:**

1. Photographs of Marlin Godfrey

**Defendants object to any photos not provided during the course of discovery; Defendants also object to the basis that the description of this exhibit is vague and ambiguous and, as a result, Defendants request that Plaintiffs identify all photos they intend to introduce as exhibits; and Defendants object on the basis that these photographs are prejudicial pursuant to Fed. R. Evid 403.**

2. Photographs of Allen Iverson and Jason Kane

**Defendants object to any photos not provided during the course of discovery; Defendants also object to the basis that the description of this exhibit is vague and ambiguous and, as a result, Defendants request that Plaintiffs identify all photos they intend to introduce as exhibits; and Defendants object on the basis that these photographs are prejudicial pursuant to Fed. R. Evid 403. including especially any photograph of Defendant Iverson or Defendant Kane that suggest a celebrity or social economic status including pictures of tattoos and jewelry.**

3. Video Tape of News Program

**Defendants object to the admittance of this exhibit on the basis of hearsay, irrelevant and prejudicial as set forth in Defendants' Motion in Limine at III.(G), which is incorporated herein by reference.**

4. Video Tape of the television program "Punk'd"

**Defendants object to the admittance of this exhibit on the basis of hearsay, irrelevant and prejudicial as set forth in Defendants' Motion in Limine at III.(G), which is incorporated herein by reference.**

    5   Medical records of Marlin Godfrey

**Defendants object to any medical records not provided during the course of discovery; defendants also object to the basis that the description provided is vague and ambiguous and, as a result, Defendants request that Plaintiffs identify all photos they intend to submit; and Defendants object on the basis that these photographs are prejudicial pursuant to Fed. R. Evid 403 including especially any photograph of Defendant Iverson or Defendant Kane status as a celebrity or social economic status including pictures of tattoos and jewelry.**

    6.  All exhibits identified by the defendants that have not been objected to.

**Defendants:**

    1.     Written Statement of Facts from eyewitness Nicole Wickliffe; **Objection: hearsay.**

    2.     George Washington University Hospital medical records for Plaintiff Godfrey;

    3.     Sibley Memorial Hospital medical records for Plaintiff Godfrey;

    4.     Malouf Eye Center's medical records for Plaintiff Godfrey;

    5.     The Offices of Dr. Chung's medical records for Plaintiff Godfrey;

    6.     The Offices of Dr. Perry Alexion's medical records for Plaintiff Godfrey;

    7.     Cheverly MRI/the Offices of Dr. German Nader's medical records for Plaintiff Godfrey;

    8.     The Offices of Dr. Memunatu Bangura's medical records for Plaintiff Godfrey;

    9.     All Exhibits on plaintiffs exhibits list which are incorporated herein by reference; and

    10.    All pleadings filed and discovery served in this matter.

L.    **Deposition Use**:

**Plaintiffs**:

It is anticipated that the videotaped depositions Mr. Iverson and Mr. Kane will be shown and that the deposition of Mr. Saul Simington, who is now deceased, will be read. Plaintiffs anticipate that any other deposition testimony will only be used for impeachment purposes.

**Defendants object to Plaintiffs use of the above referenced depositions to the extent they are inconsistent with Fed. R. Evid. 402, 403, 404, 802, 805 which, thereby, render use of the transcript and/or videotape depositions as inadmissible and/or improper under Fed R. Civ. P. 32.**

**Defendant**:

Defendants Expect to Read Portions of the Following Depositions at Trial:

