IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARLIN GODFREY, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Action No. 05-2044 (ESH) |
| ALLEN IVERSON, *et al.*, | * |
| Defendants. | * |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANTS' JOINT OMNIBUS MOTION IN LIMINE TO
<u>EXCLUDE INADMISSIBLE TESTIMONY AND EVIDENCE</u>**

Defendants Allen Iverson and Jason Kane, by and through their undersigned counsel, hereby reply to Plaintiffs Marlin Godfrey's and David Kittrell's opposition to Defendants' Joint Omnibus Motion In Limine to Exclude Inadmissible Testimony and Evidence.

**I.    Introduction**

Ignoring the hyperbole, *ad hominem* attacks and sarcasm in Plaintiffs' Opposition (which do not merit a response) and, instead, focusing on the few legal arguments they actually advance, one thing becomes clear:  Plaintiffs concede that a number of issues they pursued during discovery involve inadmissible and prejudicial testimony and evidence.[1]  The Court should enter

---

[1] Plaintiffs concede, for example, that they will not admit testimony or evidence in any form relating to an alleged shooting at a party for Lavar Arington, (Opposition at 9); a fight at Republic Gardens, (*id.*); any alleged misconduct by Defendants at Zanzibar nightclub, including any shooting, (*id.*); any alleged incidents involving Defendant Kane and rap group G-Unit and Lloyd Banks, (*id.*); police investigation or reports of this incident, (*id.* at 11); criminal record of Defendant Iverson, (*id.*); any media news account of the Eye Bar incident, (*id.* at 7); alleged involvement in gangs by Defendants, (*id.* at 8); alleged threats by others against Plaintiffs and offers of settlement, (*id.* 18); and loss revenues from Plaintiffs' respective companies, (*id.* at 18-19).

an Order excluding these items from being introduced or otherwise raised in the presence of the jury. As for the few issues that Plaintiffs actually oppose, their Opposition is based on conclusory arguments, conflated issues and misstatements of law – none of which provide a basis for the Court to deny Defendants' motion in limine. Rather, the Court should grant Defendants' motion to exclude because the identified testimony and evidence has nothing to do with this case and its submission is improper under the rules of evidence.

## II. Legal Analysis and Argument

Notwithstanding Plaintiffs' argument to the contrary, Defendants' motion to exclude inadmissible testimony and evidence is procedurally and substantively correct. A motion in limine is used to address the question: "how does a judge try a case most effectively and fairly to all parties involved?" *Koller By and Through Koller v. Richardson-Merrell Inc.*, 737 F.2d 1038, 1066 (D.C.Cir. 1984), J. Richie, concurring (judgment vacated for other reasons). The answer to this question is provided in the:

> [T]horough and comprehensive pre-trial procedures that resolve in advance, all of the problems that may be reasonably anticipated or expected to arise at the trial. This is the purpose of Motions in Limine and Fed.R.Civ.P. 16. By promptly resolving such problems, the trial court will be securing the highest quality of justice, in the least amount of time, and at the lowest possible cost to the parties.

*Id.* In essence, the purpose for "allowing a motion in limine is to permit a witness to testify without threat of use of inadmissible evidence." *Butler v. United States*, 688 A.2d 381, 394 (D.C. 1996). In that regard, a motion in limine is used to bar testimony and evidence because it is inadmissible as a matter of law. *See, e.g., Gomilas v. Hyatt Corp.*, 1991 WL 120192, *1 n.1 (D.D.C. Jun 18, 1991) (finding that a 'motion *in limine* is similar to a directed verdict to the extent that defendants seek to dispose of one of plaintiffs' claims as a matter of law'); *U.S. ex rel. Miller v. Bill Harbert Intern. Const., Inc.*, 2007 WL 842082 (D.D.C. Mar 19, 2007) (motion

in limine to bar certain of plaintiffs' claims on the ground that these claims are time-barred as a matter of law).  Against the backdrop of this legal standard when applying the facts of this motion, it is clear that Defendants' motion in limine should be granted.

