**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MARLIN GODFREY, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 05-2044 (ESH) |
| | * | |
| ALLEN IVERSON, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**DEFENDANTS' RULE 50(a) MOTION FOR DIRECTED VERDICT**

Defendants Allen Iverson and Jason Kane, by and through their undersigned counsel, and

pursuant to Federal Rules of Civil Procedure 50(a), respectfully move for a directed verdict on

all of Plaintiffs' claims (except for the assault and battery claim against Defendant Kane as to

Plaintiff Godfrey) and, in support thereof, state as follows:

**I.    Introduction**

Plaintiffs allege five claims against Defendants Iverson and Kane:  (1) assault and

battery, (2) conspiracy, (3) intentional infliction of emotional distress, (4) negligent infliction of

emotional distress and (5) negligent hiring, training and supervision.  Plaintiffs have had almost

two years to obtain evidence in support of their claims and now have had a full opportunity to

present that evidence during their case-in-chief.  Plaintiffs have failed to establish the necessary

evidentiary basis to support the elements underlying most of their claims.  The Court even

dismissed Plaintiffs' assault and battery claims against Defendants Iverson *sua sponte*.  Plaintiff

Kittrell also offered no evidence that Defendant Kane hit him and, thus, his assault claim against

Defendant Kane must be dismissed.  More important, however, Plaintiff Kittrell has presented no

evidence whatsoever of any injuries for which damages would be appropriate and, instead,

simply told a story about his version of the events on the evening in question.  In light of his

failure to present and damage evidence, all of Plaintiff Kittrell's claims must be dismissed.  As

for the remainder of Plaintiff Godfrey's claims, the evidence offered in his case-in-chief does not

establish liability against Defendants and, thus, these claims must be dismissed vis-à-vis a

directed verdict pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. [1]

## II.     Legal Argument

The D.C. Circuit has determined that:

> [t]he test to be applied in ruling on a motion for a directed verdict
> made at the close of the plaintiff's case is clear and uncontested . . .
> Unless the evidence, along with all inferences reasonably to be
> drawn therefrom, when viewed in the light most favorable to the
> plaintiff is such that reasonable jurors in fair and impartial exercise
> of their judgment could not reasonably disagree in finding for the
> defendant, the motion must be denied.

*Alden v. Providence Hospital*, 382 F.2d 163, 165 (D.C. Cir. 1967).  In other words, a motion for

directed verdict under Rule 50(a) requires a court to:

> render judgment as a matter of law when a party has been fully
> heard on an issue, and there is no legally sufficient evidentiary
> basis for a reasonable jury to find for that party on that issue. The
> standard for judgment as a matter of law under Rule 50 mirrors the
> standard for summary judgment under Rule 56. Thus, the court
> must review all of the evidence in the record, drawing all
> reasonable inferences in favor of the nonmoving party, but making
> no credibility determinations or weighing any evidence.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000) (citations omitted).

When applying the standards for a Rule 50(a) judgment as a matter of law in this case, it is clear

that Plaintiffs' claims must be dismissed on directed verdict for reasons detailed below.

---

[1] Even if the Court disagrees and finds some evidentiary support in the record that Plaintiff
Kittrell sustained injuries for which damages could be awarded, the analysis set for herein
discussing why Plaintiff Godfrey's claims fail would still apply to Plaintiff Kittrell.
Accordingly, his claims would still be dismissed for reasons detailed herein.

**A.    Defendants are Entitled to a Directed Verdict on Plaintiffs' Conspiracy Claim Because Plaintiffs Have Failed to Establish an Agreement to Commit and Unlawful Act.**

To establish civil conspiracy, a plaintiff must prove:  (1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme.  *Griva v. Davison,* 637 A.2d 830, 848 (D.C. 1994) (citing *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)).  Here, assuming all facts and inferences in Plaintiffs' favor, there is absolutely no evidence in the record — not even a suggestion — that Defendants Iverson and/or Kane, between themselves or each one individually with someone else, entered into an agreement to participate in an unlawful act that caused Plaintiffs to suffer injuries.  As a result, Plaintiffs have not met their burden of proving beyond a preponderance of the evidence that Defendants agreed (or conspired) to do anything to Plaintiffs; consequently, this claim must be dismissed. *Halberstah*, 705 F.2d at 480 (holding that an agreement between the parties to commit that tort is an essential element of civil conspiracy).

