# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARLIN GODFREY, *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *   Civil Action No. 05-2044 (ESH) |
| | * |
| ALLEN IVERSON, *et al.*, | * |
| | * |
| Defendants. | * |
| | * |

## DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, DEFENDANTS' MOTION FOR A NEW TRIAL

Defendants Allen Iverson and Jason Kane, by and through their undersigned counsel, and pursuant to Federal Rules of Civil Procedure 50 and 59, respectfully move this Court to enter judgment as a matter of law against Plaintiff Marlin Godfrey for his claims of assault and battery and intentional infliction of emotional distress against Defendant Kane and negligent supervision against Defendant Iverson. In the alternative, Defendants move the Court for a new trial given a number of evidentiary and procedural errors. In support of this motion, Defendants submit the accompanying memorandum of points and authorities.

WHEREFORE, Defendants respectfully request the Court enter an Order vacating the jury's verdict in favor of Plaintiff Godfrey and enter judgment as a matter of law in favor of Defendants or, alternatively, order a new trial be held.

Submitted this 23rd day of July, 2007.

Respectfully submitted,

**SHERMAN, SILVERSTEIN, KOHL ROSE & PODOLSKY, P.A.**

Date:     July 23, 2007

By:     */s/ Alan C. Milstein, Esquire*
Alan C. Milstein, Esquire

Fairway Corporate Center
4300 Haddonfield Road – Suite 311
Pennsauken, NJ 08109
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
*Counsel for Defendant Allen Iverson*

**SUTHERLAND ASBILL &
BRENNAN LLP**

Date: _____July 23, 2007_____          By:_____*/s/ William R. Martin, Esquire*_____
                                        William R. Martin (Bar No. 465531)
                                        1275 Pennsylvania Avenue, NW
                                        Washington, DC 20004
                                        Telephone: (202) 383-0100
                                        Facsimile: (202) 637-3593
                                        *Counsel for Defendant Jason Kane*

2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 23, 2007, a copy of the forgoing motion

together with a proposed Order and memorandum in support were sent first class mail, postage

prepaid, to the following counsel of record:

Gregory L. Lattimer, Esq.
1100 H Street, N.W., Suite 920
Washington, D.C. 20005

Stephanie D. Moran, Esq.
E. Gregory Watson, Esq.
Watson & Moran, LLC
8401 Corporate Drive, Suite 100
Landover, MD 20785

**SHERMAN, SILVERSTEIN, KOHL
ROSE & PODOLSKY, P.A.**

Date: _____July 23, 2007_____       By: _____*/s/ Alan C. Milstein, Esquire*_____
                                        Alan C. Milstein, Esquire
                                        Fairway Corporate Center
                                        4300 Haddonfield Road – Suite 311
                                        Pennsauken, NJ 08109
                                        Telephone: (856) 662-0700
                                        Facsimile: (856) 488-4744
                                        *Counsel for Defendant Allen Iverson*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARLIN GODFREY, *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * Civil Action No. 05-2044 (ESH) |
| | * |
| ALLEN IVERSON, *et al.*, | * |
| | * |
| Defendants. | * |

**<u>ORDER</u>**

Upon consideration of Defendants' Renewed Motion for Judgment as a Matter of Law,

the submissions and arguments relating thereto, the record and for good cause shown, it is hereby

**ORDERED, ADJUDGED and DECREED** that:

Defendants' motion is granted; and it is further **ORDERED** that:

The Jury's verdict in favor of Plaintiff Godfrey is vacated; and it is further **ORDERED**

that:

Judgment is entered against Plaintiff Godfrey.

**SO ORDERED**.


Date: _____    By: _____
                                       ELLEN SEGAL HUVELLE
                                       United States District Judge

Copies to:

Alan C. Milstein, Esquire
Fairway Corporate Center
4300 Haddonfield Road – Suite 311
Pennsauken, NJ 08109
*Counsel for Defendant Allen Iverson*

WO 763443.9

William R. Martin (Bar No. 465531)
1275 Pennsylvania Avenue, NW
Washington, DC 20004
*Counsel for Defendant Jason Kane*

Gregory L. Lattimer, Esq.
1100 H Street, N.W., Suite 920
Washington, D.C. 20005
*Counsel for Plaintiffs*

Stephanie D. Moran, Esq.
E. Gregory Watson, Esq.
Watson & Moran, LLC
8401 Corporate Drive, Suite 100
Landover, MD 20785
*Counsel for Plaintiff*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | * | |
| MARLIN GODFREY, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 05-2044 (ESH) |
| | * | |
| ALLEN IVERSON, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**<u>ALTERNATIVE ORDER</u>**

Upon consideration of Defendants' Motion for a New Trial, the submissions and arguments relating thereto, the record and for good cause shown, it is hereby **ORDERED, ADJUDGED and DECREED** that:

Defendants' motion is granted; and it is further **ORDERED** that:

The Jury's verdict in favor of Plaintiff Godfrey is vacated; and it is further **ORDERED** that:

A notice of pretrial status conference will be sent within two weeks from the date of the entry of this Order.

**SO ORDERED**.


Date: _____         By: _____
                                         ELLEN SEGAL HUVELLE
                                         United States District Judge

3

Copies to:

Alan C. Milstein, Esquire
Fairway Corporate Center
4300 Haddonfield Road – Suite 311
Pennsauken, NJ 08109
*Counsel for Defendant Allen Iverson*

William R. Martin (Bar No. 465531)
1275 Pennsylvania Avenue, NW
Washington, DC 20004
*Counsel for Defendant Jason Kane*

Gregory L. Lattimer, Esq.
1100 H Street, N.W., Suite 920
Washington, D.C. 20005
*Counsel for Plaintiffs*

Stephanie D. Moran, Esq.
E. Gregory Watson, Esq.
Watson & Moran, LLC
8401 Corporate Drive, Suite 100
Landover, MD 20785
*Counsel for Plaintiffs*

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | * | |
| MARLIN GODFREY, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 05-2044 (ESH) |
| | * | |
| ALLEN IVERSON, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
OR, IN THE ALTERNATIVE, DEFENDANTS' MOTION FOR A NEW TRIAL**

Defendants Allen Iverson and Jason Kane submit this memorandum in support of their renewed motion for judgment as a matter of law or new trial.

## I.    SUMMARY OF ARGUMENT

Defendants are entitled to judgment as a matter of law on Plaintiff Godfrey's claims because (1) the evidence presented did not establish the elements of intentional infliction of emotional distress by Kane against Godfrey in light of the lack of any evidence showing any extreme and outrageous conduct by Kane and any severe emotional distress by Godfrey; and (2) the evidence did not establish the elements of negligent supervision by Iverson against Godfrey considering the lack of any evidence showing a duty of care that Iverson owed, that Iverson failed to satisfy that duty of care, and that Iverson had prior knowledge, whether real or imputed, that Kane acted in a dangerous manner requiring supervision.  In addition to the lack of any evidence proving key elements for two of the three claims on which the jury returned a verdict, Defendants are entitled to judgment as a matter of law on all claims because the Court made evidentiary and procedural errors that prevented the Jury from rendering a proper verdict.

