IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARLIN GODFREY, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Action No. 05-2044 (ESH) |
| ALLEN IVERSON, *et al.*, | * |
| Defendants. | * |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
FOR JUDGMENT AS A MATTER OF LAW AND A NEW TRIAL,
OR, IN THE ALTERNATIVE FOR A REMITTITUR**

**I.   INTRODUCTION**

Defendants Allen Iverson and Jason Kane, by and through their undersigned counsel, respectfully submit this memorandum in further support of their Renewed Motion for Judgment as a Matter of Law or, in the alternative, Defendants' Motions for a New Trial and Request for Remittitur ("Post-Trial Motions") and in reply to Plaintiffs' Opposition to Defendants' post-trial motions ("Opposition"). [1]

In their opposition, Plaintiffs once again resort to *ad hominem* attacks against Defendants' counsel while ignoring the legal and factual reasons that support why Defendants are entitled to judgment as a matter of law on Plaintiff Godfrey's claims. Plaintiffs either ignore or summarily address most of the arguments Defendants have made in their post-trial motions.

---

[1] As Defendants have noted in their pending Motion to Strike, Plaintiffs' opposition was not timely filed nor was it filed with leave of the Court. Moreover, Federal Rule of Civil Procedure 6(b) states that a court "may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d), and (e), and 60(b), except to the extent and under the conditions stated in them." Fed. R. Civ. P. 6(b). There is no right for an extension of time under any of the cited rules in Rule 6(b). As a result, any request for an extension of time to file their post-judgment motions under Rules 50(b) and 59 must be denied as a matter of course and the Court should enter an Order in favor of Defendant's post trial motions. Out of an abundance of caution, Defendants file this reply memorandum.

Plaintiffs simply rely on a statement of facts that is based on the mere allegations of their complaint. In contrast, Defendants repeatedly cite to the record in their post-trial motions to establish that either the evidence presented at trial did not establish the elements of Plaintiff Godfrey's claims or the Court made evidentiary and procedural errors that prevented the Jury from properly analyzing the evidence and reaching a proper verdict. In addition, Defendants have laid out in detail why a $260,000 compensatory damages award is both excessive and not supported by the evidence.

As addressed below and in Defendants' post-trial motions, Defendants are entitled to a judgment as a matter of law, or in the alternative a new trial because: (1) there is neither substantial evidence nor a legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff Godfrey on his claims; (2) Defendants are entitled to judgment as a matter of law on Plaintiffs' assault and battery claim because the Court failed to instruct the jury on causation; (3) Plaintiffs have failed to offer the requisite evidence to support an intentional infliction of emotional distress claim; (4) the jury instruction submitted in this case regarding Defendant Iverson's alleged negligent supervision of Jason Kane did not instruct the jury regarding the necessary elements nor did Plaintiffs prove the elements of negligent supervision; (5) the procedural and evidentiary errors made during trial prevented the jury from rendering a proper verdict; (6) taken together, certain incidents during trial rendered the trial unfair warranting a new trial. In the alternative, because the $260,000 compensatory damages verdict returned by the jury is excessive and not supported by the evidence, Defendants request that the Court reduce the award of compensatory damages to an amount not greater than $31,200.

## II.  ARGUMENT

### A.  Standard of Review

#### 1.  Judgment As A Matter of Law

In merely citing the standard of review for a motion for judgment as a matter of law, Plaintiffs fail to address the point that when assessing the sufficiency of evidence, the Court must decide whether there is substantial evidence upon which a jury could *properly* find for the non-moving party.  *See Allen v. Perry*, 279 F.Supp. 2d 36, 42 (D.D.C. 2003) (citing *Carter v. Duncan Huggins, Ltd.*, 727 F.2d 1225, 1228 (D.C.Cir. 1984); *see also Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993)).  (emphasis added).  Moreover, a mere scintilla of evidence presented by Plaintiffs is not sufficient to deny a motion for judgment as a matter of law.  *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938).  Because there is neither substantial evidence nor a legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff Godfrey on his claims, the jury's verdict should be vacated and judgment should be entered in Defendants' favor.