1.    Defendant Allen Ezail Iverson (5/10/06);

2.    Defendant Jonathan "Jason" Kane (10/3/06);

3.    Plaintiff Marlin Godfrey (5/4/06 and 9/28/06);

4.    Plaintiff David Kittrell (5/4/06 and 9/28/06);

5.    Nicole Marie Wickliffe (10/27/06); **Plaintiffs object.**

6.    Terra Barrow (5/11/06); **Plaintiffs object.**

7.    Gary Moore (7/25/06); **Plaintiffs object.**

8.    Curtiss Fitzgerald (4/25/06); **Plaintiffs object.**

9.    Andre DeMoya (12/13/05); **Plaintiffs object.**

10.    Nikeith Goins (5/19/06); **Plaintiffs object.**

**11.**    Terrance Williams (10/5/06); **Plaintiffs object.**

**12.`**    Jamal Daniels (10/5/06); **Plaintiffs object.**

**13.**    Mike Persons (10/25/06); **Plaintiffs object.**

**14.**    Saul Simington (6/1/06); and

**15.**    Sean Studevert (6/1/06)**Plaintiffs object.**

**M.**    **Demonstrative or Physical Evidence**
**:**
   None.

**N.**    **Videotapes:**

   **Plaintiffs:**    None other than depositions or exhibits previously identified

   **Defendants:**    None.

**O.**    **Voir Dire Questions:**

   **Agreed Upon Voir Dire Questions:**

   1.  Has any member of the panel any knowledge, from any source, about the incident involving the parties to this action or know of David Anthony Kittrell, Marlin Godfrey, Allen Iverson or Jason Kane?

   2.  Does any member of the panel know, or is a member of the panel a friend of, or have any knowledge of, any witnesses in this case: See parties' witness lists.

   3.  Does any member of the panel know, or is any member of the panel a friend of, the attorneys in this case: Gregory L. Lattimer, Stephanie Moran, E. Gregory Watson, William R. Martin, Thomas R. Bundy, Alan Milestein or Mattew A. Tucker?

4.  Has any member of the panel, or any close friend or relative, ever been a plaintiff, or called as a witness by a plaintiff, in any civil action?

5.  Has any member of the panel, or any close friend or relative, ever been to the Eyebar Nightclub in Northwest Washington, D.C?

6.  Has any member of the panel, or any close friend or relative, ever attended an event hosted by Allen Iverson?

7.  Have you or any member of your family been a Defendant in a lawsuit or had a claim of any kind filed against them?  If so, when, where and under what circumstances?

8.  Have you or any member of your family ever been accused of assaulting anyone?

9.  Has any member of the panel read any newspaper or magazine accounts or seen or heard any radio or television reports concerning alleged misconduct or improper conduct by Allen Iverson?

10.  Has any member of the panel or any close friend or family member ever been employed in the field of law enforcement?

11.  Is there any member of the panel who has any legal training.

12.  Is there any member of the panel who for any reason is unable to sit in judgment on a case involving Allen Iverson?

13.  Is there any reason why you could not sit as a juror for 4-5 days?

14.  Is there any reason, not heretofore discussed, why any member of the panel feels that he or she would be unable to sit and hear this case and then render a fair and impartial verdict?

15.  Is there any member of the panel who is a fan of Allen Iverson?

16.  Is there any member of the panel who works or has ever worked in the entertainment industry?

17.  Is there any member of the panel who works or has ever worked for MTV?

**Defendants':**

Please see defendants' Requested Voir Dire Questions, attached hereto.  **Plaintiffs**

**objects to defendants separately requested voir dire.**

**P.**    **List of Standard Jury Instructions Requested**

**Agreed Upon District of Columbia  Jury Instructions**

| | |
|---|---|
| 1.01 | Function of the Court |
| 1.02 | Function of the Jury |
| 1.03 | Significance of Party Designations |
| 1.04 | Juror's Duty to Deliberate |
| 1.05 | Attitude & Conduct of Jurors |
| 1.06 | Instructions to Be Considered as a Whole |
| 1.07 | Court's Comments on Evidence |
| 1.08 | Court's Questions to Witnesses |
| 1.09 | Jury Not to Take Cue from Judge |
| 1.10 | Ruling on Objections |
| 1.12 | Equality of Litigants-individuals |
| 2.01 | Evidence in the Case |
| 2.04 | Inadmissible and Stricken Evidence |
| 2.05 | Statements of Counsel |
| 2.08 | Burden of Proof |
| 3.01 | Jury to Determine Credibility of Witnesses |
| 3.02 | Number of Witnesses |

| 3.05 | Deposition as Evidence |
|------|------------------------|
| 3.08 | Impeachment by Prior Inconsistent Statements |
| 3.09 | Adopting Prior Inconsistent Statements |
| 4.01 | Multiple Plaintiffs |
| 4.02 | Multiple Defendants |
| 12.03 | Burden of Proof - Speculative Damages |
| 12.04 | Multiple Defendants - Size of Verdict |
| 16.01 | Punitive Damages |
| 16.03 | Computation of Punitive Damage Award |
| 19.01 | Assault |
| 19.03 | Battery |