Refusing to focus on the merits of Defendants' motion, Plaintiffs chastise Defendants for moving in limine to exclude inadmissible testimony and evidence arguing that "[t]he time for filing a summary judgment motion has long since passed." (Opposition at 2.)   Plaintiffs try to create a procedural argument because the underlying merits do not weigh in their favor.[2]  Plaintiffs' argument, nevertheless, is non-sensical.  If Defendants could not seek to exclude testimony and evidence on issues that are precluded as a matter of law, then parties would be forced to endure the expense and time of trying issues that the Court knows it would preclude at the conclusion of a Plaintiff's case in chief.  If the jury then hears the evidence that will be excluded later that will operate to a defendants' detriment.  Once the jury hears the testimony or evidence, the bell is rung.  Even an instruction to ignore the testimony or evidence cannot un-ring the bell in the jury's mind.  Motions in limine exist to avoid these sorts of injustices.  Defendants' motion in limine to exclude certain inadmissible testimony and evidence as a matter of law is proper.

---

[2] Noticeably absent from Plaintiffs' argument concerning the timeliness of Defendants' motion in limine is any mention of the fact that Plaintiffs themselves filed their opposition more than a week late and did not ask the Court for relief to file the Opposition out-of-time.  Pursuant to Judge Huvelle's December 8, 2006 Pretrial Scheduling Order, Plaintiffs' Opposition was due "not later than fifteen (15) calendar days before the pretrial conference," or Monday, June 4, 2007, but was not filed until Monday, June 11, 2007.  Thus, in addition to the hypocrisy of Plaintiffs' argument, their Opposition is untimely, and should be struck for that reason alone.  *Nwachukwu v. Karl*, 216 F.R.D. 176 (D.D.C. 2003) (noting moving to strike late filed pleading is appropriate); *Ciralsky v. C.I.A.*, 355 F.3d 661 (D.C. Cir.  2004) (upholding order granting motion to strike untimely amended complaint).

Yet, Plaintiffs do not like the content of Defendants' motion because it exposes their case for what it is. Plaintiffs' case is not built on evidence relating to the fight at the Eye Bar in which Defendants are alleged to have participated and caused Plaintiffs' injuries. Instead, Plaintiffs' case focuses on other alleged incidents, most of which are as fictional as Plaintiffs' claims. Plaintiffs hope to benefit from these other alleged incidents by prejudicing the jury against Defendants and by confusing the jury on the actual issues of liability. This approach is improper. An examination of Plaintiffs' Opposition set forth below makes clear that they lack any basis in fact or law to challenge Defendants' motion in limine and, as a result, the Court should grant the motion.

**A.     Testimony or Evidence Concerning Plaintiffs' Claim for Negligent Hiring is Inadmissible Because Plaintiffs Cannot Establish Defendants Breached any Duty of Care as a Matter of Law.**

Defendants asked the Court to exclude testimony and evidence relating to Plaintiffs' claim for negligent hiring and supervision because Plaintiffs failed to designate an expert to establish that Defendants breached any duty of care. This Court has held that "[w]here 'the subject in question is so distinctly related to some science, profession or occupation as to be beyond the knowledge of the average layperson, a negligence plaintiff must present expert testimony to establish the standard of care.'" *Edwards v. Okie Dokie, Inc.*, 473 F.Supp.2d 31, 45 (D.D.C. 2007). (citation omitted). Plaintiffs concede that this standard is indeed correct. (Opposition at 3.) Defendants have provided ample case law applying the law of the District of Columbia that establishes the standard of care for security personnel's action is an example of an occupation that is outside the knowledge and everyday experience of lay people. (Motion at 4-6.) Plaintiffs simply do not like this aspect of the District's law. Plaintiffs do not like the District's requirement for expert testimony to establish negligent hiring cases involving security personnel

4

because it undermines their case by emphasizing their failure to designate the appropriate supporting witnesses. In essence, Plaintiffs want Defendants to bear the burden of Plaintiffs' ill-fated decision — whether that decision occurred by oversight or by a calculation to keep litigation costs down — to forgo expert testimony on negligent supervision. Such a position is obviously misguided.