**B.    Defendants are Entitled to a Directed Verdict on Plaintiffs' Intentional Infliction of Emotional Distress Claim Because Defendant Iverson did not Possess the Requisite Intent and Neither Defendants' Conduct was Extreme or Outrageous.**

The elements required to prove intentional infliction of emotions distress, include: (1) "extreme and outrageous conduct" which (2) "intentionally or recklessly" causes (3) "severe emotional distress to another."  *Joyner v. Sibley Memorial Hosp.*, 826 A.2d 362, 373 (D.C. 2003).  To establish the required degree of 'outrageousness,' the plaintiff must allege conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Joyner*, 826 A.2d at 373 (quoting *Kerrigan v. Britches of Georgetowne*, 705 A.2d 624, 628 (D.C.

1997)).  Even construing all facts in a light most favorable to Plaintiffs, they fail to satisfy this

burden with respect to both Defendants.[2]

1.    **Defendant Iverson is not Liable for Intentional Infliction of Emotional Distress to Plaintiff Godfrey.**

With respect to Defendant Iverson, Plaintiff Godfrey has not and cannot establish the

"intent" element for intentional infliction of emotional distress.  The only intentional acts that

Defendant Iverson allegedly committed are the assault and battery and, by its vicarious nature,

civil conspiracy, but neither of these claims are sustainable.  The assault claim against Defendant

Iverson was dismissed by the Court.  The civil conspiracy claim is legally deficient given the

lack of any agreement.  Thus, Plaintiff Godfrey has not and cannot establish the requisite intent

element for his claim of intentional infliction of emotional distress as to Defendant Iverson.

Moreover, Defendant Iverson's actions, even construing all testimony and evidence in Plaintiff

Godfrey's favor, is neither extreme nor outrageous such that it would go beyond all possible

bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized

community.   Not one witness testified that Defendant Iverson did anything other than stand and

watch and possibly smirk.  He did not punch, kick or otherwise hit Plaintiff Godfrey.  Smiling or

laughing is not an intentional action giving rise to liability for emotional distress damages.  If it

were, the floodgates of litigation would open even wider.

2.    **Defendant Kane is not Liable for Intentional Infliction of Emotional Distress.**

Even assuming that Plaintiff Godfrey has emotional distress and that it was severe, which

he clearly fabricated in connection with this lawsuit, Defendant Kane's conduct (as established

---

[2] Plaintiff Kittrell did not offer any evidence — not even his own testimony — that he sustained emotional distress as a result of the incident, thus, conceding dismissal of his claim.

by Plaintiff Godfrey's witnesses) is neither extreme nor outrageous giving rise to liability for emotional distress.  Plaintiff Godfrey offered 13 witnesses to establish his claim that Defendant Kane's conduct intentionally caused him emotional distress.[3]   Only two witnesses, Simington and Studevent, (both of whom have business relationships with Plaintiffs) allege that Defendant Kane hit Plaintiff Godfrey.  Putting aside credibility issues which the jury would determine if this claim was not deficient as a matter of law, and assuming all of Simington's and Studevent's testimony in Plaintiff Godfrey's favor, Defendant Kane still did not act in a manner that is extreme and outrageous.

Plaintiffs have only offered evidence that:  (1) Defendant Kane was present at the Eye Bar; (2) Defendant Kane provided security for Defendant Iverson on the night in question (a point that Defendants have stipulated); and (3) Defendant Kane hit Plaintiff Godfrey a couple of times (a point that is highly contested).  While there has been testimony that Plaintiff Godfrey was beaten by Terrence Williams, such evidence has nothing to do with Defendant Kane's inflectional of emotional distress upon Plaintiff Godfrey. All Plaintiffs offer for Defendant Kane's conduct is two witnesses, whose credibility are very suspect, testifying that Defendant Kane and Plaintiff were involved in a bar fight (which Kane disputes).  Participation in bar fights, however, is neither beyond all possible bounds of decency nor regarded as atrocious, and utterly intolerable in a civilized community.  In fact, several potential jurors mentioned their involvement in bar facts during voir dire.  Bar fights are commonplace and do not give rise to emotional distress claims where a defendants is alleged to have only punched a plaintiff a few