Specifically, the Court made evidentiary errors by excluding impeachment material concerning Plaintiff Godfrey's violent tendency and veracity and by admitting highly prejudicial evidence involving an incident at Crabbers restaurant and an episode of the television show Punk'd (which were extrinsic materials not probative of any claim against the named Defendants). The Court made procedural errors by failing to answer the Jury's questions, by failing to properly instruct the jury and by failing to exclude a third party from the jury's consideration of liability. Taking these issues into account in assessing the jury's verdict on Godfrey's claims, this Court must conclude that there is no sufficient evidentiary foundation for a reasonable jury to find in Godfrey's favor. For these reasons as discussed more fully below, the Court must vacate Godfrey's judgment and enter judgment in Defendants' favor as a matter of law.

If the Court denies judgment as a matter of law, which it should not, Defendants nevertheless are entitled to a new trial given the Court's evidentiary and procedural errors coupled with its threats of allowing *quid pro quo* impeachment evidence, its tolerance of Plaintiffs' counsel reading the transcript to the jury, and its allowance of expert testimony by lay witnesses. Thus, even if the Court denies Defendants' motion for judgment as a matter of law, which would be in error, the Court must grant Defendants a new trial.

## II.    ARGUMENT AND AUTHORITY

Post trial motions for judgment as a matter of law, formerly known as a judgment notwithstanding the verdict, and motion for new trials are governed by Rules 50 and 59 of the Federal Rules of Civil Procedure. Rule 50(b) allows a movant to renew its request for judgment as a matter of law by filing a motion no later than 10 days after the judgment. In doing so, Rule 50(b) specifically notes that the movant may "alternatively request a new trial or join a motion for a new trial under Rule 59." In ruling on a renewed motion when a verdict is returned, the

2

court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law. Fed. R. Civ. P. 59.

Here, Defendants are moving timely for a judgment as a matter of law or alternatively for a new trial. The motion is timely given it was filed 10 days after the entry of judgment as calculated under Rule 6 of the Federal Rules of Civil Procedure. Judgment as a matter of law is proper given the evidentiary and procedural errors by the Court and the lack of evidentiary support for the elements underlying Plaintiff Godfrey's claims. Moreover, even if the Court believes a reasonable jury, discounting all of the erroneous evidentiary and procedural rulings, could have reached the same judgment, Defendants are still entitled to a new trial given the prejudicial effect of those rulings.

## A.    The Jury's Verdict on Plaintiff Godfrey's Claims should be Vacated and Judgment should be Entered in Defendants' Favor as a Matter of Law Pursuant to Rule 50(b).

To prevail on a renewed motion for judgment as a matter of law, or JMOL, following a jury trial, a party must show that "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *In re Lorazepan & Clorazepate Antitrust Litigation*, 467 F.Supp 2d 74, 80 (D.D.C. 2006) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). A mere scintilla of evidence presented by the non-moving party **is not sufficient to deny a motion for judgment as a matter of law**. *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938) (emphasis added). In assessing the sufficiency of the evidence, entry of judgment as a matter of law under Rule 50 is warranted when the evidence and all reasonable inferences that can be drawn therefrom leads reasonable men and women to a verdict in a defendant's favor. *McGill v. Munoz*, 203 F.3d 843, 845 (D.C.Cir. 2000) (citation omitted).

In making that determination, the Court must decide whether there is substantial evidence upon which a jury could *properly* find for the non-moving party. *See Allen v. Perry*, 279 F.Supp.

3

2d 36, 42 (D.D.C. 2003) (citing *Carter v. Duncan Huggins, Ltd.*, 727 F.2d 1225, 1228 (D.C.Cir. 1984); *see also Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993)).  The standard limiting a jury's consideration to proper evidence exists because, as the Supreme Court has held, federal courts of appeals, in reviewing Rule 50(b) motions, have the power first to exclude inadmissible evidence and then to examine the trial record to see if the remaining admissible evidence can support the verdict.  *Weisgram v. Marley Co.,* 528 U.S. 440, 457 (2000).  Furthermore, Rule 61 directs courts to disregard any error or defect in the proceeding that does not "affect the substantial rights" of the parties, which "means that the error must have been prejudicial:  It must have affected the outcome of the district court proceedings."  *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*  2007 WL 1892082, *5 (D.C. Cir. 2007) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

    Entry of judgment as matter of law is proper when the error in the admission of evidence is more than a harmless error.  Fed. R. Civ. P. 61.  Courts have considered a number of factors when determining whether error is harmless, including "(1) whether erroneously admitted evidence was the primary evidence relied upon, (2) whether the aggrieved party was nonetheless able to present the substance of its claim, (3) the existence and usefulness of curative jury instructions, (4) the extent of jury argument based on tainted evidence, (5) whether erroneously admitted evidence was merely cumulative, and (6) whether other evidence was overwhelming."  *ATD Corp. v. Lydall Inc.,* 159 F.3d 534, 549 (Fed. Cir. 1998) (citations omitted).

    Application of the above principles for rendering a judgment as a matter of law make clear that the jury's verdict should be vacated and judgment should be entered in Defendants' favor.  There is neither substantial evidence nor a legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff Godfrey on his claims.  There is no evidence in support of

4

key elements of intentional infliction of emotional distress and negligent supervision. Furthermore, there are evidentiary and procedural errors that undermine any evidentiary basis, to the extent one tries hard to find one, in support of all of Godfrey's claims. The Court has the power to correct these errors by excluding them from its consideration and then determining whether the jury could have reached the same conclusion. Defendants believe that in light of the absence of supporting evidence together with the errors, the Court must enter judgment as a matter of law in Defendants' favor for reasons detailed below.

**1.     The evidence did not establish the elements of intentional infliction of emotional distress by Defendant Kane against Plaintiff Godfrey.**

The elements required to prove intentional infliction of emotions distress, include: (1) "extreme and outrageous conduct" which (2) "intentionally or recklessly" causes (3) "severe emotional distress to another." *Joyner v. Sibley Memorial Hosp.*, 826 A.2d 362, 373 (D.C. 2003). Here, there was no legally sufficient evidentiary basis for the jury to find that Defendant Kane intentionally inflicted emotional distress on Plaintiff Godfrey even when construing the evidence and all reasonable inferences in Godfrey's favor. Plaintiffs have failed to prove any of the elements required under the law of the District of Columbia to establish that defendant Kane intentionally inflicted emotional distress upon Godfrey. The Court must enter judgment in Kane's favor.

**a.     Defendant Kane' conduct was not extreme and outrageous conduct as a matter of law.**

To establish the required degree of 'outrageousness,' the plaintiff must allege conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Joyner*, 826 A.2d at 373 (quoting *Kerrigan v. Britches of Georgetowne*, 705 A.2d 624, 628 (D.C.