#### 2.  New Trial

Plaintiffs fail to even articulate the standard of review in determining whether a new trial is warranted and instead simply rely on the appellate court's scope of reviewing a trial court's denial of a motion for new trial.  Not only is it in the discretion of the Court to grant a new trial, but the standard for a new trial is less onerous than the one applicable to a motion for judgment as a matter of law.  *Nyman v. F.D.I.C.*,  967 F.Supp. 1562, 1569 (D.D.C. 1997).  Given the differing standards between a motion for a judgment as a matter of law and a new trial, a trial court may grant a new trial even though it has denied a motion for judgment as a matter of law.  *See Roebuck v. Drexel University,* 852 F.2d 715, 735-36 (3d Cir. 1988).

### 3.      Remittitur

Plaintiffs recognize in their opposition that the Court should vacate a jury verdict if it results in a "miscarriage of justice" or is excessive. Plaintiffs do not address, however, the point that it is the "quality [and] quantity of evidence" of damages at trial that must support a compensatory damages award. *See Liberatore v. CVS New York, Inc.*, 160 F.Supp.2d 114, 120 (D.D.C. 2001). Moreover, a damages award may be excessive not only if the amount of the verdict is too large but, in light of all the facts and circumstances, if the verdict appears to have been the product of passion, prejudice, mistake or consideration of improper factors rather than a measured assessment of the degree of injury suffered by the plaintiff." *Moss v. Stockard*, 580 A.2d 1011, 1035 (D.C. 1990). (citations omitted). Furthermore, the District of Columbia applies proportionality to its juries' awards of damages. *See District of Columbia v. Jackson*, 810 A.2d 388, 398 (D.C. 2002).

In this case, neither the quality or quantity of evidence supports a compensatory damages award of $260,000. In addition, the jury awarded pain and suffering damages that were 25 times the amount of special damages that the jury awarded. Accordingly, if the Court grants Defendants request for relief by way of remittitur, Defendants have respectfully suggested that the compensatory damage award be reduced to reflect Plaintiff's actual out-of pocket medical expense and pain and suffering damages equaling four times Plaintiff's actual medical expenses but no more than 25 times those medical expenses.

**B.    Defendants' Are Entitled to Judgment as a Matter of Law on Plaintiff Godfrey's Assault and Battery Claim Because The Court's Procedural Error Resulted in the Jury's Inability to Properly Weigh the Evidence.**

Plaintiffs' resort once again in their opposition to *ad hominem* attacks against Defendants' counsel, questioning whether they were present at trial or are in touch with reality.

In their eagerness to attack Defendants' counsel, Plaintiffs' fail to address Defendants' argument that the Court failed to properly instruct the jury on the causation element of battery and failed to answer a question posed by the jury that indicated its confusion regarding causation. Instead of addressing the fact that the jury was clearly confused as to whether proximate cause was an element of battery, Plaintiffs provide the Court with a five page summary of facts supporting their assertion that sufficient evidence was provided on Plaintiff Godfrey's assault and battery claim. In their attempt to play "gotcha," Plaintiffs state that defendants never attempted to demonstrate how the evidence in this case fails to establish an assault and battery. Once again Plaintiffs take the position in their opposition against arguments Defendants never made while ignoring the arguments actually articulated.

Defendants never argue in their post-trial motions that there was a lack of evidence that might support a assault and battery claim. Instead, Defendants assert that when considering the assault and battery claim, the jury's unanswered questions of the Court clearly indicated that the jury was considering whether to hold defendants liable because Kane had pushed Fitzgerald and this may have been a proximate cause of the ensuing melee, even if Kane and Iverson played no direct part in that melee. Counsel for Defendants asked the court to answer both questions in the negative since Plaintiffs had not brought a negligence claim asserting that the actions of Defendants caused the altercation. Plaintiffs' theory was that Kane committed an assault and battery on Godfrey and this was the only real question the jury had to consider. Defendants point out that, without explanation, the Court chose to refuse to instruct the jury on the causation element of battery. Moreover, under the District of Columbia law, erroneous instructions given to a jury that raise a substantial possibility that the jury's verdict was based on an improper legal theory requires reversal. *See United States v. Lemire*, 720 F.2d 1327, 1343 (D.C. Cir. 1983). Put

in this context, Plaintiffs five page summary of facts produced at trial is irrelevant. Moreover, Plaintiffs' assertion that its summary of facts is "favorable to the plaintiff" fails to specify how any of such facts actually address Defendants' post-trial motions.