**Not Agreed Upon**

| 2.03 | Inferences (Objection) |
|------|------------------------|
| 2.06 | Jury's Recollection Controls (Objection) |
| 2.09 | Evidence Produced by Adversary (Objection) |
| 2.10 | Direct and circumstantial Evidence (Objection) |
| 6.01 | Establishing Employer-Employee Relationship (Objection) |
| 6.02 | Vicarious Liability - Basis (Objection) |
| 6.03 | Agency or Scope of Employment Conceded  (Objection) |
| 6.04 | Agency or Scope of Employment Contested (Objection) |
| 6.05 | Employer and Employee Sued (Objection) |
| 12.01 | Damages - Jury to Award (Objection) |

-23-

| 12.02 | Extent of Damages - Proximate Cause (Objection) |
|---|---|
| 12.05 | Damage Verdict - Multiple Defendants (Objection) |
| 13.01 | Damages - Elements (Objection) |
| 13.03 | Medical Treatment - Past and Present (Objection) |
| 13.04 | Lost Earnings - Past and Present (Objection) |
| 13.09 | Recovery for Emotional Distress (Objection) |

**b.    Defendants' Proposed District of Columbia Standard Jury Instructions**

| § 12.04 | (Multiple Defendants – Size of Verdict); (Objection) |
|---|---|
| § 12.07 | (Duty to Mitigate Damages); (Objection) |
| § 19.06 | (Assault and Battery – Affirmative Defenses); (Objection) |

**Q.    <u>Non-Standard Jury Instructions Requested</u>:**

**<u>Plaintiff</u>:**

None.

**<u>Defendants</u>:**

Please see Defendants' attached Proposed Non-Standard Jury Instructions, which are attached. **Plaintiffs object to defendants' non-standard jury instructions in their entirety**.

**R.    <u>Verdict Form</u>**

**<u>Plaintiffs' Verdict Form</u>:**

To be provided under separate cover.

**Defendants'**

Please see attached hereto Defendants' Proposed Verdict Form.  **Plaintiffs object to defendants' proposed verdict form in their entirety**

S.      **Settlement:**

**Plaintiffs'**

The parties attended mediation at which time the defendants advised that they had no interest in settlement.

**Defendants'**

Defendants do not believe any meaningful settlement discussions have occurred.

T.      **Estimated Length of Trial:**

**Plaintiffs'**

Plaintiffs expects that the trial of this matter will take four (4) to five (5) trial days.

**Defendants'**

The defendants expect this trial to last four to seven days.  In the event, Defendants' Joint Motion *In Limine* to Exclude Inadmissible Testimony and Evidence is granted, they expect trial to last one to two days.

**LAW OFFICES OF**
**GREGORY L. LATTIMER**

Date: _____June 8, 2007_____          By:_____

Gregory L. Lattimer, Esq.
1100 H Street, N.W., Suite 920
Washington, D.C. 20005
*Counsel for Plaintiffs*

**WATSON & MORAN, LLC**

Date: _____June 8, 2007_____          By:_____

Stephanie D. Moran, Esq.
E. Gregory Watson, Esq.
8401 Corporate Drive, Suite 100
Landover, MD 20785
*Counsel for Plaintiffs*

**SHERMAN, SILVERSTEIN, KOHL**
**ROSE & PODOLSKY, P.A.**

Date: _____June 8, 2007_____          By:_____

Alan C. Milstein, Esquire
Fairway Corporate Center
4300 Haddonfield Road – Suite 311
Pennsauken, NJ 08109
*Counsel for Defendant Allen Iverson*

**SUTHERLAND ASBILL &**
**BRENNAN LLP**

Date: _____June 8, 2007_____          By: _____

William R. Martin (Bar No. 465531)
1275 Pennsylvania Avenue, NW
Washington, DC 20004
*Counsel for Defendant Jason Kane*

*The foregoing Joint Pretrial Statement, as revised at the pretrial conference in the presence of counsel, shall stand as the pretrial order in this case*

--