Disliking the District's law requiring expert testimony for negligent hiring, Plaintiffs argue in a conclusory fashion that "[t]he fact of the matter is that expert testimony is not necessary in this case as there are no issues that are beyond the ken of the average layman, insofar as plaintiffs claim of negligent supervision is concerned." (Opposition at 5.) Plaintiffs try to distinguish the *Edwards* case from the instant matter stating again in a conclusory fashion that "[c]learly, the facts of *Edwards* are far different here." (*Id.* at 4.) Yet, Plaintiffs fail to explain just how the facts of the *Edwards* case — which involves almost identical claims arising from a bar fight among patrons and security personnel and the application of the District of Columbia law — is different from the instant case. Even if *Edwards* is distinguishable from the instant case (which it is not), Plaintiffs did not address the other cases cited by Defendants that support the same proposition, *i.e.*, an expert is needed to establish breach of duty for negligent hiring in the context of security personal cases. *See, e.g., Predzin v. D.C. Arena Limited P'ship*, No. 02-9582 (D.C.Sup.Ct. 2003); *Hill v. Metropolitan*, 779 A.2d 906, 910 (D.C. 2001). Moreover, rather than distinguish the lack of a need for expert testimony to establish negligent hiring in security cases, Plaintiffs point to another case, *Parker Grand Hyatt Hotel*, 124 F. Supp.2d 79 (D.D.C. 2000), that again required expert testimony for negligent hiring claim. In fact, Plaintiffs cite no legal authority or factual citation to the record whatsoever in support of their position regarding the lack of expert testimony. Instead, Plaintiffs argue that their

5

"complaint speaks for itself." (Opposition at 1.)  The time for resting on the conclusory allegations of their Complaint has come and passed.  Thus, considering the District clearly requires expert testimony in cases like this one, the Court should exclude testimony and evidence relating to Plaintiffs' claims for negligent hiring.

Given they cannot challenge the merits of this issue, Plaintiffs spend considerable time arguing that Defendants are "contradicting themselves" and "obviously know that the law does not support their position [with respect to expert testimony and negligent supervision], as evidenced by their proposed jury instruction." (Opposition at 3.)  This argument is much-to-do-about nothing.  Defendants' submission of proposed jury instructions pursuant to an Order of this Court that address the claims that are currently involved in this case neither contradicts nor limits Defendants from seeking to exclude testimony or evidence relating to an issue that is inadmissible as a matter of law.  Defendants will do what the Court tells them to do, when the Court wants them to do it and how the Court wants them to do it, which includes filing jury instructions on the issues in this case.

Even assuming *arguendo* that, contrary to the District's law on this issue, expert testimony is not needed to establish the breach of duty in cases involving security personnel, Plaintiffs provide no explanation whatsoever why they cannot elicit on cross examination of Defendant Iverson the information regarding the other incidents they believe establishes their case for negligent hiring.  Plaintiffs note that "Mr. Kane has been involved in a number of altercations some of which Mr. Iverson witnessed." (Opposition at 8.)  Plaintiffs have conceded that this issue relates to what Defendant Iverson knew about Mr. Kane, not what others knew about him. (*Id.* at 1-2.)  To the extent the Court finds expert testimony is not needed, that the evidence of the "other incidents" is admissible, that the evidence of the "other incidents" is more

6

probative than prejudicial (notwithstanding Plaintiffs themselves acknowledge that these incidents are prejudicial (Opposition at 10-11, n. 3)), Plaintiffs can establish what Mr. Iverson knew or did not know about Mr. Kane's background and these other alleged incidents giving rise to negligent hiring by asking Mr. Iverson.  Separate mini-trials on these extraneous issues are unnecessary for reasons articulated on pages 8 through 14 of Defendants' Motion.[3]

B.   **Testimony or Evidence about Plaintiffs' Claims for Emotional Distress is Inadmissible Because Plaintiffs Cannot Establish Verifiable Distress and Causation as a Matter of Law in Light of Their Failure to Designate an Expert Witness.**

Defendants moved to exclude testimony and evidence of emotional distress because Plaintiffs also failed to designate an expert witness to testify about the existence of such distress or that any distress was caused by the incident at the Eye Bar.[4]  Expert medical testimony is needed in this case because it involves complicated medical questions as discussed at length in Defendants' motion.  (Motion at 6-8.)  Defendants again noted in their motion how analogous the *Edwards* case was to this one as it detailed the basis for expert testimony in cases of negligent infliction of emotional distress arising from bar fights. (*Id.* at 6-7).  Defendants also provided several citations to the record explaining the complexity of the issue in this case and the need for expert testimony to explain these issues to the jury. (*Id.* at 7.)  In response to this issue, Plaintiffs argue (in conclusory fashion) that "[t]he defendants are wrong about when an expert is

---

[3] Plaintiffs' suggest that the conduct attributable to Iverson and Kane may be based on some nondescript "others" who include Terrance Williams. (Opposition at 2.) Plaintiffs do not make similar allegations in their Complaint and have not identified these "others" in discovery, thus, Plaintiffs should be prevented from putting on testimony and evidence of liability relating to these unidentified "others" at trial. Plaintiffs cannot refer to Mr. Williams as Defendant Iverson's agent never has previously alleging this is so.  The Court should exclude these references.