---

[3] Six of these witnesses — two witnesses testifying about the Crabbers incident and the four doctors — had no bearing on Kane's actions at the Eye Bar on the evening in question.  Four witnesses (Godfrey, Kittrell, Fitzgerald and Demoya) testified that they did not see Defendant Kane hit anyone.  One of Plaintiff Godfrey's witnesses (Barrow) testified that Defendant Kane did not hit anyone.  One witness (Davis) could not identify Defendant Kane.

times and perhaps hit him with a bottle.  Defendant, therefore, is entitled to judgment as a matter of law on Plaintiff Godfrey's Intentional Infliction of Emotional Distress claim.

**C.      Defendants are Entitled to A Directed Verdict on Plaintiffs' Negligent Infliction of Emotional Distress Because Plaintiffs have Failed to Establish any Duty of Care.**

To establish negligent infliction of emotional distress, the plaintiff must prove all of the following:  (1) the defendant was negligent (namely, a plaintiff must first prove that defendants had a duty of ordinary care to plaintiffs; that defendants breached that duty of care; and that defendants' breach of their duty was the proximate cause of plaintiffs' cognizable injury); (2) the negligence, if any, caused an emotional injury to the plaintiff; and (3) the emotional injury to the plaintiff was serious or severe.  *Jane W. v. President and Directors of Georgetown College*, 863 A.2d 821, 826-27 (D.C. 2004).  Again, assuming all facts and inferences in Plaintiffs' favor, which means that Plaintiff Godfrey's doctor's testimony satisfies his burden for the existence of severe emotional distress, Plaintiff Godfrey's claim of negligent infliction still fails because he has not established the existence of any duty owed by Defendants to Plaintiff Godfrey.[4]

The Court gave Plaintiff Godfrey substantial latitude in allowing him to try his negligent infliction of emotional distress claim (and negligent hiring and supervision) without the need for expert testimony notwithstanding the abundance of case law requiring expert testimony in cases involving the actions of security personnel.  Yet, Plaintiff Godfrey still failed to provide a single shred of evidence establishing the requisite duty of care owed by Defendants and whether they breached that duty.  There is no testimony or evidence whatsoever regarding the appropriate standard of care for private security personnel in a bar, how security should react to hostile

---

[4] Again, Plaintiff Kittrell has presented no evidence that he sustained any emotional distress and, therefore, his claim for negligent infliction of emotional distress must be dismissed.  In fact, Plaintiff Kittrell's quest for a big pay day must end given his inability to present any injuries giving rise to damages (no loss of business income, no medical bills, no emotional distress, nothing).

situations, when force is allowed in tense situations, or what manner or degree of force may be administered when hostility is perceived.  Certainly, Plaintiff Godfrey could have solicited such testimony from witness Fitzgerald who was engaged in security business or even Plaintiff Godfrey himself could have testified to the appropriate standard since he also provided security services.  Similarly, Plaintiff Godfrey has offered no testimony regarding how an employer of security personnel should have supervised his security.  Rather than providing evidence in support of this element of his claim for negligent infliction of emotional distress, Plaintiff Godfrey asks the Court to assume away the negligence aspect of the claim of negligent infliction – finding that if the Defendants beat someone up, then they are negligent.  This approach is improper.  Plaintiffs must prove each element of each claim, or at least raise the possibility that a reasonable jury could differ on the finding of fact.  As a result, Plaintiff Godfrey's claim for negligent infliction of emotional distress fails and, therefore, must be dismissed.

**D.     Defendant Iverson is Entitled to a Directed Verdict on Plaintiffs' Negligent Hiring, Training & Supervision Claim Because Iverson is not Vicariously Liable for Defendant Kane or any other alleged Security Personnel's Actions.**

In the present case, while Plaintiffs have done a poor job of providing actual evidence in support of their claims, they have done an excellent job confusing the factual issues concerning their claim for negligent hiring, supervision and training.  Plaintiffs allege that Defendant Iverson hired Defendant Kane as his security guard and he assaulted Plaintiffs at the Eye Bar on July 19, 2005.  Some time later, during discovery, Plaintiffs learned that another man (Terrence Williams) actually assaulted Plaintiff Godfrey.  Plaintiffs — pointing to the catchall and non-descript "others" in their Complaint — then changed their story.  Plaintiffs now claim that Defendant Iverson hired Kane and Williams as his security guards and they assaulted Plaintiffs at the Eye Bar on July 19, 2005.  Plaintiffs have essentially used a shell game, moving the ball of

liability from one person to the next with the hopes that somehow the jury will not catch on and