5

1997)).  "This is a very demanding standard, infrequently met." *Cooke-Seals v. District of Columbia*,  973 F.Supp. 184, 188 (D.D.C. 1997).  The conduct must go beyond all possible bounds of decency and be regarded as atrocious, and utterly intolerable in a civilized community. *Kotsch v. District of Columbia*,  924 A.2d 1040, 1045-46 (D.C. 2007) (citing Restatement (Second) of Torts § 46, cmt.d (1965)). Intentional infliction of emotional distress is also known as the **tort of "outrage,"** due to a classic formulation of the standard: the conduct must be such that it would cause a reasonable person to exclaim "Outrageous!" in response. *Chambliss v. National Railroad Passenger Corp.*,  2007 WL 581900, *29 (D.D.C. 2007) (citing *King v. Kidd,* 640 A.2d 656, 668 (D.C.1993)).  Some general factors that will persuade that the conduct was extreme and outrageous include whether:  (1) there was a pattern of conduct, not just an isolated incident; (2) the plaintiff was vulnerable and the defendant knew it; and (3) the defendant was in a position of power.  *See e.g. Drejza v. Vaccaro*, 650 A.2d 1308, 1309 (D.C. 1994); *Park v. Hyatt Corp.*, 436 F.Supp 2d 60, 65 (D.D.C. 2006); *Herbin v. Hoeffel*, 806 A.2d 186, 197 (D.C. 2002) (citing *Howard University v. Best*, 484 A.2d 958, 986 (D.C. 1984)).

At trial, Plaintiffs presented no evidence that Defendant Kane's conduct reached the requisite law of outrageousness under the law of the District of Columbia.  Even crediting the testimony that he hit Plaintiff Godfrey in the head with a glass bottle and punched him a few times (rather than the substantial testimony that Kane did nothing), Kane's actions still do not reach the level of outrageousness as a matter of law.  There was no testimony that he had done this before.  There was no testimony that Plaintiff was vulnerable and Kane knew it and was in a position of power.  Instead, the testimony was that Plaintiff was a third degree black belt and he joined the fight *sua sponte* to help out a friend.  (6/28 Tr., 81:5-11; 90:10-11; 106:17-111:11).

6

Simply put, there was no testimony whatsoever that Defendant Kane's actions in a bar fight rose to the level of outrageousness as a matter of law.

      **b.**      **Plaintiff Godfrey did not suffer severe, verifiable emotional distress considering the lack of expert testimony and improper lay witness testimony**

Plaintiff Godfrey's testimony is that he felt sad after being beaten up at the Eye Bar and was unsure of himself. (6/28 Tr., at 100:7-13; *see also* Pl. Ex. 8 – "I was attacked by a group of people and now I'm feeling sad.") His counselor, testifying as an expert on causation issues although not properly designated as an expert,[1] testified that he believed Godfrey was depressed because he did not shave. (6/28 Tr., at 48:23-24). The testimony revealed that Plaintiff Godfrey was able to work notwithstanding his alleged depression. (6/28 Tr., at 40:9 – 41:9; 103:14-104:2). He was able to take care of his finances notwithstanding his alleged depression. (6/28 Tr., at 103:14-104:2). He simply could not tell his martial arts students that he got beat up. (6/28 Tr., at 102:19-103:5). Even if this evidence establishes Plaintiff Godfrey was depressed, it does not rise to the level of severe emotional distress involving causes of actions by security personnel. Moreover, even if Plaintiff Godfrey was able to establish the existence of emotional distress from his doctors' purported "lay" testimony and scant medical records, Godfrey would still need expert testimony to establish a causal link between his distress and the incident at the Eye Bar.

---

[1] Plaintiff offered three doctors in his case in chief. None of the doctors were designated as experts but all three testified improperly on diagnosis and causation issues. (See 6/28 Tr., at p.9-18; 23-41; 6/29 Tr., at 61-71). This testimony was improper. *See Bynum v. MVM, Inc.*, 241 F.R.D. 52, 52 (D.D.C. 2007); *Anthony v. Wash. Metro Area Transit Auth.*, 2005 U.S. Dist. LEXIS 41560 (D.D.C. 2005); *Riddick v. Washington Hosp. Ctr.*, 183 F.R.D. 327, 330 (D.D.C. 1998); *Allen v. Hill*, 626 A.2d 875, 877 (D.C. 1993); *see also* Fed. R. Evid. 701 and 702 (lay opinions are limited to ordinary inferences and characterizations).

7

In reality, Plaintiff needed an expert to establish the existence of emotional distress in this type of case. This Court has held specifically that in cases involving bar fights allegedly arising from security failures, expert testimony is needed to prove a claim for intentional and negligent infliction of emotional distress. *Edwards v. Okie Dokie, Inc.*, 473 F.Supp.2d 31, 46-47 (D.D.C. 2007) (stating "[l]ike the claims for assault, battery, and negligence, an intentional infliction of emotional distress claim requires expert testimony"). Plaintiff Godfrey failed to present any expert medical testimony at trial, which is required under the law of the District of Columbia to establish severe emotional distress. The need for expert testimony here is important because this case does not present your garden variety emotional distress claims. Plaintiff Godfrey claims his distress arose from his injuries that allegedly include a ruptured ear drum, a burst blood vessel in his right eye, a torn rotator cuff to his right shoulder, which caused him to be prescribed Ambient and Paxil by a psychologist or psychiatrist. In light of the absence of qualified medical testimony to verify the existence of these complex medical diagnosis and conclusions, testimony or evidence of emotional distress or accompanying symptoms, including medical records, should be excluded. Defendants should not be punished for Plaintiffs' failure to designate experts. As a result, of the failure to prove key elements of the claim of intentional infliction of emotional distress, the Court must entered judgment in Defendant Kane's favor as a matter of law.

2.    **The evidence submitted to the Jury did not establish the elements of negligent supervision.**

To establish a claim of negligent hiring, training and supervision, in addition to establishing the elements of negligence (*i.e.*, a plaintiff must first prove that defendants had a duty of ordinary care to plaintiffs; that defendants breached that duty of care; and that defendants' breach of their duty was the proximate cause of plaintiffs' cognizable injury), a plaintiff must show that: (i) the employer knew or should have known its employee behaved in a

8

dangerous or incompetent manner; and (ii) despite actual or constructive knowledge, the

employer failed to adequately supervise the employee.  *See Kivanc v. Ramsey*,  407 F.Supp.2d

270, 274 (D.D.C. 2006) (quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985)).  The

jury instruction submitted in this case regarding Defendant Iverson's alleged Negligent

Supervision of Jason Kane (Count IV) did not instruct the jury regarding the necessary element

of duty.  Rather, the jury instruction stated:

> Negligence is the failure to exercise ordinary care under the
> circumstances. To exercise ordinary care means to use the same caution,
> attention or skill that a reasonable person would use under similar
> circumstances. It is negligent to do something that a person using ordinary
> care would not do. It is also negligent to fail to do something that a person
> using ordinary care would do.
>
> . . .
>
> In sum, to hold Allen Iverson liable for negligent supervision of
> Jason Kane, you must find by a preponderance of the evidence that:

> 1) Jason Kane committed assault and battery against one or both of the
> plaintiffs;

> 2) Allen Iverson knew or should have known that Jason Kane behaved in
> a dangerous or otherwise incompetent manner;

> 3) Allen Iverson, armed with that actual or constructive knowledge, failed
> to use reasonable care in supervising Jason Kane at the Eyebar; and

> 4) Allen Iverson's failure to use such reasonable care in supervising Jason
> Kane was a substantial factor in bringing about the injuries suffered by
> a plaintiff.

(*See* Jury Instructions at 16-17, Dkt. No. 112).