Here, entry of judgment as matter of law is proper because the Court made a procedural error that was not merely harmless. The Court failed to properly instruct the jury and resolve a critical jury instruction. As a result, the jury's deliberations were not limited to proper evidence and, thus, cannot stand.

**C.    The evidence does not support the elements of intentional infliction of emotional distress by Defendant Kane against Plaintiff Godfrey.**

In arguing that Plaintiff Godfrey's intentional infliction of emotional distress claim has been established, Plaintiffs simply conclude that, "[t]here is no question that Mr. Godfrey suffered emotional distress, there is no question that such distress was severe and caused by the beating that he received at the hands of Jason Kane, and there is no question that the actions of Mr. Kane were both intentional and outrageous." (Pls.' Opp. at 11). Plaintiffs fail to establish how such a conclusory statement meets the demanding standard that to establish the requisite degree of 'outrageousness,' to support an intentional infliction of emotional distress claim, a plaintiff must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Joyner v. Sibley Memorial Hosp.*, 826 A.2d 362, 373 (D.C. 2003). The conduct must go beyond all possible bounds of decency and be regarded as atrocious, and utterly intolerable in a civilized community. *Kotsch v. District of Columbia*, 924 A.2d 1040, 1045-46 (D.C. 2007) (citing Restatement (Second) of Torts § 46, cmt.d (1965)).

Plaintiffs assert that Defendants "have made no attempt to support their position with an analysis of the evidence favorable to the plaintiff." (Pls.' Opp. at 11). Such statement implies

that the Court should only review the evidence "favorable to the plaintiff" instead of considering *all* the evidence. Clearly this is not the case. The truth is that Defendants have addressed why the evidence did not establish the elements of intentional infliction of emotional distress such that Defendants' are entitled to a judgment as a matter of law.

Plaintiff Godfrey was a third degree black belt who joined the fight *sua sponte* to help out a friend. (6/28 Tr., 81:5-11; 90:10-11; 106:17-111:11). Moreover, Plaintiff Godfrey's testimony was that he felt sad after being beaten up at the Eye Bar and was unsure of himself. (6/28 Tr., at 100:7-13; *see also* Pl. Ex. 8 – "I was attacked by a group of people and now I'm feeling sad.") His counselor, testifying as an expert on causation issues although not properly designated as an expert,[2] testified that he believed Godfrey was depressed because he did not shave. (6/28 Tr., at 48:23-24). The testimony revealed that Plaintiff Godfrey was able to work notwithstanding his alleged depression. (6/28 Tr., at 40:9 – 41:9; 103:14-104:2). He was able to take care of his finances notwithstanding his alleged depression. (6/28 Tr., at 103:14-104:2). He simply could not tell his martial arts students that he got beat up. (6/28 Tr., at 102:19-103:5). Even if this evidence establishes Plaintiff Godfrey was depressed, it does not rise to the level of severe emotional distress involving causes of actions by security personnel. Moreover, even if Plaintiff Godfrey was able to establish the existence of emotional distress from his doctors' purported

---

[2] Plaintiff offered three doctors in his case in chief. None of the doctors were designated as experts but all three testified improperly on diagnosis and causation issues. (See 6/28 Tr., at p.9-18; 23-41; 6/29 Tr., at 61-71). This testimony was improper. *See Bynum v. MVM, Inc.*, 241 F.R.D. 52, 52 (D.D.C. 2007); *Anthony v. Wash. Metro Area Transit Auth.*, 2005 U.S. Dist. LEXIS 41560 (D.D.C. 2005); *Riddick v. Washington Hosp. Ctr.*, 183 F.R.D. 327, 330 (D.D.C. 1998); *Allen v. Hill*, 626 A.2d 875, 877 (D.C. 1993); *see also* Fed. R. Evid. 701 and 702 (lay opinions are limited to ordinary inferences and characterizations).