[4] Plaintiffs' Opposition ignores the issue raised by Defendants' motion in limine concerning the need for expert testimony to establish causation of emotional distress particularly given Plaintiffs have testified that they had stress in their lives prior to the incident in question.

needed" in connection with emotional distress. (Opposition at 8.) Plaintiffs simply refuse to address the law that Defendants cite supporting the proposition that expert testimony is needed in this case on emotional distress claims.[5]

Plaintiffs again try to circumvent the rules of this Court by cloaking expert witnesses under the guise of fact witnesses. Plaintiffs attempt to dismiss their failure to designate an expert to establish emotional distress in this case by arguing that they intend to call "treating physicians." (Opposition at 8.) Although Plaintiffs concede that these witnesses are not experts, Plaintiffs still want these physicians to testify about expert subjects like "prognosis and causation." (*Id.*) Case law, however, makes clear that only an expert can testify as to these subjects. *See, e.g.*, *Bynum v. MVM, Inc.*, 241 F.R.D. 52, 52 (D.D.C. 2007) (refusing to allow non-expert treating physician to testify "about plaintiff's current condition, prognosis, causation or permanency, and any other such forward-looking speculation, or other conclusion reached with the benefit of hindsight and after the underlying events that gave rise to this lawsuit"); *Anthony v. Wash. Metro. Area Transit Auth.*, 2005 U.S. Dist. LEXIS 41560 (D.D.C. 2005) ("[W]ithout an expert report, a treating physician may not testify as to issues of causation, foreseeability, prognosis or permanency.") (citing *Sowell v. Burlington N. & Santa Fe Ry. Co.*, No. 03 C 3923, 2004 U.S. Dist. LEXIS 24738 (D. Ill. 2004), at *4 (requiring written report for treating physician's causation testimony)); *Riddick v. Washington Hosp. Ctr.*, 183 F.R.D. 327, 330 (D.D.C. 1998) ("when the subject is not likely to be within the common knowledge of the

---

[5] Plaintiffs' Opposition conflates cases involving claims for emotional distress that do not rise to the level of complexity for which medical expert testimony is needed with those cases in which medical testimony is needed based on their complexity. The analysis for the need of expert testimony for distress claims is undertaken on a case-by-case review. Plaintiffs provide neither factual support nor legal citations for their position that an expert is not needed, but offer only than their own conclusory argument.

average person, as it usually is not"); *see also Allen v. Hill*, 626 A.2d 875, 877 (D.C. 1993) (same). Thus, Plaintiffs' reliance on these physicians in lieu of expert testimony is not only improper, but also fails to address the fact that Plaintiffs have no expert to establish causation of their emotional distress claims. Nonetheless, the Court need not consider this issue given excluding testimony and evidence relating to emotional distress is the proper course.

It is important to note, however, that Plaintiffs' eleventh hour designation of the physicians to testify about prognosis and causation, which fall into the realm of expert testimony, prejudices Defendants. Pursuant to Judge Huvelle's November 22, 2005 Scheduling Order, "Reports pursuant to Rule 26(a)(2)(B), Fed. R. Civ. P., by Plaintiff's retained experts [were] due by January 22, 2006" – nearly seventeen months ago. Had Defendants known that Plaintiffs intended to call their doctors as experts (or even fact witnesses for that matter), Defendants would have asserted their right to depose the doctors as experts, and would have also considered engaging their own experts on these issues. Even if the Court allows Plaintiffs the benefit of making these out-of-time expert designations, Defendants would be entitled to additional discovery on these issues and to counter-designate an expert, neither of which can be accomplished within the time remaining before trial. Finally, let us not forget that Plaintiffs concede these physicians are not experts. None of the doctors treated Plaintiff Kittrell, thus, his claim for emotional distress obviously cannot stand. Also, none of the doctors who treated Plaintiff Godfrey for physical injuries appear qualified to testify about emotional distress.[6] For