Plaintiffs' end up with Defendant Iverson's money. Defendants will solve this shell game by

exposing that there is no legal basis for vicarious liability and, in doing so, will end any hopes of

a big payday for Plaintiffs' fabricated story. The first step in solving Plaintiffs' shell game is:

understanding the relationships between the parties. The second step is: understanding the

scope of vicarious liability in the context of a negligent hiring and supervision claim. These

steps are addressed below.

### 1. Defendant Kane is an Independent Contractor and Defendant Iverson has no Contractual Relationship with Terrence Williams.

Plaintiffs' argument concerning vicarious liability starts with improper conclusions about

the legal status of Defendant Iverson's business relationships with Defendant Kane and Mr.

Williams. Lacking any basis in law or fact, Plaintiffs' incorrectly identify Defendant Kane as an

employee or agent of Defendant Iverson. As for Mr. Williams, Plaintiffs concede that he is an

independent contractor, but their concession is misguided in light of the fact that Mr. Williams

has no relationship with Defendant Iverson whatsoever. An examination of these issues follows.

### (a) Defendant Kane is an Independent Contractor.

Under the law of the District of Columbia, the determination of whether an individual is

an employee or an independent contractor involves analysis of the "economic realities" of the

work relationship. *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979) (internal citations

omitted). In making this determination, the court must pay attention to consideration of all of the

circumstances surrounding the work relationship, and:

> no one factor is determinative. Nevertheless, the extent of the
> employer's right to control the "means and manner" of the
> worker's performance is the most important factor to review…. If
> an employer has the right to control and direct the work of an
> individual, not only as to the result to be achieved, but also as to

the details by which that result is achieved, an employer/employee
relationship is likely to exist.

*Id.* at 831-32.   The employer's right to control and direct the daily activities of the employee is

usually considered the determinative factor.  *Ames v. Yellow Cab of D.C., Inc.*, 2006 WL

2711546 (D.D.C. 2006).  Although "right to control" is the most decisive factor to review in

determining independent contractor status, the following factors are examined as well:

> Additional matters of fact that an agency or reviewing court must
> consider include, among others, (1) the kind of occupation, with
> reference to whether the work usually is done under the direction
> of a supervisor or is done by a specialist without supervision; (2)
> the skill required in the particular occupation; (3) whether the
> "employer" or the individual in question furnishes the equipment
> used and the place of work; (4) the length of time during which the
> individual has worked; (5) the method of payment, whether by
> time or by the job; (6) the manner in which the work relationship is
> terminated; i.e., by one or both parties, with or without notice and
> explanation; (7) whether annual leave is afforded; (8) whether the
> work is an integral part of the business of the "employer"; (9)
> whether the worker accumulates retirement benefits; (10) whether
> the "employer" pays social security taxes; and (11) the intention of
> the parties.

*Id.* at 832.  Moreover, the party asserting the existence of an employer-employee relationship

bears the burden of proving it.  *District of Columbia v. Hampton*, 666 A.2d 30, 38 (D.C. 1995).

Applying the principles above to the evidence presented during Plaintiffs' case and

construing that evidence in a light most favorable to Plaintiffs, it remains clear that Defendant

Kane is an independent contractor rather than an employee.  Plaintiffs failed to satisfy their

burden by demonstrating during their case-in-chief that Kane is an employee and cannot dispute

any of the following factors indicating an independent contractual relationship:

> Defendant Iverson does not control (1) the manner in which
> security services are provided by Kane, (2) his work day (3) his
> work schedule, and (4) the execution of his work;

Defendant Iverson does not select or hire Defendant Kane to provide security on the evening in question;

Defendant Iverson pays Defendant Kane to provide security by the job rather than by salary;

Defendant Iverson does not withhold taxes when he pays Defendant Kane;

Defendant Iverson does not train Defendant Kane;

Defendant Kane has customers other than Defendant Iverson for whom Kane provides security services;

Defendant Kane provides security to Defendant Iverson on a temporary and irregular basis;

Defendant Iverson's regular business does not involve security services;

Defendants Iverson and Kane have an oral agreement that services provided will be as an independent contractor;

Defendant Kane did not receive annual leave from Defendant Iverson;

Defendant Kane did not accumulate retirement benefits from Defendant Iverson; and

Defendant Iverson ceded all control for his protection to Defendant Kane during the evening in question, which Plaintiff Godfrey concedes when testifying that "Defendant Kane looked as though he was in charge of security."