Even under this Jury Instruction (which Defendants contend was improperly submitted),

the evidence submitted to the jury in this case was insufficient to establish the essential elements

of a negligent supervision claim against Mr. Iverson because:  (a) there was no evidence

establishing standard of care owed by Defendant Iverson to Plaintiff Godfrey; (b) there was no

9

evidence Iverson had prior or constructive knowledge of Kane's dangerous propensities; and (c) there was no evidence establishing how Defendant Iverson should have used reasonable care in supervising Mr. Kane to prevent the harm to Plaintiff Godfrey.   Each of these missing ingredients for a proper negligent supervision claim is addressed below.

> **a.    There was no evidence establishing any duty or standard of care that Defendant Iverson owed to Plaintiff Godfrey.**

The evidence of record was insufficient to support the jury's verdict regarding Defendant Iverson's negligent supervision of Defendant Kane because, among other things, there was no evidence – whether by expert testimony or otherwise – establishing the standard of care owed by Defendant Iverson to Plaintiff Godfrey.   Under District of Columbia law, such claims require plaintiffs to establish a deviation from a standard of care by expert testimony. As this Court has stated, "a plaintiff in a negligence action bears the burden of proof on three issues:  the applicable standard of care; a deviation from that standard; and a causal connection between such deviation and the injury."  *Edwards v. Okie Dokie, Inc.*, 473 F.Supp.2d 31, 45 (D.D.C. 2007). This Court further held that "[w]here 'the subject in question is so distinctly related to some science, profession or occupation as to be beyond the knowledge of the average layperson, a negligence plaintiff must present expert testimony to establish the standard of care.'"  *Id.* (citation omitted).  This Court, as well as others, has expressly determined that the standard of care for security at a nightclub is one such instance of an occupation outside the knowledge and

10

everyday experience of lay people.[2]

In *Edwards*, a case analogous to this one, nightclub patrons sued the owner and operator of the nightclub, among others, for negligent supervision and intentional and negligent infliction of emotional distress and assault and battery. This Court dismissed the claims stating that the lack of expert testimony establishing the requisite duties and level of medical injuries precluded the plaintiffs from recovering. The Court concluded that "D.C. district and local courts have held that expert testimony is required to establish the standard of care for a claim of negligent hiring, training, and supervision of security personnel." *Id.* (citing *Fletcher v. Dist. of Columbia*, No. 01-0297, 2005 WL 670676, *6 (D.D.C. 2005)). The Court also stated that "a plaintiff's failure to name an expert constitutes grounds for dismissal." *Id.* (citation omitted).

Here, as in the *Edwards'* case, Plaintiffs did not designate any expert to establish the standard of care for Defendant Iverson's security personnel, or their alleged breach of the standard of care. At trial, Plaintiffs failed to present any evidence regarding the standard of care owed by Defendant Iverson to Plaintiffs. As a result, the evidence submitted to the jury in this case did not support the verdict entered against Defendant Iverson for the alleged negligent supervision of Defendant Kane and the verdicts should be stricken.

---

[2] *See, e.g., Predzin v. DC Arena Limited P'ship,* No. 02-9582, at *6 (D.C.Sup.Ct. Oct. 7, 2003) (noting that "technical knowledge of the security business and . . . a familiarity with the exercise of professional judgment by trained security officials" are outside the "everyday experiences and understanding of average lay people," so that expert testimony was needed to evaluate what security personnel should have done); *see also Hill v. Metropolitan*, 779 A.2d 906, 910 (D.C. 2001) (expert testimony necessary for standard of care in crowd control and management).

  **b.**  **There was no evidence Iverson had prior knowledge that Kane acted in a dangerous manner requiring supervision or what steps Defendant Iverson should have taken to supervise Defendant Kane on the evening in question.**

In the present case, Defendant Iverson neither selected nor hired Defendant Kane for security services on the evening in question. This was left to Mr. Iverson's business manager Gary Moore.  More importantly, however, neither Defendant Iverson nor Mr. Moore had any reason to believe that Defendant Kane had previously behaved in a dangerous or incompetent manner or that he would behave that way in the future.  Employers "cannot be liable for negligent hiring if the employer conducts a reasonable investigation into the person's background or if such an investigation would not have revealed any reason not to hire that person." *Ames v. Yellow Cab*, 2006 WL 2711546 at *7 (D.D.C. 2006) (citing *Fry v. Diamond Construction, Inc.*, 659 A.2d 241, 248 (D.C. 1995)) (where the court held that a general contractor was not negligent in initially hiring the subcontractor where the general contractor's safety officer previously worked with the subcontractor on similar projects and was reasonably assured of the subcontractors reputation for safety and competent work).

Here, similar to the general contractor in *Fry*, Mr. Moore had previously retained the services of Defendant Kane in the past and was therefore reasonably assured of his reputation for safety and competent work.  More important, there is no evidence of record that Defendant Kane behaved in a dangerous or incompetent manner prior to the evening in question. This Court continually rejected Defense counsel's argument that the essence of the tort of negligent supervision is that, sometime prior to the commitment of an alleged tort by a defendant's employee or subcontractor, the defendant had reason to believe that the agent had a propensity to commit the tort.  And that despite this actual or constructive knowledge, defendant failed to either hire, train or supervise the agent. Instead, the Court broadened the legal duty to impose an

12

obligation to supervise while the tort was being committed even without any evidence that the defendant had reason to believe his subcontractor had a propensity to commit the tort.  This reasoning and result run contrary to both the law regarding negligent supervision and the Jury Instructions on this count, which require that the principal (in this case Defendant Iverson) be "armed with that actual or constructive knowledge" of the agent's (in this case Defendant Kane's) dangerous or otherwise incompetent behavior and then fail to use reasonable care in supervising the agent.

In this case, moreover, Plaintiffs admitted they had no evidence of negligent hiring and no evidence of negligent training. Further, they produced no evidence that Mr. Iverson had any actual or constructive knowledge of Defendant Kane's propensity to commit an assault and battery prior to inception of the five minute brawl inside the nightclub. The Court should have dismissed the claim of negligent supervision as well. If one has not negligently hired an agent, and has not negligently trained that agent, and has no actual or constructive knowledge of the agent's propensity to commit the tort, then there can be no duty to supervise in a non-inherently dangerous position such as a security guard.

Finally, even if the law of the District of Columbia were to be broadened by this Court to include such a duty, evidence must be presented on what exactly Mr. Iverson negligently failed to do to supervise Defendant Kane and prevent the harm to Mr. Godfrey. This was a five minute melee involving several men weighing more than 300 pounds in a loud, crowded and dimly lit nightclub where it was difficult to see or hear what was happening. What would proper supervision have been? Should Mr. Iverson, who weighs no more than 170 pounds, have initially placed himself between his security and the patrons, which would be contrary to the standard practice and purpose of security.  Should he have stopped the fight rather than let security for the

13

nightclub do what it was trained to do? Could he have stopped the fight? If he had stopped the fight, would this have prevented the harm to Plaintiff Godfrey or did that occur at the inception of the fight?  No testimony, let alone expert testimony as required by District of Columbia courts, was presented on these issues.

By not requiring Plaintiffs to show actual or constructive knowledge of the dangerous propensities of Defendant Kane prior to the actual commitment of the tort, or to show what Mr. Iverson should or could have done to prevent the harm to Plaintiff Godfrey once the incident began, the Court essentially allowed the jury to hold Mr. Iverson vicariously liable for the actions of Defendant Kane, a claim the Court dismissed at the conclusion of Plaintiff's case. The Court should remedy this error by entering judgment for Defendant Iverson..