"lay" testimony and scant medical records, Godfrey would still need expert testimony to establish a causal link between his distress and the incident at the Eye Bar.

**D.    The evidence submitted to the Jury does not establish the elements of negligent supervision.**

Plaintiffs are the ones who, in arguing that Plaintiff Godfrey established the essential elements of a negligent supervision claim against Mr. Iverson, make no attempt to support their position with an analysis of the facts. Plaintiffs refute Defendants' assertion that the evidence submitted to the jury did not establish the elements of negligent supervision by simply restating the elements of the tort of negligent supervision. (Pls.' Opp. at 12-14). Again, Plaintiffs fail to address Defendants' assertion that the jury instruction submitted in this case regarding Defendant Iverson's alleged negligent supervision of Jason Kane did not instruct the jury regarding the necessary element of duty. Plaintiffs recognize that the duty is one of ordinary care, but ignore the fact that they failed to establish that Mr. Iverson owed a duty to Plaintiff Godfrey or that the Court properly instructed the jury that such duty existed. Despite the improper jury instruction, Defendants maintain their position that the evidence submitted to the jury in this case was insufficient to establish the essential elements of a negligent supervision claim against Mr. Iverson because (a) there was no evidence establishing standard of care owed by Defendant Iverson to Plaintiff Godfrey; (b) there was no evidence Iverson had prior or constructive knowledge of Kane's dangerous propensities; and (c) there was no evidence establishing how Defendant Iverson should have used reasonable care in supervising Mr. Kane to prevent the harm to Plaintiff Godfrey. Plaintiffs have done nothing in their opposition to dispute this point.

Nor did Plaintiffs address the fact that this was a five minute melee involving several men weighing more than 300 pounds in a loud, crowded and dimly lit nightclub where it was difficult to see or hear what was happening. What would proper supervision have been? Should

8

Mr. Iverson, who weighs no more than 170 pounds, have initially placed himself between his security and the patrons, which would be contrary to the standard practice and purpose of security. Should he have stopped the fight rather than let security for the nightclub do what it was trained to do? Could he have stopped the fight? If he had stopped the fight, would this have prevented the harm to Plaintiff Godfrey or did that occur at the inception of the fight? No testimony was presented on these issues.

**E.    The Court's evidentiary and procedural errors prevented the Jury from rendering a proper verdict.**

Plaintiffs simply focus on one of five erroneous evidentiary rulings in their attempt to dismiss Defendants argument that the Court's evidentiary and procedural errors prevented the jury from rendering a proper verdict on the evidence rendered. The Court's exclusion of impeachment material that would have substantially undermined the credibility of Plaintiff Godfrey is but one incident that limited the amount of proper evidence the jury should have considered when deliberating. The Court also failed to instruct the jury and resolve a critical jury instruction; admitted highly prejudicial evidence of other unrelated incidents; and failed to exclude testimony related to acts of an unrelated third party. Each of these incidents alone, or in the aggregate, entitle Defendants' to judgment as a matter of law, or in the alternative, a new trial. Plaintiffs' reliance on the fact that a number of these erroneous rulings were addressed pretrial does nothing to undermine Defendants' assertion that they support a judgment as a matter of law or in the alternative, new trial.

**F.    In the alternative, Defendants are entitled to a new trial.**

Plaintiffs' correctly point out that discretion to grant a new trial is generally understood to include actions rendering the trial unfair. *Sparshott v. Feld Entm'tInc.*, 311 F.3d 425, 433 (D.C.Cir. 2002). Plaintiffs go on to simply conclude that "there is no single fact that the

9

defendants can identify that would entitle them to a new trial." (Pls.' Opp. at 15). On the contrary, Defendants assert that in light of (1) the Court allowing highly prejudicial evidence involving an incident at a Crabbers restaurant and an episode of the Punk'd television show; (2) its questionable standard for negligent supervision (which did not require a prior knowledge and did not require either a contractor or employee relationship); (3) its failure to properly instruct the jury on proximate causation; (4) its failure to properly instruct the jury with respect to the element of duty for negligent supervision; (5) its threats of quid pro quo impeachment evidence; (6) its refusal to allow valid impeachment evidence concerning Plaintiff Godfrey's veracity; (7) its tolerance for lay witnesses testifying as experts; (8) its tolerance for Plaintiffs' counsel reading the transcript to the jury; and (9) its inclusion of a non-party as a source of liability, a new trial is necessary.