---

[6] Even though the Court's June 11, 2007 Order clearly required Plaintiffs to describe in detail the point of testimony for each of the treating physicians, Plaintiffs ignored this order. Plaintiffs provided one sentence, general descriptions of the testimony for the doctors. For one doctor, Raymond Carnegie, Plaintiffs provided no description of testimony at all. Like the filing of their Opposition, Plaintiffs simply ignore the orders of the Court.

all of the foregoing reasons, the doctors' testimony should be excluded, as should other testimony and evidence related to Plaintiffs' alleged emotional distress.

**C.     Testimony and Evidence Relating to Other Incidents Should be Excluded as Inadmissible.**

Out of the dozen or so unrelated incidents for which Plaintiffs sought discovery, Plaintiffs have conceded that all but three of the incidents include inadmissible testimony and evidence. The remaining three incidents are addressed below.

**1.     Reference to the "Four Horsemen" or Notoriously Violent Groups or Gangs.**

Plaintiffs contend that Defendant Kane is a member of a "notoriously violent" group called the Four Horsemen, (Opposition at 2 and 8), and that "the Four Horsemen are known throughout the Metropolitan area for their violent propensities," (*id.* at 8).  Unfortunately, adjectives and adverbs do not make their case.  Absent from Plaintiffs' Opposition is any citation to the record showing the connection between the desired use of catchy, but highly inflammatory and prejudicial phrases like "notoriously violent" group with Defendant Kane. All Plaintiffs have are stories rooted in double hearsay, which are otherwise unsubstantiated.  As such, these references are improper, and they must be excluded.

**2.     Reference to the "Crabbers Restaurant" Incident.**

Plaintiffs would like to call four witnesses about an incident at a Crabbers Restaurant in Hampton, VA that allegedly involved Defendants and occurred a few days before the Eye Bar incident.  They argue that these four witnesses are necessary to establish Plaintiffs' negligent supervision claim.  Notwithstanding that Defendants were not provided with notice that Plaintiff intended to call these four witnesses at the trial of this matter (see Plaintiff Marlin Godfrey's Answers to Defendant Allen Iverson's First set of Interrogatories, Plaintiff David Kittrell's Answers to Defendant Allen Iverson's First set of Interrogatories, Plaintiff Marlin Godfrey's

10

Answers to Defendant Jason Kane's Interrogatories, Plaintiff David Kittrell's Answers to Defendant Jason Kane's Interrogatories), it is quite clear that their testimony in this case would not shed any light on how Defendant Iverson was negligent in his supervision in the incident at the Eye Bar given the fact that none of the proposed witnesses were at the Eye Bar on the evening in question. Plaintiffs essentially want the jury to hear a separately filed matter and then determine liability and damages in this matter. The alleged incident at Crabbers Restaurant is irrelevant to this one. While it involved an altercation in a bar, an individual with no connection to Mr. Iverson or Mr. Kane was arrested and convicted for the alleged assault. While an action has been filed against Mr. Iverson related to that incident, no discovery has yet taken place in that matter and no proof exists that Mr. Iverson was involved at all in that altercation other than being present for a short period of time at the scene. In any event, this litigation is hardly the forum in which to try that litigation, which is currently pending in Virginia state court..

    3.    **Reference to the "Punk'd Video" Incident.**

Defendants argue that perhaps the best example of Plaintiffs' attempt to make this case about anything other than the fight at the Eye Bar is Plaintiffs' reliance on an episode of the television show "Punk'd," during which Defendant Allen Iverson, Defendant Kane and others appeared as victims of a practical joke designed to frustrate the men. (Motion at 10.) Defendants argued that Plaintiffs point to this show as some sort of indictment on Defendants' character and to show they acted in conformity therewith. Plaintiffs denied that they are trying to show improper character evidence of propensity and conformity. (Opposition at 10.) Confusingly, although claiming the show is not offered for conformity purposes, Plaintiffs claim that they are trying to "show how Mr. Iverson responds to matters with which he disagrees[,] . . . untoward conduct on the part of Mr. Kane and other members of Mr. Iverson's entourage which

11

is condoned by Mr. Iverson." Defendants are at a loss as to how this position advanced by Plaintiffs is not trying to show improper character evidence such as propensity and conformity under Rule 404(b) of the Federal Rules of Evidence, which is clearly inadmissible. Moreover, even if the Punk'd show is admissible under Rule 404(b), it is still inadmissible because it is more prejudicial than probative particularly given it involves a practical joke designed to frustrate and embarrass Mr. Iverson.