Accordingly, the foregoing factors establish conclusively that Defendant Kane is an independent contractor even when construing all facts and inferences in a light most favorable to Plaintiffs.

        **(b)    Defendant Iverson did not Employ or Contract with Terrence Williams.**

The Court gave Plaintiff Godfrey the opportunity to present evidence of the existence of a business relationship between Defendant Iverson and Terrence Williams such that a jury could reasonably perceive that Mr. Williams was acting as security on the night in question at the Eye Bar. Plaintiffs conceded at the Pretrial Conference held on June 19, 2007 that they alleged Mr.

Williams is an independent contractor. Plaintiffs have been unable to establish, however, the existence of any contractual relationship between Iverson and Williams. Plaintiffs try to establish a contractual relationship between Iverson and Williams by focusing on three events (i) the Punk'd Video, (ii) the Crabbers incident, and (iii) the Eye Bar incident. These incidents prove that Kane and Williams are friends, a fact that is not contested, but they do not establish a contractual relationship between Defendant Iverson and Williams.

<strong>(i)    The Punk'd Video.</strong>

The much discussed Punk'd video turned about to be far more amusing than helpful to Plaintiffs' claims. While the video shows Terrence Williams in California at the same time as Kane (and Iverson), the video does not show Mr. Williams acting on Defendant Iverson's behalf. Indeed, it is Mr. Kane who is seen in the video shadowing Mr. Iverson, escorting Mr. Iverson up the stairwell and then back down the stairwell, stepping in on Mr. Iverson's behalf and urging people to calm down. Mr. Williams is not even seen on the video except in one instance yelling to "make me move" — not make Mr. Iverson move, not make us move, but "make me move." The video does not tell us how Mr. Williams got to California (in fact testimony from Terra Barrow shows that Mr. Williams went to California to work for Genuwine consistent with Mr. Williams' own deposition in this matter). The video also does not show any payment made by Defendant Iverson to Mr. Williams for services rendered. The only thing the video shows is Mr. Williams' presence. Mr. Williams' presence at events with Mr. Iverson (and more importantly, his good friend Mr. Kane) will be a typical theme that Plaintiffs used to show Defendant Iverson and Mr. Williams had a contractual relationship. Presence alone, however, does not establish a contractual relationship.

**(ii)      The Crabbers Incident.**

Plaintiffs also point to an incident that occurred at a Crabbers Restaurant in Virginia as indicia of a contractual relationship for security services between Williams to Iverson.  One witness (Cooper) testified that Mr. Williams beat him and that he saw Mr. Williams talking to Mr. Iverson before the alleged beating occurred.  There was no indication, however, what this alleged conversation involved. There was no testimony about whether Iverson directed Williams to beat anyone by pointing or otherwise directing him.  There was no testimony about any payment to Williams for security services rendered.  Again, the only thing Plaintiffs can point to is Mr. Williams' presence at an event that Defendant Iverson is also attending.

**(iii) The Eye Bar Incident.**

In their final attempt to connect the dots between Iverson and Williams, Plaintiffs argue that Williams acted as security for Defendant Iverson on the night in question.  In making this argument, Plaintiffs again point to nothing other than Mr. Williams's presence at an event in which his good friend (Kane) and Mr. Iverson are present.  There is no testimony that Mr. Williams told anyone to get out of Mr. Iverson's section.  There's no testimony that he came in with Defendant Iverson; he acted to protect Defendant Iverson during the fight; he left with Defendant Iverson; he received compensation from Defendant Iverson – nothing.  In fact, the testimony establishes quite the opposite:  that Mr. Williams came in before Defendant Iverson; he stayed fighting while Iverson was whisked away; he never spoke to Iverson; and he never acted to protect Iverson during this barroom brawl.