> **3.     The Court made evidentiary and procedural errors that prevented the Jury from rendering a proper verdict on the evidence tendered.**

Entry of judgment as matter of law is proper because the Court made evidentiary and procedural errors that were not merely harmless errors.  The Court failed to properly instruct the jury and resolve a critical jury instruction; prevented Defendants from impeaching Plaintiff Godfrey on key testimony; admitted highly prejudicial evidence of other unrelated incidents; and failed to exclude testimony related to acts of an unrelated third party.  Considering each of these incidents alone, or in their aggregate, means the jury's deliberations were not limited to proper evidence and, thus, cannot stand as the examination below establishes.

> **a.     The Court failed to properly instruct the jury on the causation element of battery and failed to answer a question posed by the jury that indicated its confusion regarding causation.**

In the District of Columbia a battery "is an intentional act *that causes* a harmful or offensive bodily contact." *Anderson-Bey v. District of Columbia*, 466 F.Supp.2d 51, 68 (D.D.C. 2006) (citing *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1983)) (emphasis

14

added).  Clearly causation is a necessary element to the tort of battery.  Nevertheless, the Court

failed to instruct the jury on the causation element.  Instead, the Court's instruction on battery

made no mention of causation and simply read:

> A battery occurs when one person unlawfully and intentionally touches or uses force against one or both plaintiffs in a harmful, offensive, or insulting way.  The term "touching includes direct contact.  "Touching" also refers to putting an object into motion that directly contacts another person or that contacts something connected with that person.  A defendant cannot be liable for battery if the plaintiff consented to be touched.

(*See* Jury Instruction at 13, Dkt. No. 112).

On the first day (actually during the first few hours) after submitting the case for

deliberation, the jury had two questions on the claim for assault and battery.  The jury wanted to

know whether assault and battery could be separate claims.  The Court noted that its verdict form

was not conducive to answering that question easily, but did respond by instructing the jury it

could find an assault without a battery or a battery without an assault.  On the second day of

deliberations, the jury had additional questions, but the Court refused to answer questions posed

by the jury.  The new questions clearly demonstrated that the jury was confused as to whether

proximate cause was an element of battery.  Specifically, the jury asked the Court whether:

(1) "If an action initiates a string of events that results in injury, does that constitute proximate

cause?"  (2)  "If the string of events was inevitable, can the person who initiated them be held

liable?"  (*See* Note from Jury, Dkt. No. 111).  The Court stated to counsel that the answer to

these questions was definitely not yes.  The Court further correctly assumed the jury was

considering whether to hold defendants liable because Kane had pushed Fitzgerald and this may

have been a proximate cause of the ensuing melee, even if Kane and Iverson played no direct

part in that melee. Counsel for Defendants asked the court to answer both questions in the

negative since Plaintiffs had not brought a negligence claim asserting that the actions of

Defendants caused the altercation. Plaintiffs' theory was that Kane committed an assault and battery on Godfrey and this was the only real question the jury had to consider. Without explaining, however, the Court chose to refuse to instruct the jury by responding to its questions. Under the District of Columbia law, erroneous instructions given to a jury that raise a substantial possibility that the jury's verdict was based on an improper legal theory that requires reversal. *See United States v. Lemire*, 720 F.2d 1327, 1343 (D.C. Cir. 1983).

The failure to respond to the jury's question on proximate cause raises a substantial possibility that the jury's verdict was based on an improper legal theory, rather than a factual issue. In the District of Columbia a battery "is an intentional act that causes a harmful or offensive bodily contact." *Anderson-Bey*, 466 F.Supp.2d at 68. There is no proximate causation element to battery; therefore, the jury's question should have alerted the Court to the jury's confusion. Moreover, if the jury views a string of events as "inevitable" the Plaintiff has clearly failed to prove that Defendant Kane intended to hit Plaintiff Godfrey. The Court's failure to clarify this point to the jury constitutes a substantial error that likely led to a jury verdict for battery based on the erroneous premise that Defendant Kane's push of Curtiss Fitzgerald set off a chain of events that inevitably led to Plaintiff Godfrey's injuries.

This last point is made further evident by the jury's rapid decision for Defendants on the issue of punitive damages. If the jury truly believed Kane had intentionally battered Godfrey, while punching and kicking him in the head and ribs and smashing a glass bottle on his head, as Plaintiff's contended but no witnesses supported, the jury would have no doubt assessed punitive damages for these malicious acts intended to cause bodily injury. But the jury made no such findings. The only conclusion one can reach from the jury's two critical unanswered questions regarding proximate cause and its subsequent findings on punitive damages is that the jury

16

believed Kane *caused* the fight by his admitted push of Fitzgerald, but *did not commit* a battery

on Mr. Godfrey.  Therefore, the Court must entered judgment as a matter of law in Defendant

Iverson's favor on the negligent supervision claim.

> **b.    The Court failed to properly instruct the jury on the duty arising under negligent supervision.**

The jury instruction regarding Defendant Iverson's alleged negligent supervision of Jason

Kane (Count IV) did not address the necessary element of duty or causation.  Rather, the jury

instruction stated that:

> Negligence is the failure to exercise ordinary care under the circumstances. To exercise ordinary care means to use the same caution, attention or skill that a reasonable person would use under similar circumstances. It is negligent to do something that a person using ordinary care would not do. It is also negligent to fail to do something that a person using ordinary care would do.
>
> . . .
>
> In sum, to hold Allen Iverson liable for negligent supervision of Jason Kane, you must find by a preponderance of the evidence that:
>
> 1)    Jason Kane committed assault and battery against one or both of the plaintiffs;
>
> 2)    Allen Iverson knew or should have known that Jason Kane behaved in a dangerous or otherwise incompetent manner;
>
> 3)    Allen Iverson, armed with that actual or constructive knowledge, failed to use reasonable care in supervising Jason Kane at the Eyebar; and
>
> 4)    Allen Iverson's failure to use such reasonable care in supervising Jason Kane was a substantial factor in bringing about the injuries suffered by a plaintiff.

(*See* Jury Instructions, at 16-17, Dkt. No. 112).  In essence, the Court did not instruct the jury to

find a duty or causation at all.  This failure is likely the cause of the jury ignoring that the

evidence presented did not mention (let alone establish) any duty of care or establish Iverson's

17

knowledge of Kane's violent propensities was the proximate cause of the breach of the duty of care. This is not something the jury can assume away. *See Phelan v. City of Mount Rainier*, 805 A.2d 930, 940 (D.C. 2002) (an action for negligent supervision "requires proof that the employer breached a duty to plaintiff to use reasonable care in the supervision or retention of an employee which proximately caused harm to plaintiff."). Had the Court properly instructed on this issue, no reasonable jury would have returned a verdict against Defendants Iverson. In light of the failure to properly instruct and the lack of evidence establishing duty or proximate cause, the Court must enter judgment in Defendant Iverson's favor on the claim of negligent supervision.