**G.    In the alternative, the Court should remit the jury's award of damages to Plaintiff Godfrey.**

Plaintiffs' contention that "[a] man was beaten to a bloody pulp by Jason Kane and other members of Mr. Iverson's entourage," (Pls.' Opp. at 15), ignores his obligation under the law to prove his medical expenses. *See Croley v. Republican Nat. Comm.*, 759 A.2d 682, 689-90 (D.C. 2000). Plaintiffs would like the Court to overlook the principle that compensatory damages are designed only to make the injured party whole and are not intended to (and should not be permitted to) punish the defendant for alleged wrongdoing or otherwise place the plaintiff in a better position. *Id.*; *See also Finkelstein*, 593 A.2d at 599 (affirming the trial court's ruling that the size of the damage award reflected the jury's determination to punish the defendant and, hence, was improper and excessive.) The $10,000 compensatory damages award for medical expenses returned by the jury in this case is excessive and should be reduced because Plaintiff Godfrey's medical expenses were actually $1,200 (See Pl. Exs. 2a, 3a, 6a , 7a, and 10).

Moreover, the jury awarded pain and suffering damages that were 25 times the amount of special damages that the jury awarded (namely 25 times the $10,000 in medical expenses). The totality of the facts demonstrate that a $250,000 verdict bears no relation to Plaintiff Godfrey's actual pain and suffering and, as equally important, bears no relation to the actions of Defendants. While compensation for suffering can be accomplished only in a "symbolic and arbitrary fashion," compensable damage must be proven and cannot be presumed. *See Nyman*, 967 F.Supp. at 1570-71. Damages awarded for pain and suffering — measured by the enlightened conscience of fair and impartial jurors — are subject to judicial review and should be reduced when they are "beyond all reason." *Jeffries v. Potomac Dev. Corp.*, 822 F.2d 87, 95-96 (D.C.Cir. 1987).

Furthermore, "[e]xcessiveness refers not merely to the amount of the verdict but to whether, in light of all the facts and circumstances, the verdict appears to have been the product of passion, prejudice, mistake or consideration of improper factors rather than a measured assessment of the degree of injury suffered by the plaintiff." *Moss*, 580 A.2d at 1035. (citations omitted). In fact, the District of Columbia applies proportionality to its juries' awards of damages. *See District of Columbia v. Jackson*, 810 A.2d 388, 398 (D.C. 2002) (the court concluded that compensatory damages exceeded the "maximum limit of a reasonable range" justified by the evidence because it was out of proportion to the pain and suffering proven.) Even in cases involving damages for pain and suffering, such an amount must be reasonably related to the evidence presented. *Lawson*, 745 A.2d at 331 (the court concluded that damages for pain and suffering should not be more than four times the award of any special damages.)

Applying these principles here, given the insufficient evidence to support a $250,000 pain and suffering damages award, the jury's verdict was likely a product of Mr. Iverson's celebrity

11

status and consideration of other improper evidence (like Terrence Williams, Crabbers and the like). Plaintiffs' exorbitant damage request of $20 million was likely an additional factor in improperly leading the jury to conclude that a $250,000 award for pain and suffering could not be viewed as excessive. On these facts, the verdict of $250,000 in compensatory damages for pain and suffering clearly exceeds the maximum limit of a reasonable range justified by the evidence. The Court should reduce it proportionately with the award of special damages (medical costs) in this case which total $1,200.