D. **Testimony or Evidence Concerning Defendant Kane's Arrest Record is Inadmissible.**

Believing that a negligent hiring and supervision claim is a silver bullet that allows otherwise inadmissible evidence to become admissible, Plaintiffs argue that Defendant Kane's police record, while inadmissible on grounds of character evidence, is admissible because it relates to the negligent supervision claim. In advancing this argument, Plaintiffs misrepresent the record claiming that Defendant Kane did not know when he was arrested and incarcerated for malicious wounding. The record is clear that Defendant Kane was arrested following a high school fight and incarcerated shortly after his graduation from high school and before he attended college in or about 1991 or 1992. (Kane Depo. at 229-30.) Plaintiffs, however, misrepresent this issue claiming that "Mr. Kane does not recall when he was arrested, convicted, incarcerated or released from prison." It is clear that the arrest, conviction, incarceration and release occurred more than 10 years age and, thus, is inadmissible under Rule 609(b) of the Federal Rules of Evidence. Moreover, the fact that Defendant Kane was convicted and served prison time does not make it any more or less probable that Defendant Iverson negligently supervised him during the incident at the Eye Bar, assuming Defendants were involved in the incident, which they were not. Thus, the police record is inadmissible based on relevancy grounds as well.

12

**E.     Testimony and Evidence Related to Personal Attacks on Defendant Iverson's Life are Inadmissible.**

Plaintiffs want to argue that Defendant Iverson is a wealthy "wanna be gangster or thug" who was involved in other incidents.  Unfortunately, this argument has nothing to do with whether Defendant Iverson was involved in a fight at the Eye Bar, but instead has everything to do with indicting Defendant Iverson for not conforming in the manner that Plaintiffs and/or their counsel believe Defendant Iverson should act.  Plaintiffs' basis for admitting testimony and evidence about Defendant Iverson's tattoos, financial status and affiliation with childhood friends makes this clear as discussed below.

**1.     References to Defendant Iverson's Tattoos Should be Excluded.**

Plaintiffs' devote 7 pages of their Opposition to discussing the relevancy of Defendant Iverson's tattoos to the current proceeding.  (Opposition at 12-17.)  Plaintiffs argue that this issue is relevant because it relates to Defendant Iverson's state of mind.  This position is frivolous for two primary reasons.  First, state of mind is an exception to the hearsay rule, not a determinate of relevancy. (See Fed. R. Evid. 802(3)).  Second, a statement of a "declarant's then existing state of mind" addresses the declarant's state of mind at the time the particularly statement was made.  As such, the only "state of mind" relevant to Mr. Iverson's tattoos is what he was thinking at the times when he got his tattoos – not his "state of mind" when the incident giving rise to this dispute occurred.  Plaintiffs do not and cannot articulate how Defendant Iverson's state of mind at the time he got tattoos is related to his state of mind at the time of the incident at the Eye Bar.  In reality, Plaintiffs' make it clear that their desire to admit testimony and evidence related to Defendant Iverson's tattoos has nothing to do with his state of mind, but has everything to do with indicting his character — namely that:

> Mr. Iverson lives a life based upon image, intimidation and perception. Indeed, despite his wealth, Mr. Iverson's appeal is that of a wanna be gangster or thug. He advances this persona by his disdain for authority and other anti-social behavior which includes aggressive physical behavior. Mr. Iverson's tattoos reflects that persona.

(Opposition at 18.)

Again, this statement has nothing to do with his state of mind, but rather everything to do with indicting Mr. Iverson based on myths and falsehoods about his character which are not at issue here. What is at issue is whether either of the Defendants assaulted either of the Plaintiffs in a melee that lasted all of five minutes and where one nonparty, Terrance Williams, admits to striking the only Plaintiff actually hit at the bar that evening, while denying he had any agency or other legal relationship with either Mr. Iverson or Mr. Kane.