* * *

In light of the foregoing, it is impossible for a reasonable jury to differ on whether Defendant Iverson hired Mr. Williams to act as his security on the night in question.  Plaintiffs'

argument that Mr. Williams's presence at events with his good friend (Kane) and Defendant

Iverson is indicative of a contractual relationship such a finding would stretch the boundaries of

litigation beyond the most litigious employee or contractor's wildest dreams.  The court should

preclude any argument that Defendant Iverson can be liable for Mr. Williams's actions in light of

the record being devoid of any indication that any contractual relationship existed.

> **2.    Defendant Iverson is not Vicarious Liable for Defendant Kane because Kane is an Independent Contractor and Iverson lacked knowledge of Any Violent Tendencies by Kane.**

Generally, in order to establish vicarious liability, a plaintiff must establish <u>both</u> an

agency relationship; <u>and</u> (b) that the agent was acting within the scope of his employment when

he committed the alleged tortuous act.  *Judah v. Reiner*, 744 A.2d 1037, 1039-40 (D.C. 2000).

This theory of liability is presented under the doctrine of Respondeat Superior.[5]  However, in

cases involving negligent hiring, training and/or supervision, employers can be vicariously liable

for the actions of their independent contractors.

Under the doctrine of negligent selection, employers can be found directly liable under

ordinary negligence principles for hiring an independent contractor if the employer knew or

reasonably should have known that the contractor was not competent and if the contractor's

incompetence proximately caused injury to others.  *Wilson v. Good Humor Corp.*, 757 F.2d

1293, 1310 (D.C. Cir. 1985).  Under the doctrine of negligent supervision, employers can be

found directly liable under ordinary negligence principles for hiring an independent contractor if

the employer knew or reasonably should have known a contractor behaved in a dangerous

manner and that armed with actual or constructive knowledge, failed to adequately supervise that

contractor.  *Yellow Cab of D.C., Inc.*, 2006 WL 2711546 at *8; *see also Daisley*, 372 F.Supp.2d

---

[5] Thus, here Defendant Iverson could not be liable for Defendant Kane's intentional torts (assuming Kane committed any) because Kane is Iverson's independent contractor.

at 79.  A finding of employment is not necessary for claims involving negligent hiring or supervision.

Here, assuming Defendant Kane assaulted Plaintiff Godfrey at the Eye Bar and construing all reasonable inferences and facts in the record in Plaintiffs' favor, there is still no basis to find that Defendant Iverson knew or should have know that Kane was not competent to perform security services on the night in question or behaved in a dangerous manner such that heightened supervision was warranted.  The only incidents in the record that could give rise to actual or imputed knowledge of issues concerning Defendant Kane's propensities are the Crabbers Incident and the Punk'd video.  Taking the latter first, it involved a practical joke in which Defendant Kane acted professionally.  With respect to the former, two witnesses provided testimony regarding the Crabbers incident.  The first could not identify anyone.  The second identified Mr. Kane as being present but not a person who assaulted anyone.  Consequently, Defendant Iverson cannot be vicariously liable for Defendant Kane's alleged actions.  Plaintiffs' negligent hiring and supervision claim, therefore, must be dismissed.

### III.    Conclusion

Wherefore, Defendants respectfully request judgment as a matter of law pursuant to Rule 50 (a) on the grounds set forth herein and in any subsequent brief filed in support of its motion.

Respectfully submitted,

**SHERMAN, SILVERSTEIN, KOHL
ROSE & PODOLSKY, P.A.**

Date:  _____July 1, 2007_____            By:  _____*/s/ Alan C. Milstein, Esquire*_____
                                                Alan C. Milstein, Esquire
                                                Fairway Corporate Center
                                                4300 Haddonfield Road – Suite 311
                                                Pennsauken, NJ 08109
                                                Telephone: (856) 662-0700
                                                Facsimile: (856) 488-4744

*Counsel for Defendant Allen Iverson*

**SUTHERLAND ASBILL & BRENNAN LLP**

Date: _____ July 1, 2007 _____          By: _____ */s/ William R. Martin, Esquire* _____
                                        William R. Martin (Bar No. 465531)
                                        1275 Pennsylvania Avenue, NW
                                        Washington, DC 20004
                                        Telephone: (202) 383-0100
                                        Facsimile: (202) 637-3593
                                        *Counsel for Defendant Jason Kane*

15