### c.    The Court improperly excluded impeachment material concerning Plaintiff Godfrey.

The Court erroneously excluded evidence that would have impeached Mr. Godfrey's testimony that he was psychologically traumatized by this incident, that he was not aggressive, and that he avoids conflicts at any cost. (See 6/28 Tr., at 100:7-13; 103:14-16; 80:11-19). Because Mr. Godfrey's testimony in this case represents the most important evidence the jury considered in reaching its verdict, the Court's exclusion of admissible impeachment evidence prevented the jury from rendering a proper verdict and constituted more than harmless error. It is proper for the Court to determine whether the exclusion of impeachment material would lead to a different verdict. *See Curry v. District of Columbia*, 195 F.3d 654, 659 (D.C.Cir. 1999) (citation omitted) (stating that in considering whether *reasonable* men and women could have rendered a verdict in plaintiff's favor, evidence supporting the verdict must be more than merely colorable; it must be significantly probative.).

In order to find Defendants liable and award damages of $260,000, the jury must have afforded more weight to Godfrey's account of the July 20, 2005 incident and the physical and

psychological impact he asserted resulted therefrom.  During trial, Godfrey testified extensively

to his non-aggressive nature.  When asked during direct examination whether his martial arts

training made him aggressive, Godfrey responded, "Not at all.  The true goal of martial arts is to

create better human beings."  (6/28 Tr., at 80:12-13).  Godfrey further explained that his martial

arts training has led him to "avoid conflicts at any cost."  (6/28 Tr., at 80:12-13).  Moreover,

Godfrey's counselor testified that he questioned Godfrey about homicidal tendencies to which

Godfrey denied having any. (6/28 Tr., at 19-23).

Following Godfrey's and his counselor's testimony, Defense counsel, pursuant to Rule

608 of the Federal Rules of Evidence, was entitled to cross examine Godfrey about specific

instances of conduct that would undermine the truthfulness of his testimony about his peaceful

nature and homicidal tendencies. Fed. R. Evid. 608(b).  Rule 608 addresses specific instances of

conduct stating that it may be provided "**if probative of truthfulness or untruthfulness, be

inquired into on cross-examination of the witness (1) concerning the witness' character for

truthfulness or untruthfulness**. . ." Fed. R. Evid. 608 (emphasis added). Yet, the Court denied

Defendants the opportunity to challenge the sufficiency of Godfrey's and his doctor's testimony

by questioning Godfrey about a temporary restraining order in which he threatened to kill a

woman.

Specifically, on July 29, 2007 before cross examining Mr. Godfrey and outside the

presence of the jury, out of courtesy, Defense counsel notified the Court of Defendants intentions

to inquire about the June 4, 2007 restraining order.  The Court submitted that "under the law,

[Defense counsel] has a good faith basis to ask him … about it whether or not he could bring in

19

extrinsic evidence. I don't think that's the argument." (6/29 Tr., at 6:12-15).[3]  The Court's

rationale behind denying this admissible evidence was an unfounded assumption that, if given

the chance, Mr. Godfrey would perjure himself, leaving Defense counsel no avenue to inquire

about the incident. The Court questioned, "whether [Defense counsel] could even prove it up *if*

he denies it, which *I assume he would*." (6/29 Tr., at 7:5-6) (emphasis added). The Court

repeated (in the presence of Godfrey) that he would just deny the order ever occurred.

Moreover, the Court suggested that its decision was perhaps based on some sort of quid pro quo

stating that: "And I've done it on behalf of your client more than once here, Mr. Martin

(referring to excluding improper character evidence). So as a matter of fairness, I think that its

probative value is out-stripped by its prejudicial value … You can only prove it up by extrinsic

evidence *if* he denies it. *I can't believe he's going to agree with it.* I don't think you can do it

here." (6/29 Tr., at 8:12-21) (emphasis added). While recognizing its admissibility, the Court

erroneously prevented Defense counsel from inquiring about the incident during cross

examination. (6/29 Tr., at 9:3-6).

Defendants were entitled to inquire about this order pursuant to Rule 608(b) in order to

impeach Godfrey's important testimony regarding his psychological state and tendency for

aggressiveness. (6/29 Tr., at 4:1-11; 5:9-15). Defendants respectfully submit that had the Court

admitted this evidence Godfrey would have acknowledged the incident (without the Court

instructing him not to be truthful in response). Godfrey had already testified that he was careful

in his responses on cross examination because Defense counsel "might have something" proving

that he's wrong. (6/28 Tr., at 113:4-6). Evidence that Godfrey is aggressive and not peaceful

---

[3]  Defense counsel never suggested any intension to offer extrinsic evidence to prove Mr.
Godfrey's conduct on June 3, 2007.

would severely damage his credibility in this case of our word against their words. The jury's verdict in this case would have been different. The exclusion of proper impeachment evidence constitutes more than harmless error; it constitutes an abuse of that discretion and warrants entry of judgment as a matter of law.

### d. The Court improperly admitted highly prejudicial evidence involving an incident at a Crabbers restaurant and an episode of the Punk'd television show.

Perhaps most prejudicial of all the errors in this case was the Court's decision to allow Plaintiffs to offer evidence relating to an incident at a Crabbers restaurant in Virginia and an episode of the television show Punk'd. These incidents had nothing to do with the facts, claims or defenses in this matter but operated to cast aspersions on Defendants by the way they dress and talk and with whom they associate. The admission of evidence and testimony related to these incidents was not only prejudicial, but also very improper. As detailed below, the Court essentially tied Defendants' hands behind their backs with respect to their defense by allowing prejudicial evidence that (1) could not be challenged with extrinsic evidence and (2) had nothing to do with the claims or defenses in this matter. These incidents, therefore, should not have been considered by the jury.

### i. Testimony and Evidence related to Crabbers Restaurant was highly prejudicial and improper.

Defendants specifically raised in their motion in limine that Plaintiffs intended to make the trial about everything other than the Eye Bar incident, on which Plaintiffs' claims are based, by raising in front of the jury other incidents that have nothing to do with the case. The Court

21

excluded all of these other incidents,[4] but the Court left open the issue of the Crabbers incident until Plaintiffs could produce their witnesses on the day of trial to make a proffer for this incident. (*See* 6/20 Order, Dkt. No. 78; 6/19 Pretrial Conf. Tr., at 63:14 – 65:15).

(a)    **The Court allowed testimony on the Crabbers' incident**
**although it had nothing to do with Defendants.**

The Court allowed Plaintiffs to change repeatedly their theory on why testimony related to the Crabbers incident was admissible (meaning probative and relevant) in this case. First, Plaintiffs claimed that the incident would show Defendants acted in conformity by starting or engaging in fights at other clubs. (Pl.'s Opp. to Mot. in Limine, Dkt. No. 70, at 8-9). This argument was quickly dismissed as improper character evidence. Also, no one testified that either Iverson or Kane hit anyone at Crabbers.

Next, Plaintiffs claimed that the incident would show Terrance Williams, a third party witness in this matter, was employed as security for Defendant Iverson.[5] (See 6/19 Pretrial Conf. Tr., at p. 23-45) Again, the fact Mr. Williams may have been security at Crabbers was irrelevant to claims that Defendant Kane either assaulted or battered or inflicted emotional distress upon Plaintiff Godfrey, while Defendant Iverson failed to supervise Defendant Kane during the Eye

---

[4] As discussed in greater detail herein, the Court initially denied testimony about the Punk'd video but later reversed course without explanation. Strangely, soon after her decision to reverse herself on the Punk'd Video, the Court joked that she was called a "kill-joy" for excluding the Punk'd video in a newspaper article appearing in the Washington Post the prior day.