Finally, Plaintiffs' reliance on *Langevine v. District of Columbia*, 795 F.2d 116, 135 n. 13 (D.C. Cir. 1986), is misplaced. In *Langevine*, the award was actually supported by evidence that her glasses were broken and her car was damaged. The jury awarded $1,500 for the proven property damage. In this case, the evidence indicates that Plaintiff Godfrey's medical expenses were $1,200, *not* the $10,000 that the jury awarded. Moreover, in *Langevine*, the Plaintiff's injuries, namely here bruised wrists, were still visible more than *three years* after her arrest and long after her injuries, Langevine continued to feel wounded and feared the police. In this case, Mr. Godfrey's pain and suffering and emotional distress are simply not credible. On August 16, 2005, Mr. Godfrey complained to Dr. Banguru that "I was attacked by a group of people and now I'm feeling sad." (Pl. Ex. 8). Mr. Godfrey had already retained an attorney at that time. Dr. Raymond Carnegie diagnosed Godfrey with a single episode of major depressive disorder, acute stress disorder, and post-traumatic stress disorder, (Pl. Ex. 8, 9), but he had been practicing less than a year and reached his diagnosis based on the fact that Godfrey had not shaved. (6/28 Tr., at 48:23-24). In addition, Curtiss Fitzgerald testified that Plaintiff's counsel suggested to him that "emotional distress" was a possibility from being in the incident. Plaintiff Godfrey's emotional distress was fleeting at best. By September 30, 2005, Dr. Raymond Carnegie's

medical records indicate that Mr. Godfrey appeared "less stressed" and "more positive." (Pl. Ex. 9). In fact, Mr. Godfrey testified that not only did all of his physical injuries heal; he stopped seeing a psychologist and psychiatrist. (6/23 Tr., at 50:3-6).

While Mr. Godfrey may have been entitled to damages for pain and suffering, his situation is wholly dissimilar from Ms. Langevine's. An award of $250,000 for non-permanent injuries that took merely a month to heal is out of line for a case such as the one before the Court. Clearly, the jury must have been swayed by some element beyond that which was proper to consider (like those cited in Defendants' motion for judgment as a matter of law) because the jury's award was excessive. In light of the foregoing, the jury's verdict against Defendants — in the amount of $10,000 for medical expenses and $250,000 for pain and suffering — was excessive and cannot be supported by a preponderance of the evidence presented in this case.

### III. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request the Court enter an Order vacating the jury's verdict in favor of Plaintiff Godfrey and enter judgment as a matter of law in favor of Defendants or, alternatively, order a new trial be held. In the alternative, Defendants respectfully request the Court enter an Order vacating the jury's damages award to Plaintiff Godfrey and entering an award equal to the injuries he sustained.

Submitted this 29th day of August, 2007.          Respectfully submitted,

                                                  **SHERMAN, SILVERSTEIN, KOHL**
                                                  **ROSE & PODOLSKY, P.A.**

Date:   August 29, 2007          By:   */s/ Alan C. Milstein, Esquire*
                                       Alan C. Milstein, Esquire
                                       4300 Haddonfield Road – Suite 311
                                       Pennsauken, NJ 08109
                                       Telephone: (856) 662-0700
                                       Facsimile: (856) 488-4744
                                       *Counsel for Defendant Allen Iverson*

|  |  |
|---|---|
|  | **SUTHERLAND ASBILL & BRENNAN LLP** |
| Date: <u>August 29, 2007</u> | By: <u>  */s/ William R. Martin, Esquire*  </u><br>William R. Martin (Bar No. 465531)<br>1275 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Telephone: (202) 383-0100<br>Facsimile: (202) 637-3593<br>*Counsel for Defendant Jason Kane* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date specified below, true and correct copies of Defendants' foregoing reply memorandum and proposed forms of Order were sent first class mail, postage prepaid, to Plaintiff's following counsel of record:

Gregory L. Lattimer, Esq.
1100 H Street, N.W., Suite 920
Washington, D.C. 20005

Stephanie D. Moran, Esq.
E. Gregory Watson, Esq.
Watson & Moran, LLC
8401 Corporate Drive, Suite 100
Landover, MD 20785

**SHERMAN, SILVERSTEIN, KOHL ROSE & PODOLSKY, P.A.**

Date: August 29, 2007    By: */s/ Alan C. Milstein, Esquire*
Alan C. Milstein, Esquire
Fairway Corporate Center
4300 Haddonfield Road – Suite 311
Pennsauken, NJ 08109
Telephone: (856) 662-0700
Facsimile: (856) 488-4744
*Counsel for Defendant Allen Iverson*