    **2.**    **References to Defendant Iverson's Financial Status should be excluded.**

Plaintiffs want the jury to hear information related to Defendant Iverson's net worth. They claim it is relevant for purposes of punitive damages. There is no standard for punitive damages being based on the financial worth of a defendant. Plaintiffs cite no case law showing it is necessary to make an inquiry into a defendant's financial status in support of a finding of punitive damages. Moreover, any such analysis is premature given the fact that Plaintiffs must first establish liability and that the Defendants' actions were wanton and severe enough to warrant punitive damages. This point, coupled with the fact that most of Plaintiffs' case (not dealing with extraneous issues) involves issues relating to damages, illustrates the need for bifurcating this matter.

    **3.**    **References to "Cruthik" and/or "Dynasty Raiders" Should be Excluded.**

Similarly to the way in which Plaintiffs' have attempted to impugn Mr. Kane's character by contending that he is a member of a "notoriously violent" group called the Four Horsemen,

Plaintiffs also seek to establish Mr. Iverson's purported "disdain for authority and other anti-social behavior" by introducing testimony and evidence relating to his inclusion in a group of friends who refer to themselves as "Cruthik" and/or the "Dynasty Raiders." During Mr. Iverson's deposition, Plaintiffs' counsel spent considerable time eliciting testimony regarding the names and criminal records of Mr. Iverson's childhood friends who refer to themselves as "Cruthik" and/or the "Dynasty Raiders," despite the fact that not one of these individuals was even at the Eye Bar on the evening in question or has any knowledge of the incident giving rise to this litigation. There is no probative value of evidence and testimony of Mr. Iverson's inclusion in a group of high school friends who created nicknames for themselves, but there is a clear and substantial opportunity that such evidence or testimony will confuse the issues, mislead the jury and otherwise unfairly prejudice Mr. Iverson at trial.

WHEREFORE, Defendants respectfully request that the Court enter an Order precluding the testimony and evidence referenced herein.

Submitted this 17th day of June, 2007.                     Respectfully submitted,

                                                            **SHERMAN, SILVERSTEIN, KOHL**
                                                            **ROSE & PODOLSKY, P.A.**

Date:       June 17, 2007                          By:       */s/ Alan C. Milstein, Esquire*
                                                            Alan C. Milstein, Esquire
                                                            Fairway Corporate Center
                                                            4300 Haddonfield Road – Suite 311
                                                            Pennsauken, NJ 08109
                                                            Telephone: (856) 662-0700
                                                            Facsimile: (856) 488-4744
                                                            *Counsel for Defendant Allen Iverson*

|  |  |
|---|---|
|  | **SUTHERLAND ASBILL & BRENNAN LLP** |
| Date:   June 17, 2007 | By:   */s/ William R. Martin, Esquire*<br>William R. Martin (Bar No. 465531)<br>1275 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Telephone: (202) 383-0100<br>Facsimile: (202) 637-3593<br>*Counsel for Defendant Jason Kane* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 17, 2007, a copy of Defendants' forgoing Reply to Plaintiffs' Opposition to Defendants' Joint Omnibus Motion In Limine to Exclude Inadmissible Testimony and Evidence was filed via the Court's electronic filing system (ECF), which will automatically send a copy of the foregoing pleading to Plaintiff's following counsel of record:

Gregory L. Lattimer, Esq.
1100 H Street, N.W., Suite 920
Washington, D.C. 20005

Stephanie D. Moran, Esq.
E. Gregory Watson, Esq.
Watson & Moran, LLC
8401 Corporate Drive, Suite 100
Landover, MD 20785

A copy of Defendants' forgoing Reply to Plaintiffs' Opposition to Defendants' Joint Omnibus Motion In Limine to Exclude Inadmissible Testimony and Evidence will also be sent via first class mail, postage prepaid, to Plaintiffs' aforementioned counsel of record on June 18, 2007.

**SHERMAN, SILVERSTEIN, KOHL ROSE & PODOLSKY, P.A.**

Date:   June 17, 2007          By:   */s/ Alan C. Milstein, Esquire*
Alan C. Milstein, Esquire
Fairway Corporate Center
4300 Haddonfield Road – Suite 311
Pennsauken, NJ 08109
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
*Counsel for Defendant Allen Iverson*