[5] As discussed in greater detailed herein, Plaintiffs decided to change their theory of the case at the pretrial conference to allege that Mr. Williams caused Plaintiff Godfrey's injuries together with Defendant Kane while Defendant Iverson negligently supervised them both. Defendants objected that such an approach was improper. (See 6/19 Pretrial Conf. Tr., at 23:23 – 24:2; 27:17-19; 65:16 – 66:19). Plaintiffs wanted to use Crabbers and Punk'd to show that Williams was a contract security guard for Iverson.

22

Bar incident.  More important, no one testified that Mr. Williams was ever employed as (or shown to act as) security for Defendant Iverson.

Then, Plaintiffs claimed that the incident was being offered to show Defendant Iverson's prior knowledge of Defendant Kane's violent propensity.  (See 6/19 Pretrial Conf. Tr., at 27:23 – 29:9).  No one testified, however, that Defendant Kane acted violently at Crabbers.

Finally, Plaintiffs contended that the Crabbers incident would be used to show Defendant Iverson's prior knowledge of Mr. Williams's violent propensity.  (See 6/19 Pretrial Conf. Tr., at p. 23-45)  Again, this had nothing to do with the claims or defenses in this matter as Mr. Williams was not mentioned in this case as a source of liability until the pretrial conference.  And, more importantly, there was not even a scintilla of evidence establishing a connection — employment, agency or contract — between Iverson and Williams at Crabbers.  None of the reasons advance by Plaintiffs for admitting the Crabbers testimony made that testimony more probative than prejudicial.  In fact, the proffered testimony of witnesses Simmons and Cooper on the Crabbers incident clearly established that neither Defendant Iverson nor Defendant Kane hit anyone at Crabbers or instructed anyone at the Crabbers restaurant to do anything. (6/27 Tr., at 6:7-9; 36:22-37:5, 17:5-7).  Yet, the Court allowed the testimony anyways.

> **(b)    The Court allowed witnesses to refer to unknown individuals at Crabbers as Iverson's guys and allowed the jury to associate Defendants with people involved in bar fights, which was confusing and prejudicial.**

In reality, the Crabbers testimony likely confused the jury and definitely prejudiced Defendants.  Addressing the latter of these two problems first, the prejudice arising from the Crabbers testimony is clear.  Hearing testimony about another fight in which the Court allowed witnesses to refer repeatedly to unknown people as Iverson's "guys," "people" or "security" and allowed testimony about how these other unknown individuals beat the witnesses at Crabbers,

(6/27 Tr., at 78:25-79:1; 82:4-5; 6/28 Tr. 73-86), provided the jury with the false belief or impression that Iverson and Kane engaged in this type of behavior or were associated with guys who did.  The District of Columbia finds such type of evidence highly prejudicial.  *See e.g. U.S. v. Hernandez*, 780 F.2d 113, 118, 122 (D.C. Cir. 1986) (where the evidence did not suggest that defendant was involved in a prior fight, he was merely present, admission of evidence of prior fight was unduly prejudicial.)

As equally important, the jury was likely confused by the inclusion of testimony related to Crabbers since there was no testimony that Iverson or Kane hit anyone or instructed anyone to do anything at Crabbers and this case was about the Eye Bar incident.  The jury likely assigned some level of importance to the incident given its inclusion in the case, but any such assignment would be improper given the testimony was not probative of issues in the case.  The confusion was compounded when the Court allowed Plaintiffs to maintain claims for negligent supervision without requiring any knowledge of past bad behavior or contractual or employment relationship whatsoever.  This change just did not make any sense in light of the Court's ruling that testimony on Crabbers was being allowed to prove just that.

        **(c)**      **The Court allowed evidence of the Crabbers incident as probative to the issues of prior knowledge and contractual relationship on the negligent supervision claim and then removed those elements of the claim.**

The Court allowed the testimony on the Crabbers incident in response to one of Plaintiffs' argument that they needed the testimony to establish negligent supervision against Iverson since Plaintiffs must establish that Iverson knew or should have known Williams (who was not mentioned in the Complaint) acted in a dangerous manner and acted on Iverson's behalf

24

as an independent contractor.[6]  The probative value of this testimony is negligible given Mr.

Williams is not a party and this theory of liability was not mentioned until a week before trial.

The probative value is further diminished considering the Court changed the standard and

elements of negligent supervision to remove the very elements that the Crabbers testimony was

offered to prove in the first place, namely (1) Iverson had prior knowledge Kane acted in a

dangerous manner and (2) Iverson (a) contracted Williams' service as a security official and (b)

had prior knowledge of his dangerous nature.  After allowing the jury to be subjected repeatedly

to testimony about Crabbers because it was suppose to show prior bad acts and contractual

relationships, the Court ruled that neither element was needed to support a claim of negligent

supervision.  The Court allowed Plaintiffs to have their cake (by admitting extremely prejudicial

evidence of another incident) and eat it too (by not requiring Plaintiffs to prove the elements for

which the prejudicial evidence was offered in the first place).  Nothing could indicate that the

testimony and evidence on Crabbers was not probative than the Court's decision that it was not a

necessary element needed to prove the claim.

> ### ii.    Testimony and Evidence related to Punk'd Video was highly prejudicial and improper.

Like the Crabbers incident, Plaintiffs offered a variety of different reasons for their desire

to offer testimony on a episode of the television show Punk'd on which Defendants appeared

together with Mr. Williams.  (*See* 6/19 Pretrial Conf. Tr., at 68:22 – 69:3; 69:24 – 70:12).  Unlike

the Crabbers incident, the Court ruled out the Punk'd television show noting that it was irrelevant

to the claims and defenses of this matter and prejudicial to Defendants.  (*See* 6/20 Order, Dkt.

---

[6] Plaintiffs' position was clearly laid out at the pretrial conference. (See 6/19 Pretrial Conf. Tr., at 69:19-23).

No. 78, p. 3).  Defendants moved to reconsider the exclusion of the Punk'd tape raising the same issues for its inclusion (namely that it shows Mr. Williams acting as Defendant Iverson's security).[7]  For unknown reasons, the Court granted Plaintiffs' motion for reconsideration and allowed testimony about the Punk'd tape on the day of the trial.  Admission of this evidence was also erroneous.

The Punk'd tape lacked any probative value as the Court originally determined.  Certainly, the tape did not reach the claims against Defendant Kane, which were specific intent claims involving the incident at the Eye Bar.  Only the negligent supervision claim took into consideration a person's past actions.  Yet, there was no violent actions by anyone on the Punk'd video so questions exist about its probative value as to claims of negligence supervision.  Certainly, the video was not allowed to show Mr. Williams acted on Mr. Iverson's behalf since the Court ruled that neither an employment relationship nor a contractual relationship need exist to be held vicariously liable.  Defendants cannot explain any probative value of the tape.  The Court essentially allowed Plaintiffs to have it both ways:  negligent supervision requires prior knowledge and a contractual relationship for evidentiary purposes, but does not require either element for purposes of proving the claim.  This double edge sword cut sharply against Defendants on both sides by decreasing the threshold of admissible evidence as well as the standard of proof.  *See Evans v. Williams*,  238 F.R.D. 1, 2 (D.D.C. 2006) (illuminating the threshold for admissible evidence and making clear that when a court admits evidence, it must be relevant to proving the finding of fact for which it is offered.)

---

[7] The proffered reasons for using Punk'd were pretext.  In reality, Plaintiffs needed the video so their Crabbers witnesses could identify Terrance Williams as they likely had been coached (which could not be proven because it involves extrinsic evidence).

* * *

In sum, judgment as a matter of law is appropriate here because (1) Plaintiff Godfrey has not proven key elements of his claims for intentional infliction of emotional distress and negligent supervision and (2) the Court made evidentiary and procedural errors that were greater than simple harmless errors. The erroneous admitted evidence was relied upon by the jury; it prevented Defendants from proving the substance of their claim; there was no instruction on the issues; the jury based its findings based on the tainted evidence; and, most importantly, the erroneously omitted evidence was powerful and persuasive. Following the procedural standard of this jurisdiction, the Court should examine the record considering the erroneously omitted evidence of Plaintiff Godfrey's aggressive nature and exclude the erroneously admitted evidence of Crabbers, Punk'd, Terrance Williams and the effect of not properly instructing the jury on causation and battery. If the Court makes these considerations, it is clear that judgment should be entered in Defendants' favor as no reasonable jury could find intentional infliction of emotional distress without outrageous conduct, negligence supervision without knowledge of a prior bad act and battery without causation or intent.

**B.    Defendants are Entitled to a New Trial under Rule 59 given the Court's Evidentiary and Procedural Errors.**

Rule 59 provides that "a new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59. "The standard for a new trial is less onerous than the one applicable to a Rule 50 motion." *Nyman*, 967 F.Supp at 1569 (citation omitted). "A trial judge should grant a new trial if the verdict is against the weight of the evidence, damages are excessive, for other reasons the trial was not fair, or substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions." *Id.*

27

The decision to grant or deny a new trial is "committed to the sound discretion of the district court." *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36 (1980).  In determining whether to grant a motion for a new trial, a court is not required to view the evidence in a light most favorable to the prevailing party but is free to weigh the evidence itself.  *Harris v. Coyne*, 1988 WL 60339, *1 (D.D.C. 1988).  Moreover, given the differing standards, a trial court may grant a new trial even though it has denied a motion for judgment as a matter of law.  *See Roebuck v. Drexel University,* 852 F.2d 715, 735-36 (3d Cir. 1988).

Here, the Court should grant a new trial to Defendants on Plaintiff Godfrey's claims.  The weight of the evidence is against the verdict in that only two individuals claim to have seen Defendant Kane strike Plaintiff Godfrey — one of whom was a business associate of Plaintiff Kittrell (Studevent) and another gentleman (Simington) who since passed away but who identified Defendant Kane as the person beating Plaintiff Godfrey after prodding from Plaintiff counsel when examining the Punk'd video.  No less than seven individuals testified that they did not see Defendant Kane touch Plaintiff Godfrey (including some of Plaintiffs' witnesses like Curtiss Fitzgerald, and Terra Barrow). Without a battery, which the weight of the evidence establishes did not occur; there can be no liability under any of the other claims.  The Court should award a new trial.

Moreover, a new trial is fair here because justice militates in favor of one in light of the erroneous admission and rejection of evidence constituting substantial errors and the refusal of giving proper instructions.  As previously discussed, on the one hand, the Court allowed highly prejudicial evidence concerning the Crabbers and Punk'd incidents neither of which was relevant nor admissible and hence not probative.  On the other hand, the Court excluded evidence it deemed credible, relevant, and probative concerning Plaintiff Godfrey's penchant for violence

28

but excluded that evidence based on the unique theories that the evidence cannot be used because (1) Godfrey will lie about it when asked and (2) the Court excluded some evidence for Defendants so it must exclude some evidence for Plaintiffs as a matter of fairness. Additionally the Court made key procedural errors in failing to instruct the jury on issues concerning proximate cause and allowing the jury to consider for liability purposes a person unnamed in the Complaint with no connection whatsoever (other than friendship) to Defendants. The Court allowed consideration of vicariously liability not on the theory of employment or contractual relationship but merely because another was present and knew that person. What a dangerous precedent. Considering all of these points, it is clear that the admission and rejection of evidence constitutes substantial errors in which a new trial is appropriate.

Furthermore, the Court did other things that effectively prevented Defendants from receiving a fair trial. First, when Defendants sought to impeach Plaintiff Kittrell with respect to his testimony about being a nightclub owner, the Court threatened to allow Plaintiffs to have some sort of quid pro quo impeachment evidence with respect to Defendants. The rules of evidence do not operate that way. Evidentiary errors that result in a miscarriage of justice are grounds for granting a new trial. *See Dickerson v. HBO & Co.*, 1995 WL 767177, *2 (D.D.C. 1995) (citation omitted).

Second, the Court allowed Plaintiffs' counsel to read from the transcript to the jury during closing argument. This act is improper. It gave the jury the false impression about the testimony. After objection by defense counsel, the Court merely responded that Defendants counsel had also read from the transcript. That was simply not true and inaccurate.

Finally, as previously discussed, the Court allowed Plaintiffs doctor witnesses to testify as expert although they had not been designated as such. This too is improper.

29

\* \* \*

In light of (1) the Court allowing highly prejudicial testimony about Crabbers and

Punk'd; (2) its questionable standard for negligent supervision (which did not require a prior

knowledge and did not require either a contractor or employee relationship); (3) its failure to

properly instruct the jury on proximate causation; (4) its failure to properly instruct the jury with

respect to the element of duty for negligent supervision; (5) its threats of quid pro quo

impeachment evidence; (6) its refusal to allow valid impeachment evidence concerning Plaintiff

Godfrey's veracity; (7) its tolerance for lay witnesses testifying as experts; (8) its tolerance for

Plaintiffs' counsel reading the transcript to the jury; and (9) its inclusion of a non-party as a

source of liability, a new trial is necessary.  A trial judge should grant a new trial if substantial

errors occurred in the giving or refusal of jury instructions.  *See Nyman*, 967 F.Supp. at 1569.

### III.     CONCLUSION

WHEREFORE, Defendants respectfully request that the Court enter an Order precluding

the testimony and evidence referenced herein.


Submitted this 23rd day of July, 2007.          Respectfully submitted,

                                                **SHERMAN, SILVERSTEIN, KOHL**
                                                **ROSE & PODOLSKY, P.A.**

Date: _____July 23, 2007_____          By:_____*/s/ Alan C. Milstein, Esquire*_____
                                                Alan C. Milstein, Esquire
                                                Fairway Corporate Center
                                                4300 Haddonfield Road – Suite 311
                                                Pennsauken, NJ 08109
                                                Telephone: (856) 662-0700
                                                Facsimile: (856) 488-4744
                                                *Counsel for Defendant Allen Iverson*


30

**SUTHERLAND ASBILL &
BRENNAN LLP**

Date: _____July 23, 2007_____    By:_____ */s/ William R. Martin, Esquire*_____
                                         William R. Martin (Bar No. 465531)
                                         1275 Pennsylvania Avenue, NW
                                         Washington, DC 20004
                                         Telephone: (202) 383-0100
                                         Facsimile: (202) 637-3593
                                         *Counsel for Defendant Jason Kane*

WO 763443.9